Allan Miller

3385 Claudia Drive

Concord, CA 94519

650-468-7387

(no fax number)

allan.miller@alumni.stanford.edu

Pro Se Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

ALLAN MILLER

    Plaintiff,

vs.

HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC., KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company, SRIDHAR SANTHANAM, KUMAR SHIRALAGI, PAVAN VAISH, and VANI KOLA

    Defendants.

Case Number: 23-CV-0533-VC

**OPPOSITION TO DEFENDANT HFN INC'S MOTION TO DISMISS**

## INTRODUCTION

1.     The Defendant has moved to dismiss the case almost entirely based on the allegation that HFN has essentially no presence in California. Fully 16 of the 22 filed pages are devoted to that argument. However, none of this has any bearing on the case, for three reasons: (1) much of the argument is based on testimony made in a declaration that is largely lies, or at

Opposition to Motion to Dismiss                                          Case No. 23-CV-0533-VC

Page No. 1 of 10

the very least, gross misrepresentations of the truth; (2) this court has jurisdiction based on both diversity and subject matter; and (3) venue is proper based on both the subject matter and the venue of the harm.

    2.    In the last few pages of the motion, the Defendant adds a few baseless arguments that the securities-related claims are inadequately pled, then inappropriately appeals to Delaware law to counter some of the other claims. Finally, the Defendant argues that the complaint is a derivative suit, even though the actual complaint is quite clear that it is not.

## ISSUES TO BE DECIDED

    3.    **The testimony in Santhanam's Declaration cannot be relied on and should be excluded.** The Motion to Dismiss included a Declaration by Sridhar Santhanam ("SS Decl") and relied on it extensively for factual support. Unfortunately, much of the factual content in SS Decl is false, including Santhanam's statements that "Utah [is] where HFN maintains its corporate headquarters and nearly all operational employees" (SS Decl, ¶ 5), "HFN has never held Board meetings or conducted other corporate management activities in California", and "HFN does not make decisions in California regarding the granting of equity to its officers, directors, or employees" (*Id.* ¶ 8). As the CEO and Chairman of the Board of HFN, Santhanam clearly has the correct information available for each of these statements, so these falsehoods are deliberate misrepresentation and are not unintentional or oversights. As a result, the entirety of the Declaration must be excluded.

    4.    **This Court has jurisdiction over HFN.** Since the Complaint ("Compl") satisfies the requirements for diversity jurisdiction in 28 USC § 1332, this Court has diversity jurisdiction (Comp. ¶ 24) in Counts I through VII. The Defendant does not appear to dispute this in its Motion to Dismiss ("MTD"). Additionally, this Court has subject matter jurisdiction over all Federal matters in the Complaint, including at least the Exchange Act violations (Counts I through IV) and the patent irregularities in Counts V and VI.

    5.    **Venue is proper in the Northern District of California with this Court.** Venue is properly established at least through the patent irregularities in Counts V and VI, through the Defendant's agency relationship with InfoSys, TCS, GoDaddy, and MalwareBytes. Venue is also

properly established for the Exchange Act violations in Counts I through IV and Count VII, by virtue of the events in the Northern District of California giving rise to the claim, as well as the presence in that District of the property that is the subject of the action.

6. **Delaware law is inapposite in this case.** For the Exchange Act violations in Counts I through IV, only Federal statue applies. For Counts V through VII, since this case is properly in Federal court through diversity jurisdiction, the law to be applied is the law of the State where the action was filed; in this case, California.

7. **The Exchange Act Counts I through IV are sufficiently pled.** In both the transaction with the Seed Group, and the transaction with Pavan Vaish, the Complaint details how (1) the Plaintiff was harmed, (2) in connection with a securities transaction, (3) by relying on a market for securities, (4) controlled and artificially affected by Defendant HFN's deceptive or manipulative conduct, and (5) the Defendant engaged in the manipulative conduct with scienter. In the case of the Seed Group, the transaction involved the purchase of shares in a Dubai company tentatively named HFN LLC using the funds of HFN, Inc. In the case of Vaish, the transaction involved the purchase of newly issued shares of HFN, Inc. in exchange for compensation. Thus, Counts I and II are adequately pled, and sufficiently support the pleading of Counts III and IV.

8. **This action is not a derivative action.** The Complaint explicitly states that this action is not a derivative action (Compl. ¶ 2). In a derivative action, a shareholder seeks to recover on the behalf of the corporation. Since HFN, Inc. is largely owned by the Defendants, it simply wouldn't make any sense for the shareholder Plaintiff to seek to recover on the behalf of the corporation, since the result would be to recover on the behalf of the Defendants.

**SUMMARY OF RELEVANT FACTS**

9. The Plaintiff brings a case with seven Counts against six Defendants. Two Counts are violations of Section 10(b) of the Exchange Act, two Counts are violations of Section 20(a) of the Exchange Act, one Count is breach of fiduciary duty, one Count is aiding and abetting breach of fiduciary duty, and one count is for injunctive relief for books and records. The

Opposition to Motion to Dismiss    Case No. 23-CV-0533-VC

Page No. 3 of 10

Defendants are HFN, Inc., the two controlling shareholders of HFN, Inc., the Board of Directors of HFN, Inc., and the owner of the major investor in HFN, Inc.

10. The Defendant HFN, Inc. moves to dismiss the case, with the focus of the motion on the allegation of lack of jurisdiction by this Court, and additional allegations of improper venue in this Court, lack of standing of the Plaintiff, failure to state a claim by the Plaintiff, and inability by the Plaintiff to bring a derivative action.

11. In the motion to dismiss, the Defendant summarizes the Complaint, with two factual errors: (1) "HFN's Chairman of the Board – Mr. Santhanam – agreed to convene the meeting, but disagreements regarding the meeting date ensued", and (2) "Plaintiff refused to execute a confidentiality agreement" (MTD p. 4). In fact, Santhanam tried to schedule the meeting on a date that HFN's own Bylaws prohibited (Compl. Ex. 10 and 11). Additionally, Plaintiff was redlining the confidentiality agreement in good faith when Santhanam abruptly ceased all communication on the topic (Compl. Ex. 19).

## THE TESTIMONY IN SANTHANAM'S DECLARATION CANNOT BE RELIED ON AND SHOULD BE EXCLUDED

12. On July 10, 2022, Santhanam sent an email to Plaintiff alone suggesting a discussion to "understand the situation before the shareholder meeting" (Allan Miller Declaration ("AM Decl") Ex. 4). Plaintiff was very hesitant about the propriety of any meeting that was not a full shareholder meeting, especially given the fact that Plaintiff was diligently pursuing a shareholder meeting, and declined to pursue such a discussion. Plaintiff was then contacted on July 22 by Rahul Singh, who, over time, indicated that he had been engaged (and was being compensated) by HFN to facilitate a meeting between Plaintiff, Santhanam, and Kumar Sharalagi, a board member of HFN. Singh claimed that he had some professional experience in this sort of facilitation and was acting as an agent of HFN. Plaintiff continued to maintain unease with any such meeting, but Singh was very persistent and appeared to be making some progress on arranging for an actual shareholder meeting, so Plaintiff continued cordial discussions with Singh (AM Decl Ex. 1, 2, 3).

13. The next day, July 23, Plaintiff had a long discussion with Singh who indicated that both he and Santhanam would be in San Francisco and wanted to meet with Plaintiff to discuss what direction HFN should take, and how Plaintiff would be compensated going forward. Plaintiff asked to record the meeting, but Singh indicated that this was not necessary and would not be acceptable to Santhanam. Singh also indicated that the meeting would not be disclosed to other shareholders, and that Santhanam would be serving as the Chairman of the Board of HFN in this meeting (AM Decl Ex. 5). Plaintiff declined to join the meeting.

14. Two days later, July 25, Plaintiff called Singh at 6:50 PM. Singh indicated that he could not talk because he was having dinner with Santhanam and Kumar Shiralagi in San Francisco where they were making great progress on shaping HFN's strategy and defining next steps on corporate management activities. The following day, July 26, Singh called Plaintiff and was extremely insistent on a meeting in San Francisco between Singh, Plaintiff, Santhanam, and potentially joined by Shiralagi. Plaintiff once again declined for the same reasons, and Singh was agitated and upset (AM Decl ¶ 10).

15. From these facts, it is clear that Santhanam's testimony that "HFN has never held board meetings or conducted other corporate management activities in California" (SS Decl ¶ 8) is false. The testimony that "HFN does not make decisions in California regarding the granting of equity to its officers, directors, or employees" (SS Decl ¶ 8) is also false, since Plaintiff's understanding of the compensation offered by Singh was that it would involve employment and an equity component. Santhanam has first-hand knowledge of these meetings, since he personally participates, so the false testimony cannot be attributed to a mistake or oversight.

16. In November 2021, the finance and HR departments of HFN reported on the number of employees in various locations (AM Decl Ex. 6). At that time there were 31 employees in India, 10 employees in the United States, and 36 employees (technically full-time consultants) in the Philippines. It is clear that Santhanam's testimony that "Utah [is] where HFN maintains . . . nearly all operational employees" (SS Decl ¶ 8) is also false. The CEO of a company needs to know the constitution of the employees, so the false testimony cannot be attributed to a mistake or oversight.

Opposition to Motion to Dismiss    Case No. 23-CV-0533-VC
Page No. 5 of 10

17. In fact, the Plaintiff was frankly surprised by such a fundamental error and desired independent confirmation from public sources. AM Decl Ex. 7 and 8 show the result of using data from LinkedIn resumes to generate an independent estimate of HFN's employee distribution. The estimate shows 23 employees in India, 12 employees in the United States, and 5 employees in the Philippines. The results match extremely well for India and the United States. Plaintiff did not investigate the discrepancy in the Philippines further since it is not relevant to the veracity of Santhanam's testimony.

18. In the Complaint, Plaintiff provided two independent public sources of information indicating that Santhanam's testimony is also false that "Utah [is] where HFN maintains its corporate headquarters" at the address used on the web site and the nondisclosure agreement Plaintiff was attempting to execute with HFN: (1) FedEx was unable to deliver to that address, indicating "Incorrect Address – Recipient Moved" (Compl. Ex. 40), and (2) Google Maps indicates that the facility is "Permanently closed" (Compl. Ex. 41).

## THIS COURT HAS JURISDICTION OVER HFN

19. Diversity jurisdiction in Federal court under 28 USC § 1332 exists when two conditions are met: (1) the amount in controversy must exceed $75,000; and (2) all plaintiffs must be of different citizenship than all defendants. The Complaint adequately pleads both the first condition (Compl. ¶¶ 47, 54, 62, 71, 85, 89, 92) and the second condition (Compl. 3, 4, 5, 6, 7, 8, 9, 10). The Defendant does not contest the diversity jurisdiction in the motion to dismiss.

20. This Court also has subject matter jurisdiction for the Federal matters, including the Exchange Act violations in Counts I to IV and the patent-related matters in Counts V and VI. The Defendant does not contest the subject matter jurisdiction in the motion to dismiss. The Defendant alleges a lack of subject matter jurisdiction in Count VII. However, this Court has diversity jurisdiction in Count VII as described in the previous paragraph.

## VENUE IS PROPER IN THE NORTHERN DISTRICT OF CALIFORNIA WITH THIS COURT

21. The Defendant has a short discussion of venue, reciting 28 USC § 1391 (but omitting "or a substantial part of property that is the subject of the action is situated") and then

Opposition to Motion to Dismiss                              Case No. 23-CV-0533-VC

Page No. 6 of 10

stating without discussion that there is no nexus between Plaintiff's claims and California (MTD p. 10).

22. In the previous discussion about Santhanam's testimony, the Plaintiff has clarified that HFN has Board meetings, discusses company strategy, and meets with shareholders not only in California, but in San Francisco, literally right down the street from this Courthouse. Since the crux of the causes of action in this case center around the actions of the Board and management with respect to a shareholder, it is difficult to imagine a more compelling argument for proper venue.

23. Additionally, 28 USC § 1391 does indicate that venue is indicated where "a substantial part of property that is the subject of the action is situated". The Complaint is quite specific that every action concerns the Plaintiff's shares in HFN, which are situated with the Plaintiff in the Northern District (Compl. ¶¶ 47, 54, 62, 71, 85, 89, 920.

## DELAWARE LAW IS INAPPOSITE IN THIS CASE

24. The Defendant refers to Delaware law several times in the motion to dismiss (MTD pp. 1, 2, 8, 13, 14, 15). However, the law to be applied in a diversity case is the law of the State in which the action is filed. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938). The Complaint has correctly pled the State related actions as violations of Cal. Corp. Code § 309 (Compl ¶¶ 15, 16, 93).

## THE EXCHANGE ACT COUNTS I THROUGH IV ARE SUFFICIENTLY PLED

25. Exhibit 9 of AM Decl shows a subset of the "Side-Shareholder Agreement" signed between HFN, Inc. and Seed Mena Businessmen Services LLC in May, 2021. The effect of the agreement is that HFN fully funds a new company HFN LLC and receives 49% of the shares of HFN LLC, gifting 51% to the Seed Group. At a time determined by HFN, Inc. this controlling interest of HFN LLC is transferred to an unnamed third party, and this transfer cannot be contested. At that point, the third party now has controlling interest of HFN LLC and can do anything with its assets. In the interim, HFN Inc. continues to move funds into HFN LLC. Since the HFN, Inc. shareholders do not have any beneficial interest in the unnamed third party, the net

1 effect is that HFN LLC serves as a vehicle to move assets of HFN, Inc. out of reach of those who are shareholders in HFN, Inc. but not in HFN LLC.

26. This transaction is implemented with Seed Group as the First Party and HFN, Inc. as the Second Party (AM Decl Ex. 9 p. 3 of 16); the formation of HFN LLC with the Second Party paying the capital (AM Decl Ex. 9 pp. 4,5 of 16); the Second Party gifting 51% of the shares of HFN LLC to the Second Party (AM Decl Ex. 9 pp. 4,5 of 16); and the Second Party forcing the First Party to transfer the 51% to an unnamed party without any objection with 30 days notice (AM Decl Ex. 9 p. 8 of 16).

27. These contractual obligations constitute the elements of a violation of Rule 10b-5 of the Exchange Act. Plaintiff has purchased shares in HFN LLC through his ownership of HFN, Inc. shares and HFN Inc.'s ownership of HFN LLC. However, Plaintiff does not enjoy the ownership of the unnamed third party, so at the time of the forced transfer, will no longer be party to any of the assets accumulated in HFN LLC. The Plaintiff has suffered the loss of all assets going to HFN LLC. HFN is misrepresenting a material fact by treating this as an operational expense and not disclosing it as a securities purchase, and is doing so knowingly by entering into a contract to implement the misrepresentation. This misrepresentation causes Plaintiff to purchase the shares in HFN LLC. The management of HFN, Inc. is aware of this violation and is condoning and assisting it, leading to a violation of Section 20(a) of the Exchange Act.

28. Exhibit 10 of AM Decl shows the HFN capitalization table in 2015, 2019, and 2021. The 2,616,500 "Options" in 2015 were represented by HFN as allocations for an employee stock option plan that were not issued, and in fact could not be issued without diluting the shares of the company. These were represented by HFN as being reserved for attracting new employees by granting options that would vest over time.

29. In 2019, the number of options has decreased by 450,000, and at the same time, Ganesh Krishnan has 200,000 granted shares and Pavan Vaish has 250,000 granted shares. Pavan Vaish was with the company between 2015 and 2019 and is not a new employee.

30. Then, in 2021, the number of options has again decreased by 307,154, and at the same time, Santhanam's number of granted shares have increased by 307,154. Santhanam was with the company long before 2015 and is also not a new employee.

31. These transactions constitute the elements of a violation of Rule 10b-5 of the Exchange Act. Vaish purchased 250,000 shares, and Santhanam purchased 307,154 shares, in exchange for services or foregone compensation from HFN, so Plaintiff has sold these shares to Vaish and Santhanam after they were newly issued. HFN misrepresented a material fact by indicating that the option shares would be used to attract new employees, and then used them as a pure stock grant to two Board members, and did this knowingly as part of an action by the Board. Plaintiff suffered the loss of the dilution of his shares without the benefit of attracting new talent, and did the sale as a result of the misrepresentation, believing that the option shares would be used for bona fide incentive options. The management of HFN, Inc., including at least Santhanam and Vaish, is aware of this violation and is condoning and assisting it, leading to a violation of Section 20(a) of the Exchange Act.

## THIS ACTION IS NOT A DERIVATIVE ACTION

32. The Defendant attempts to construe Counts V and VI as a derivative action (MTD p. 14). As the Complaint details, this is not a derivative action (Compl. ¶ 2). Plaintiff is not seeking to recover on behalf of the corporation for injury done to the corporation by Defendants. In fact, since HFN is largely owned by the Defendants, it would make no sense for Plaintiff to try to recover on behalf of the corporation, since it would benefit the Defendants. Instead, the injury applies directly to the Plaintiff through his unlawful loss of access, value, and appreciation of HFN's resources, benefit that was unlawfully enjoyed by the Defendants. "A stockholder's derivative suit is brought to enforce a cause of action which the corporation itself possesses against some third party, a suit to recompense the corporation for injuries which it has suffered as a result of the acts of third parties . . . [t]he stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual." (Fed. R. Civ. Proc., Advisory Committee Notes (1966) H.R. Doc. No. 391, 89th Cong., 2d Sess. 40.)

**THE MOTION TO DISMISS SHOULD BE DENIED**

33. This Opposition demonstrates that the Defendant's motion to dismiss is meritless, and that all Counts of the Plaintiff's original Complaint should proceed in this Court.

Date: Mar 30 2023    Sign Name: *[signature]*
                     Print Name: Allan A. Miller

## CERTIFICATE OF SERVICE

I, Allan A. Miller, certify that this document was filed with the Clerk's office of the Northern District of California United States District Court on March 30, 2023, and that a paper copy will be sent on March 30, 2023 to:

Matthew H. Ladner
350 S. Grand Ave. Suite 3400
Los Angeles, CA 90071
Tel: (213) 928-9816
E-mail: Matthew.Ladner@troutman.com
Attorney for Defendant HFN, Inc.

Date: Mar 30 2023

Sign Name: *(signature)*

Print Name: Allan A. Miller

| | |
|---|---|
| 1 | Allan Miller |
| 2 | 3385 Claudia Drive |
| 3 | Concord, CA 94519 |
| 4 | 650-468-7387 |
| 5 | (no fax number) |
| 6 | allan.miller@alumni.stanford.edu |
| 7 | Pro Se Plaintiff |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| ALLAN MILLER | Case Number: 23-CV-0533-VC |
| Plaintiff, | |
| vs. | **DECLARATION OF ALLAN MILLER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT HFN INC'S MOTION TO DISMISS** |
| HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC., | |
| KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company, | |
| SRIDHAR SANTHANAM, | |
| KUMAR SHIRALAGI, PAVAN VAISH, | |
| and VANI KOLA | |
| Defendants. | |

# DECLARATION OF ALLAN MILLER

In accordance with 28 U.S.C. §1746, Allan Miller hereby declares as follows:

1. I am Allan Miller, the pro se Plaintiff in the above captioned case.

2. Attached as Exhibit 1 is a true and accurate copy of the log of all phone calls between me and Rahul Singh as of the date of this declaration.

3. Attached as Exhibit 2 is a true and accurate copy of all the text messages ("SMS") between me and Rahul Singh as of the date of this declaration.

4. Attached as Exhibit 3 is a true and correct copy of three sets of notes made by me during three separate phone calls with Rahul Singh. The redacted sections of one of the sets of notes are not relevant to the Opposition to the Motion to Dismiss being concurrently filed. Although all the notes are undated, the upper set of notes were made prior to September 1, 2022, since they refer to Mr. Singh's upcoming attendance at a wedding on 9/1; the lower left set of notes (on a Post-It) were made prior to September 21, 2022, since they refer to Mr. Singh's upcoming trip to San Francisco on 9/21 – 9/22; and the lower right set of notes (also on a Post-It) were made after the lower left set of notes, since they indicate a specific law firm that was chosen from the three candidates mentioned in the lower left notes.

5. In the phone calls with Rahul Singh covered by Exhibit 3, Mr. Singh described that he was serving as a liaison between me and both Sridhar Santhanam and Kumar Shiralagi of HFN to address my request for a shareholder meeting, and more generally to "sort stuff out" with them, as the first notes indicate. As the second notes indicate, Mr. Singh felt that the first step was to hire a corporate attorney to run the Annual General Meeting (AGM) and was in discussion with three law firms. As the third note indicates, HFN and Mr. Singh decided on Troutman Pepper, with Nicholas Stawasz representing the company for corporate matters. As is clear with the filings associated with this case, Matthew Ladner from Troutman Pepper is representing HFN in this civil suit.

6. Attached as Exhibit 4 is an email to me dated July 10, 2022, from Sridhar Santhanam. The main theme of the letter seems is that Santhanam understands the desire and need for a shareholder meeting, but in the last two paragraphs he indicates that he wishes to

1  speak with me alone and not representing the interest of any other shareholder. He references
2  some sort of agreement between us ("I agree") that, in fact, did not exist. However, it was clear
3  to me from this email that Santhanam wanted to meet with me and discuss company business of
4  HFN.

5  7.  Attached as Exhibit 5 is a true and accurate copy of a partly redacted set of notes
6  made by me on July 23, 2022, during a phone call with Rahul Singh. The redacted sections of the
7  notes are not relevant to the Opposition to the Motion to Dismiss being concurrently filed.

8  8.  In Exhibit 5, the notes beginning "Sridhar west coast – late tomorrow" and ending
9  "listening to me" indicate that our discussion was that Sridhar Santhanam and Rahul Singh
10 would be in San Francisco starting July 24, 2022, they wanted to meet with me there but would
11 not allow me to record the meeting, the meeting would not be disclosed to anyone else, and that I
12 would be encouraged to discuss any concerns I had about HFN as a shareholder directly with
13 Sridhar Santhanam as the Chairman of the Board of Directors.

14 9.  In Exhibit 5, the notes beginning "Talked to Sridhar" and ending "listen to
15 everything I want to say" indicate that Rahul Singh told me that he had a detailed discussion with
16 Sridhar Santhanam about meeting me in San Francisco, and that Santhanam wanted my opinion
17 on what direction HFN should take. Additionally, the note "what's in it for me" indicates that
18 Santhanam was contemplating some sort of compensation for this activity.

19 10. In Exhibit 1, the outgoing call on my phone on July 25, 2022, at 6:50 PM for 1
20 minute 16 seconds was one where I called Rahul Singh and he told me that he was having dinner
21 with Sridhar Santhanam and Kumar Shiralagi in San Francisco. As the log shows, Mr. Singh
22 called me back the next day, but I was occupied (13 second call) and returned his call at 3:49
23 PM. Mr. Singh was rather insistent that I come to San Francisco to meet with him and
24 Santhanam, who he had joined that morning, and potentially Shiralagi, who was still in San
25 Francisco. I had consistently informed Mr. Singh that I was uncomfortable with a meeting that
26 did not involve all shareholders, and I declined to join them. Mr. Singh was quite displeased.

27 11. Attached as Exhibit 6 is a true and accurate copy of a summary of the head count
28 made by the finance and HR departments of HFN Inc. as of November 2021.

Declaration of Allan Miller                                Case No. 23-CV-0533-VC
Page No. 3 of 4

12. Attached as Exhibit 7 is a true and accurate copy of the search results of three searches made on LinkedIn on March 26, 2023, using the search terms "nanoheal", "bask utah", and "bask philippines".

13. Attached as Exhibit 8 is a true and accurate copy of a Microsoft Excel spreadsheet made by me using the results of the three LinkedIn searches referenced above, along with a summary computation ("pivot table") generated by Excel.

14. Attached as Exhibit 9 is a true and accurate copy of pages 3, 4, 5, and 8 of "Side-Shareholder Agreement" signed between HFN, Inc. and Seed Mena Businessmen Services LLC in May, 2021, with highlights added by me.

15. Attached as Exhibit 10 is a true and accurate copy of the capitalization table of HFN, Inc. in August 2015, December 2019, and June 2021. The number labeled "Options" in the August 2015 table was represented by HFN Inc. to be an option pool of non-issued shares during the negotiation of the settlement of case 14-CV-12337 in the District of Massachusetts. Part of the negotiation was to only count half of this option pool (the number labeled "Half of options") in the computation of the plaintiff award, since these shares were represented by HFN Inc. as not having been issued.

Signed under the penalty of perjury this 30th day of March, 2023.

Date: Mar 30 2023            Sign Name: *(signature)*
                             Print Name: Aslan A Miller

# CERTIFICATE OF SERVICE

I, Allan A. Miller, certify that this document was filed with the Clerk's office of the Northern District of California United States District Court on March 30, 2023, and that a paper copy will be sent on March 30, 2023 to:

Matthew H. Ladner
350 S. Grand Ave. Suite 3400
Los Angeles, CA 90071
Tel: (213) 928-9816
E-mail: Matthew.Ladner@troutman.com
Attorney for Defendant HFN, Inc.

Date: Mar 30 2023

Sign Name: *[signature]*

Print Name: Allan A. Miller