**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Matthew H. Ladner (SBN 284594)
350 S. Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone:  (213) 928-9816
E-mail: Matthew.Ladner@troutman.com

William M. Taylor (*pro hac vice*)
125 High St., 19th Floor
Boston, MA 02110
Telephone:  (617) 204-5186
Email:  William.Taylor@troutman.com

Attorneys for Defendant
HFN, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLAN MILLER,<br><br>                              Plaintiff,<br><br>        vs.<br><br>HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC.; KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company; SRIDHAR SANTHANAM; KUMAR SHIRALAGI; PAVAN VAISH; and VANI KOLA,<br><br>                              Defendants. | Case No. 3:23-cv-0533-VC<br><br>**DEFENDANT HFN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR: (1) LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE, FOR (2) FAILURE TO STATE A CLAIM, LACK OF SUBJECT MATTER JURISDICTION, AND LACK OF STANDING; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Sridhar Santhanam]<br><br>**Date:**        July 27, 2023<br>**Time:**       10:00 a.m.<br>**Ctrm:**       4<br>**Floor:**       17th |

---

158103359v5

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ......................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1

I.    CIVIL LOCAL RULE 7-4 STATEMENT OF ISSUES TO BE DECIDED...........1

II.    FACTS REGARDING THE LACK OF PERSONAL JURISDICTION OVER HFN..................................................................................................2

III.    FACTS ALLEGED IN THE FAC ...............................................................3

    A.    Allegations Recycled from the Original Complaint ...................................3

    B.    New Allegations in the FAC .......................................................4

IV.    DISMISSAL IS REQUIRED UNDER RULES 12(b)(2) AND 12(b)(3)...............5

    A.    The Court Does Not Have General or Specific Personal Jurisdiction Over HFN....................................................................................5

    B.    The Exchange Act Does Not Confer Jurisdiction Over HFN......................7

    C.    This Court is Not a Proper Venue for Plaintiff's Claims Against HFN.......................................................................................7

V.    ALTERNATIVELY, RULES 12(b)(1), 12(b)(6), AND 23.1 REQUIRE DISMISSAL ........................................................................................7

    A.    Plaintiff Still Fails to State a Valid Claim for Securities Fraud Against HFN .............................................................................7

    B.    The Settlement and SPA Bar Plaintiff's Exchange Act Claims .................8

    C.    Plaintiff's Claim is Also Barred By the 5-Year Statute of Repose............11

    D.    Plaintiff's Claim is Barred By the 2-Year Statute of Limitations..............13

    E.    Plaintiff Has Failed to Adequately Plead a Securities Fraud Claim ..........14

    F.    Plaintiff Cannot Maintain a Tag-Along Section 20(a) Claim....................14

    G.    Plaintiff Has Failed to State a Valid Fiduciary Duty Claim Against HFN....................................................................................14

    H.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's DGCL Claim....................................................................................15

      I.      Plaintiff Also Cannot Maintain Any of His Claims on a Derivative Basis ............................................................................................15

VI.      CONCLUSION ...................................................................................................15

HFN, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT / CASE NO. 3:23-cv-0533-VC

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barker v. Round Hill Country Club*,
No. C 08-2977 SI, 2008 U.S. Dist. LEXIS 83048 (N.D. Cal. Sep. 30, 2008)..........................4

*Beene v. Beene*,
No. C 11-6717 JSW, 2012 U.S. Dist. LEXIS 117354 (N.D. Cal. Aug. 20,
2012) ................................................................................................................................................6

*Betz v. Trainer Wortham & Co.*,
829 F. Supp. 2d 860 (N.D. Cal. 2011) ....................................................................................11

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975).....................................................................................................................12

*Borteanu v. Nikola Corp.*,
No. CV-20-01797-PHX-SPL, 2023 U.S. Dist. LEXIS 17813 (D. Ariz. Feb. 1,
2023) ................................................................................................................................................8

*Buttonwood Tree Value Ptrs., L.P. v. R.l Polk & Co.*,
2014 Del. Ch. LEXIS 141 (Ch. Aug. 7, 2014)..........................................................................14

*Carlucci v. Han*,
886 F. Supp. 2d 497 (E.D. Va. 2012) ....................................................................................11

*Clayton v. Landsing Pac. Fun, Inc.*,
No. C01-03110 WHA, 2002 U.S. Dist. LEXIS 9446 (N.D. Cal. May 9, 2022)....................11

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)......................................................................................................................5

*Durning v. Citibank*,
990 F.2d 1133 (1993)....................................................................................................................12

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
640 F.3d 1034 (9th Cir. 2011) .............................................................................................9, 10

*Franciscan Mobile Home Owners v. Linc Hous. Corp.*,
No. C 10-01087 JW, 2011 U.S. Dist. LEXIS 171431 (N.D. Cal. Feb. 11,
2011) ..............................................................................................................................................12

*In re Galena Bio., Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ..........................................................................................8

*In re Garrett Mot. Sec. Litig.*,
2022 U.S. Dist. LEXIS 60843 (S.D.N.Y. Mar. 31, 2022) ......................................................13

158103359v5

*Isanaka v. Spectrum Techs. USA Inc.*,
131 F. Supp. 2d 353 (N.D.N.Y. 2001) ................................................................................13

*In re JPMorgan Chase Derivative Litig.*,
No. 2:13-cv-02414-KJM-EFB, 2014 U.S. Dist. LEXIS 151370 (E.D. Cal. Oct.
23, 2014) ................................................................................................................................7

*In re Juniper Networks, Inc. Sec. Litig.*,
542 F. Supp. 2d 1037 (N.D. Cal. 2008) ..............................................................................11

*Kia Motors Corp. v. Keystone Auto. Indus.*,
No. CV 08-4584-JFW, 2009 U.S. Dist. LEXIS 134874 (C.D. Cal. June 26,
2009) ....................................................................................................................................14

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) ............................................................................................4, 8

*Matus v. Premium Nutraceuticals, LLC*,
715 Fed. App'x 662 (9th Cir. 2018) .................................................................................5, 7

*Meide v. Centineo*
No. CV 19-7171 PA, 2019 U.S. Dist. LEXIS 234495 (C.D. Cal. Oct. 31,
2019), *aff'd Meide v. Centineo*, No. 19-56402, 2022 U.S. App. LEXIS 30288
(9th Cir. Nov. 1, 2022) ..................................................................................................11, 13

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ......................................................................................................11, 13

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017) .............................................................................................6

*Murphy v. Fullbright*,
No. 12-cv-885-JM (WVG), 2012 U.S. Dist. LEXIS 144081 (S.D. Cal. Oct. 4,
2012) ......................................................................................................................................6

*Nei Contracting & Eng'g v. Neighborhood Nat'l Bank*,
No. 3:15-cv-02954-CAB-(NLS), 2016 U.S. Dist. LEXIS 204270 (S.D. Cal.
July 28, 2016) ......................................................................................................................11

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) .........................................................................................13, 14

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) .............................................................................................6

*Pinnavaia v. Moody-Stuart*,
No. C 09-03803 CW, 2009 U.S. Dist. LEXIS 115453 (N.D. Cal. Dec. 11,
2009) ....................................................................................................................................15

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ................................................................................5

*In re Saba Software, Inc. S'holder Litig.*,
   2017 Del. Ch. LEXIS 52 (Del. Ch. Mar. 31, 2017) ...............................................15

*Shixu Bai v. Tegs Mgmt., LLC*,
   No. 20cv4942 (DLC), 2022 U.S. Dist. LEXIS 37162 (S.D.N.Y. Mar. 1, 2022)..............12, 13

*Simon v. Hartford Life, Inc.*,
   546 F.3d 661 (9th Cir. 2008) ...............................................................................15

*Stitching Pensioenfunds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) ...............................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................13

*In re Teva Sec. Litig.*,
   No. 3:17-cv-558 (SRU), 2021 U.S. Dist. LEXIS 60195 (D. Conn. Mar. 30,
   2021) ....................................................................................................................11

*United Food & Comm. Wrks. Union v. Zuckerberg*,
   262 A.3d 1034 (Del. 2021) ..................................................................................15

*Utterkar v. Ebix, Inc.*,
   No. 14-CV-02250-LHK, 2015 U.S. Dist. LEXIS 113361 (N.D. Cal. Aug. 25,
   2015) ....................................................................................................................14

*In re VeriSign, Inc. Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...............................................................14

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
   299 F. Supp. 3d 1055 (D. Minn. 2018) ................................................................12

*Walden v. Fiore*,
   571 U.S. 277 (2014).............................................................................................5

*World Surv. Grp., Inc. v. La Jolla Cove Inv'rs, Inc.*,
   66 F. Supp. 3d 1233 (N.D. Cal. 2014) .................................................................13

*Zucco Ptrs., LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...............................................................................14

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................13

28 U.S.C. § 1391.......................................................................................................7

28 U.S.C. § 1658 ..........................................................................................................................10

8 Del. C. § 220 .......................................................................................................................2, 14

Civ. L.R. 7-2 ................................................................................................................................1

Civ. L.R. 7-4 ................................................................................................................................1

Civ. L.R. 10-1 ..............................................................................................................................7

HFN, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT / CASE NO. 3:23-cv-0533-VC

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO THE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE THAT** on July 27, 2023 at 10:00 a.m. in Courtroom 4 of the United States District Court for the Northern District of California, located on the 17th Floor of 450 Golden Gate Avenue, San Francisco, California 94102, or at such other date and time ordered by the Court, Defendant HFN, Inc. ("**HFN**") will and hereby does move the Court for an order dismissing the First Amended Complaint ("**FAC**") filed by Plaintiff Allan Miller ("**Plaintiff**") as to HFN with prejudice, pursuant to Federal Rules of Civil Procedure 8, 9, 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), and 23.1, as well as applicable case law.  Pursuant to Civil Local Rule 7-2, HFN requests an order dismissing the FAC on the grounds that the Court lacks personal jurisdiction over HFN and this Court is an improper venue for Plaintiff's claims.  In the alternative, HFN requests that the Court dismiss the FAC as to HFN because: (1) Plaintiff has failed to state any valid claim for relief against HFN; (2) this Court lacks subject matter jurisdiction over Plaintiff's claim under the Delaware General Corporate Law ("**DGCL**"); and (3) Plaintiff cannot maintain any of his claims on a derivative basis.  The Motion is based upon this Notice and Motion, the following Memorandum of Points and Authorities, the Declaration of Sridhar Santhanam ("**Mr. Santhanam**") and the exhibit thereto, the pleadings and other documents filed in this action, and any other argument or evidence that the Court may consider.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      CIVIL LOCAL RULE 7-4 STATEMENT OF ISSUES TO BE DECIDED**

<u>**Issue No. 1**</u>:  **The Court Lacks Personal Jurisdiction Over HFN**.  On May 10, 2023, the Court dismissed Plaintiff's original Complaint as to HFN because it did "not come close to satisfying" the requirements of personal jurisdiction, and Plaintiff fell "well short of adequately pleading a securities fraud claim," which, if validly stated, could potentially provide a basis for jurisdiction.  (Dkt. No. 29).  Nothing has changed.  HFN remains an out-of-state corporation that is not "at home" in California, and Plaintiff's claims do not have the required "substantial connection" to HFN's purported California activities.  In addition, Plaintiff still has not alleged a valid claim under the Securities Exchange Act of 1934 ("**Exchange Act**").

**Issue No. 2**:  **Venue in This Court is Improper**.  Venue is improper because no defendant resides in California, Plaintiff's claims have no California nexus, HFN is not subject to personal jurisdiction here, and it does not appear any of the other named defendants are either.

**Issue No. 3**:  **Alternatively, Rules 12(b)(1), 12(b)(6), and 23.1 Require Dismissal.**

**A)**      Plaintiff asserts claims under the Exchange Act based on his allegation that he was induced to enter a Settlement Agreement ("**Settlement**") and related Stock Purchase Agreement ("**SPA**") in 2015 due to purportedly false statements made by HFN's attorney during settlement discussions.  These claims are barred by the broad release provisions contained in the Settlement and SPA, both of which Plaintiff negotiated while he was represented by counsel.  In addition, these claims are untimely under the applicable 5-year statute of repose and 2-year statute of limitations, and they are not alleged with the legally required specificity.

**B)**      Plaintiff asserts claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty against HFN.  But, under Delaware law, which governs these claims, a shareholder cannot sue a corporation directly for breach of fiduciary duty, and a corporation cannot aid and abet the alleged misconduct of its own officers/directors.

**C)**      The Delaware Court of Chancery has exclusive subject matter jurisdiction over Plaintiff's claim for books and records under Section 220 of the DGCL.

**D)**      Plaintiff cannot legally maintain any claims on a derivative basis because he is a *pro se* litigant and also has not satisfied the requirements of Rule 23.1.

## II.     FACTS REGARDING THE LACK OF PERSONAL JURISDICTION OVER HFN

HFN has limited contacts with California, none of which relate to Plaintiff's allegations in this action.  HFN is a technology company incorporated in Delaware with its principal place of business in Utah and operations and employees in India.  (Declaration of Sridhar Santhanam ("**S.S. Decl.**"), ¶¶ 1-5).  HFN's management team principally resides and works in India, and no HFN Board member, officer, or director resides or works in California.  (*Id.* ¶ 5).  HFN has not been registered or certified to conduct intrastate business in California since April 2018, when it forfeited its standing with the California Secretary of State.  (*Id.* ¶ 6).  HFN does not currently

own, lease, sublease, or occupy any real property in California, nor does HFN maintain any office, post office box, mailing address, telephone listing, or other physical address in California. In December 2014, HFN subleased a small office space in San Jose which it vacated in December 2015 and then sub-subleased to a third-party until July 2016, when the sublease expired. (*Id.* ¶ 7). HFN has never held Board meetings or conducted other corporate management activities in California, and in particular, HFN does not make decisions in California regarding the granting of equity to its officers, directors, or employees. (*Id.* ¶ 8). In 2015, HFN opened a checking account and savings account at the San Jose branch of Wells Fargo (the "**WF Accounts**"). After relocating to Utah, HFN started to principally use a Utah-based bank for all of its corporate banking needs, activities, and transactions. Since March 2020, HFN has maintained less than $20,000 in total funds across the WF Accounts, and HFN does not own any other property or assets of any kind in California. (*Id.* ¶ 9). Certain HFN customers may reside in California; however, California accounts for less than 10 percent of HFN's total revenue. (*Id.* ¶ 10). HFN does not own any subsidiary or other entity incorporated or principally doing business in California. (*Id.* ¶ 11).

## III.  FACTS ALLEGED IN THE FAC

### A.  <u>Allegations Recycled from the Original Complaint</u>

The FAC mostly recycles the allegations from Plaintiff's original Complaint. Plaintiff claims that in 2022, HFN refused to hold a shareholder meeting or provide him with certain books and records due to his refusal to execute a confidentiality agreement. (FAC ¶¶ 39-49). In addition, Plaintiff enumerates various ways HFN is supposedly mismanaged. **<u>First</u>**, Plaintiff alleges HFN has "lax corporate governance," including because its website contains outdated information and the company does not keep Board minutes. (*Id.* ¶¶ 50-54 (the "**Governance Allegations**")). **<u>Second</u>**, Plaintiff alleges HFN "lacks basic corporate oversight and controls" because it does not have an "effective" human resources ("**HR**") department or procedures, which may expose HFN to liability. (*Id.* ¶¶ 55-58 (the "**HR Allegations**")). **<u>Third</u>**, Plaintiff asserts HFN has entered an ill-advised partnership with Dubai-based Seed Group ("**Seed Partnership**"), which Plaintiff speculates is designed to transfer HFN's assets to a separate entity in the future. (*Id.* ¶¶ 59-63 (the "**Seed Allegations**")). **<u>Fourth</u>**, Plaintiff contends Mr. Santhanam and Ruby Jha

("**Ms. Jha**") have misused their HFN travel budgets to engage in non-HFN activities. (*Id.* ¶¶ 66-73 (the "**Distraction Allegations**")). **Fifth**, Plaintiff asserts HFN has failed to protect and expand its patent portfolio, and has pledged certain patents as collateral in a transaction involving Zelis Payments and Red-Card Payment. (*Id.* ¶¶ 74-87 (the "**Patent Allegations**")). **Sixth**, Plaintiff alleges HFN has failed to maintain and update its software. (*Id.* ¶¶ 88-101 (the "**Software Allegations**")). **Seventh**, Plaintiff asserts HFN's website is poorly designed. (*Id.* ¶¶ 102-105 (the "**Webpage Allegations**")).

### B.      New Allegations in the FAC

Plaintiff asserts this Court has personal jurisdiction over HFN because it supposedly engaged in negotiations and discussions (including in-person and Zoom meetings) with California-based company GoDaddy between 2019 and 2022, resulting in a contract and reseller relationship. (*Id.* ¶¶ 13-18). In the same vein, Plaintiff repeats his earlier allegations that HFN has reseller relationships with, and derives income from, various other California entities, such as TCS, Infosys, HCL Infosystems, Accenture, CompuCom, and Malwarebytes. (*Id.* ¶¶ 20-23).

The FAC also alleges that in 2015, Plaintiff, through counsel, negotiated a Settlement and related SPA with HFN, Mr. Santhanam and others in order to resolve then-pending litigation between them in Massachusetts federal court (the "**Massachusetts Lawsuit**"). According to Plaintiff, he was induced to enter the Settlement and SPA and buy additional HFN stock in 2015 because HFN's attorney represented that the company's pool of unissued stock options would be used to attract and compensate future employees or may not be issued at all. Plaintiff contends that years after he executed the Settlement and SPA, HFN used its stock option pool to provide equity to insiders, including Mr. Santhanam and Board member Pavan Vaish ("**Mr. Vaish**"). (*Id.* ¶¶ 24-33 and Ex. 4 and 7). Plaintiff claims HFN violated the Exchange Act by misrepresenting the purpose of its stock option pool during settlement discussions. (*Id.* ¶¶ 34, 119-126).[1]

---

[1] Plaintiff has attached an incomplete, 2-page version of the SPA as Exhibit 7 to the FAC. To provide this Court with necessary context, HFN has filed complete versions of the Settlement and SPA. (S.S. Decl., Ex. 1). Because the FAC references and predicates Plaintiff's securities fraud claims on these documents, the Court can legally consider them in ruling on HFN's Motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Barker v. Round Hill Country Club*, No. C 08-2977 SI, 2008 U.S. Dist. LEXIS 83048, at *2 n. 1 (N.D. Cal. Sep. 30, 2008).

IV.    **DISMISSAL IS REQUIRED UNDER RULES 12(b)(2) AND 12(b)(3)**

A.    <u>**The Court Does Not Have General or Specific Personal Jurisdiction Over HFN**</u>

**First**, general personal jurisdiction is lacking.  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose [general] jurisdiction[,]" and "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction" over a corporation.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  If neither situation is present, a corporation is subject to general jurisdiction only in an "exceptional" case when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Daimler*, 571 U.S. at 138-139 and n. 19.  General jurisdiction is an "exacting standard" not met here.  *CollegeSource, Inc.*, 653 F.3d at 1074.  This is not a "paradigm" case because HFN is incorporated in Delaware and its principal place of business is Utah.  (FAC ¶ 4; S.S. Decl. ¶ 5).  Nor is this an "exceptional" case because HFN has only limited forum contacts and cannot possibly be deemed "at home" in California.  (S.S. Decl. ¶¶ 5-11).  *Daimler*, 517 U.S. at 139 n. 20; *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069-1070 (9th Cir. 2015).

**Second**, "[t]he specific personal jurisdiction inquiry is defendant-focused, with an emphasis on the relationship among the defendant, the forum, and the litigation.  [T]he defendant's suit-related conduct must create a substantial connection with the forum State.  When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Matus v. Premium Nutraceuticals, LLC*, 715 Fed. App'x 662, 662 (9th Cir. 2018).  Importantly, "the plaintiff cannot be the only link between the defendant and the forum[,]" and "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."  *Walden v. Fiore*, 571 U.S. 277, 285-286 (2014).  Plaintiff's alleged claims still lack the required "substantial connection" to California, which is not surprising since the FAC largely mirrors the original Complaint.

The Governance Allegations concern HFN's failure to keep Board meeting minutes and inaccurate information on HFN's website – but HFN does not hold Board meetings in California, and there is no allegation that decisions regarding website content are made in California.  (S.S. Decl. ¶¶ 5, 8).  The HR allegations concern the purported lack of an HR department and

procedures, yet there is no allegation HFN makes HR decisions in California, nor does it. (*Id.*). The Seed Allegations concern HFN's business relationship with a Dubai-based company to explore opportunities in the Middle East, and there is no allegation this relationship was negotiated or implemented in California, nor was it. (*Id.* ¶ 12). The Distraction Allegations concern Mr. Santhanam and Ms. Jha engaging in activities unrelated to HFN, but these admittedly non-HFN activities cannot be imputed to, or confer jurisdiction over, HFN itself.[2] The Patent Allegations involve HFN's alleged failure to protect and grow the company's intellectual property – again, there is no allegation HFN made or implemented decisions on these issues in California, and there are no facts showing the patent transaction involving Zelis and Red-Card implicated California. The Software Allegations concern HFN's purported failure to maintain its software, and the Webpage Allegations concern the design of HFN's website. However, HFN's corporate decisions are made outside of California, and it is irrelevant that HFN's software and website are available worldwide. (*Id.* ¶¶ 5, 8)

Furthermore, Plaintiff cannot establish jurisdiction based on his allegation that HFN's counsel made misrepresentations during settlement discussions in 2015, or that HFN subsequently issued stock options to Messrs. Santhanam and Vaish. Courts reject efforts to establish jurisdiction based on interactions with a plaintiff who merely happens to reside in California, and the Court should do so here, especially since the Settlement and SPA concerned the resolution of a **Massachusetts** Lawsuit and Plaintiff was represented by **Massachusetts** counsel during settlement talks. (FAC ¶¶ 24-34 and Ex. 4; S.S. Decl., Ex. 1 at Settlement at §§ 6.2, 7). *See also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1148 (9th Cir. 2017) ("when a defendant's relationship to the forum state arises from the fortuity of where the plaintiff resides," it "does not provide the basis for specific jurisdiction there."); *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) ("a contract alone does not automatically establish minimum contacts in the plaintiff's home forum"). In addition, there is no allegation HFN approved or implemented the issuance of stock options to

---

[2] *Murphy v. Fullbright*, No. 12-cv-885-JM (WVG), 2012 U.S. Dist. LEXIS 144081, at *10 (S.D. Cal. Oct. 4, 2012) *Beene v. Beene*, No. C 11-6717 JSW, 2012 U.S. Dist. LEXIS 117354, at *15 (N.D. Cal. Aug. 20, 2012).

Messrs. Santhanam and Vaish in California, nor could there be. (S.S. Decl. ¶ 8). Finally, Plaintiff points to HFN's alleged communications and business relationships with third-parties purportedly located in California, such as GoDaddy. (FAC ¶¶ 13-23). But, none of Plaintiff's claims pertain to or arise out of those supposed relationships, and activities unrelated to Plaintiff's claims are legally irrelevant. *Matus*, 715 Fed. App'x at 662 (9th Cir. 2018).[3]

### B.      The Exchange Act Does Not Confer Jurisdiction Over HFN

As established below, Plaintiff has failed to allege a valid claim under the Exchange Act. Thus, the Exchange Act cannot confer jurisdiction over any of Plaintiff's claims. *In re JPMorgan Chase Derivative Litig.*, No. 2:13-cv-02414-KJM-EFB, 2014 U.S. Dist. LEXIS 151370, at *41, 45, 68 (E.D. Cal. Oct. 23, 2014).

### C.      This Court is Not a Proper Venue for Plaintiff's Claims Against HFN

Venue is also lacking under 28 U.S.C. § 1391 because: (1) the FAC does not allege any defendant resides in California; (2) Plaintiff's claims lack any nexus to California; and (3) HFN is not subject to personal jurisdiction here, nor are there well-pleaded facts indicating any other defendant is. (FAC ¶¶ 5-10). Accordingly, dismissal is warranted under Rule 12(b)(3).

## V.      ALTERNATIVELY, RULES 12(b)(1), 12(b)(6), AND 23.1 REQUIRE DISMISSAL

### A.      Plaintiff Still Fails to State a Valid Claim for Securities Fraud Against HFN

In his original Complaint, Plaintiff asserted claims under the Exchange Act based on the Seed Partnership and Messrs. Santhanam and Vaish allegedly receiving equity from HFN's stock option pool. (Dkt. No. 1 at ¶¶ 107-123). The Court rejected these theories because there were "no allegations at all" that Plaintiff actually "sold or purchased stock" himself. (Dkt. No. 29 at p. 2). In the FAC, Plaintiff tries to cure this defect by abandoning his Seed Partnership claim, and instead focusing on his purchase of additional HFN shares in 2015 pursuant to the Settlement and SPA he negotiated through counsel. (FAC ¶¶ 24-36, 120-122, 124-126). In addition, it appears Plaintiff is now proceeding under Rules 10b-5(a) and (c) only, which collectively:

---

[3] Plaintiff purports to incorporate the original Complaint's allegations and exhibits into the FAC. (FAC ¶ 3), Civil Local Rule 10-1 prohibits him from doing so. Even if incorporation by reference were proper, the Court dismissed the original Complaint and that pleading's allegations cannot support jurisdiction the second time around.

(1) prohibit any "device, scheme, or artifice to defraud" and "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person"; and (2) are known as Section 10(b)'s "scheme liability"[4] provisions.  (FAC at ¶¶ 34-35, 120).  As explained below, these changes do not save Plaintiff' Exchange Act claims.

## B.    The Settlement and SPA Bar Plaintiff's Exchange Act Claims

If a complaint references a document that contains a release barring the plaintiff's claims, a court may consider and enforce the release at the pleading stage.  *Marder*, 450 F.3d at 448, 454. Here, the FAC alleges HFN committed securities fraud by misrepresenting the purpose of its stock option pool during 2015 settlement discussions, resulting in Plaintiff agreeing to purchase additional HFN shares pursuant to the Settlement and SPA.  (FAC ¶¶ 24-34, 120 and Exs. 4, 7). However, the Settlement and SPA contain broad release provisions that prohibit Plaintiff from maintaining **any** claims against HFN that existed when he executed those documents, including any claims under the Exchange Act.  Specifically, Plaintiff agreed in the Settlement to:

> **[F]orever release and discharge** . . . Defendants . . . from **any and all claims, demands, debts, liens, causes of action, or liabilities, of whatsoever kind and nature**, character and description, whether in law or equity, whether as a shareholder, sounding in tort, contract or other applicable law, **whether known or unknown**, fixed or contingent, concealed or hidden, latent or patent, anticipated or unanticipated, direct or derivative (collectively, 'Claims'), including, **but not limited to**, any Claims arising out of, in connection with, or in any way related to the [Massachusetts] Lawsuit and the facts alleged therein in any way related to the [parties' prior] Lawsuit and the facts alleged therein. **It is understood and agreed that this shall be a full and complete release**, and includes all consideration of any kind or character, including any actual, consequential or other damages alleged or which could have been alleged as against Defendants in the [Massachusetts] Lawsuit **or as of the date of this Settlement Agreement**."  (S.S. Decl., Ex. 1 at Settlement at § 3.1 (emphasis added)).[5]

Similarly, Plaintiff further agreed in the SPA that:

---

[4] *In re Galena Bio., Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1192 (D. Or. 2015); *Borteanu v. Nikola Corp.*, No. CV-20-01797-PHX-SPL, 2023 U.S. Dist. LEXIS 17813, at *13 (D. Ariz. Feb. 1, 2023).

[5] The Settlement defines HFN as the "Company" and further includes HFN within the definition of "Defendants."

**Purchaser has independently and without reliance upon the Seller or the Company, and based on such information and the advice of such advisors as Purchaser has deemed appropriate, made its own independent analysis and decision to enter into this Agreement and to purchase the Shares it is purchasing hereunder**.  Such Purchaser acknowledges that the Seller may now possess or may hereafter possess nonpublic information concerning the Company not known to such Purchaser (the 'Seller Excluded Information') . . . [which] may or may not be material, may or may not have been disclosed by or on behalf of the Company, and may or may not be available to such Purchaser from sources other than the Company or the Seller.  **Such Purchaser . . . hereby: (a) agrees that none of the Seller Released Parties [] or Company Released Parties shall have any liability to such Purchaser** . . . . with respect to, based upon, arising from, resulting from, or relating directly or indirectly to the existence, substance possession, disclosure, or nondisclosure of any Seller Excluded Information whatsoever . . . ; **(b) waives any right, claim or cause of action at law or in equity** with respect to, arising from, based upon, resulting from or relating to directly or indirectly the existence, substance, possession, disclosure or nondisclosure of any Seller Excluded Information, **including, without limitation, pursuant to Sections 10b and 20A of the Exchange Act, or the rules and regulations promulgated by the Securities and Exchange Commission under the Exchange Act** . . . **and relinquishes all rights and remedies** accorded by applicable law to a purchaser of securities to the maximum extent permitted by law . . . ; and **(c) hereby and forever releases and discharges the Seller . . . and Company Released Parties of and from any and all suits, demands, obligations, liabilities, claims and causes of action, contingent or otherwise, of every kind and nature**, at law and in equity, whether asserted, unasserted, absolute, contingent, known or unknown, which such Purchaser . . . may have against any of the Seller Released Parties or Company Released Parties, **to the extent arising from the transactions contemplated by this Agreement**, except for claims arising under, and subject to the limitations contained in, the express terms of this Agreement." (*Id.* at SPA at § 3.6 (emphasis added)).[6]

As a matter of law, these expansive release provisions encompass and preclude Plaintiff's alleged securities fraud claims.  In *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011), the Ninth Circuit held that a similarly broad contractual release was enforceable and barred the plaintiffs' securities fraud allegations against Facebook where: (1) the release was part

---

[6] The SPA defines Plaintiff as a "Purchaser," Mr. Santhanam as the "Seller," and HFN as the "Company."

of a settlement to resolve pending litigation between the plaintiffs and Facebook; (2) the plaintiffs agreed to receive stock from Facebook pursuant to the settlement; and (3) after signing the settlement agreement, the plaintiffs claimed Facebook had violated Rule 10b-5 because it supposedly misrepresented the true value of their stock during settlement discussions. *Id.* at 1038-1041. In rejecting the plaintiffs' theory, the Ninth Circuit explained that "[p]arties involved in litigation know that they are locked in combat with an adversary and thus have every reason to be skeptical of each other's claims and representations[,]" and "[s]uch parties stand on very different footing from those who enter into an investment relationship in the open market[,]" particularly when "the two sides have counsel." *Id.* at 1039. **Thus, the Ninth Circuit held that a settlement that resolves litigation between represented parties "cannot reasonably be interpreted as leaving open the door to litigation about the settlement negotiation process[,]" because "[a] release in such an agreement would be useless to end litigation if it couldn't include claims arising from the settlement negotiations[,]" <u>including claims that "securities law violations took place in connection with the settlement itself.</u>"** *Id.* at 1040 (emphasis added)

Consistent with this binding precedent, Plaintiff has released any claim that HFN committed securities fraud while negotiating the Settlement and SPA, and enforcing the releases in the Settlement and SPA is particularly warranted where: (i) Plaintiff was represented by counsel in the Massachusetts Lawsuit and during settlement negotiations;[7] (ii) those documents also contain broad no-other-representation, no-reliance, and integration-clause provisions, and omit any mention of, let alone restriction on, HFN's stock option pool;[8] and (iii) Plaintiff admits his attorney negotiated a "compromise" to account for any uncertainty regarding HFN's use of its stock option pool (namely, half of HFN's outstanding stock options were allocated to the calculation of how much stock Plaintiff would be permitted to purchase under the Settlement and SPA, thereby increasing his shares in the company).[9]

---

[7] FAC ¶ 25 and Ex. 4; S.S. Decl., Ex. 1 at Settlement at §§ 6.1-6.2 and 7.

[8] S.S. Decl., Ex. 1 at Settlement at §§ 6.3, 6.5, 11, and SPA at § 4.9.

[9] FAC ¶¶ 25, 27; *see also* S.S. Decl., Ex. 1 at Settlement at Recital No. 2 (the Settlement was a "compromise and settlement" of any and all claims as of the date of the Settlement).

### C.      Plaintiff's Claim is Also Barred By the 5-Year Statute of Repose

Pursuant to 28 U.S.C. § 1658(b), a securities fraud claim must be filed "not later than the earlier of . . . 2 years after the discovery of the facts constituting the violation[,] or [] 5 years after such violation[,]" and "[t]he five-year outer limitation period in a § 10(b) claim serves as a statute of repose" which is "a fixed, statutory cut off date" for any claim. *Meide v. Centineo ("Meide I")*, No. CV 19-7171 PA (KSx), 2019 U.S. Dist. LEXIS 234495, at *10 (C.D. Cal. Oct. 31, 2019), *aff'd Meide v. Centineo ("Meide II")*, No. 19-56402, 2022 U.S. App. LEXIS 30288, at *3-4 (9th Cir. Nov. 1, 2022).   The statute of repose is "an unqualified bar on actions instituted" more than 5-years after a "violation" of Section 10(b) has occurred, *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010), and it "begins to run on the date that the plaintiff purchased the securities at issue." *Stitching Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1134 (C.D. Cal. 2011).[10]   Here, the only purchase by Plaintiff alleged in the FAC occurred in **2015**.[11]   Because Plaintiff did not file this action until more than 7-years later in February 2023, (Dkt. No. 1), his claims under Section 10(b) and Rule 10b-5 are time-barred.

Apparently recognizing this defect, Plaintiff asserts "[t]his action is within the five-year statute of repose" because Mr. Santhanam received equity from HFN's stock option pool "between 2019 and 2021," which allegedly continued the "fraudulent scheme" HFN started in 2015.  (FAC ¶¶ 34-35, 120).  There are several problems with this theory.  **First**, courts have repeatedly rejected a "continuing fraud" exception to the statute of repose governing securities fraud claims.  *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1051 (N.D. Cal. 2008) ("A plaintiff may not recover for reliance on representations made prior to the five-year . . . period under a theory of continuing wrong.").[12]

---

[10] *See also Carlucci v. Han*, 886 F. Supp. 2d 497, 514 (E.D. Va. 2012); *Nei Contracting & Eng'g v. Neighborhood Nat'l Bank*, No. 3:15-cv-02954-CAB-(NLS), 2016 U.S. Dist. LEXIS 204270, at *7 (S.D. Cal. July 28, 2016).

[11] FAC ¶¶ 24, 25  29, 33 and Ex. 7; S.S. Decl., Ex. 1.

[12] *See also Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 864 (N.D. Cal. 2011) (rejecting argument that defendant's "continuing violations" allowed securities fraud claim based on untimely violations occurring outside of the repose period); *Clayton v. Landsing Pac. Fun, Inc.*, No. C01-03110 WHA, 2002 U.S. Dist. LEXIS 9446, at *8 (N.D. Cal. May 9, 2022) ("The fact that

**Second**, to be actionable under Section 10(b) or Rule 10b-5, a fraud must cause the plaintiff himself to buy or sell a security.  *Franciscan Mobile Home Owners v. Linc Hous. Corp.*, No. C 10-01087 JW, 2011 U.S. Dist. LEXIS 171431, at *4-5 (N.D. Cal. Feb. 11, 2011) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)).  "Thus, to succeed, even a scheme liability claim 'must have occurred in connection with the purchase or sale of a security.'"  *Shixu Bai v. Tegs Mgmt., LLC*, No. 20cv4942 (DLC), 2022 U.S. Dist. LEXIS 37162, at *14 (S.D.N.Y. Mar. 1, 2022).  Here, Plaintiff at best alleges **one** supposed "fraud" that resulted in **his** purchase of a security: HFN's purported misrepresentation during 2015 settlement negotiations.  (FAC ¶¶ 24-34, 120).  While Plaintiff alleges Messrs. Santhanam and Vaish received stock options years after the Settlement and SPA were executed, there is no allegation that those subsequent transactions caused **Plaintiff** to buy or sell any further HFN shares **himself**.  (*Id.*).  To the contrary, Plaintiff merely contends those transactions "erod[ed] the value of [his] holdings" in HFN, (FAC ¶ 34), which is precisely the type of securities fraud "holder" claim Plaintiff tried to allege in his original Complaint, and which Supreme Court law forbids and this Court already rejected in granting HFN's first Motion to Dismiss.  *Blue Chip Stamps*, 421 U.S. at 731.

When – as in this case – a plaintiff purchases securities outside of the repose period and then seeks to maintain a Section 10(b) claim based on later events that are not independently actionable, courts routinely dismiss the claim as untimely.  *Durning v. Citibank*, 990 F.2d 1133, 1135-1137 (1993) (then-existing 3-year statute of repose barred securities fraud claim filed in 1985 where plaintiffs purchased bonds in 1981 due to a misleading offering statement, because: (i) there was no merit to plaintiffs' argument that "they brought their suit well within the three-year cutoff because defendants' fraud continued until 1985" when defendants redeemed the bonds early; (ii) the plaintiffs' securities fraud claim actually "arose in 1981, when the [offering] statement

---

plaintiff was fraudulently induced to hold her shares within the limitations period is irrelevant insofar as Rule 10b-5 is concerned, since the rule does not provide a cause of action for claims that fraudulent statements caused a shareholder not to sell her stock.  Since plaintiff does not allege any purchases or sales induced by fraud in the [] repose period, her Rule 10b-5 claim must be dismissed.");  *In re Teva Sec. Litig.*, No. 3:17-cv-558 (SRU), 2021 U.S. Dist. LEXIS 60195, at *25 (D. Conn. Mar. 30, 2021) (no law "suggest[s] that otherwise-untimely misstatements or omissions would be timely because they were part of a Defendant's scheme").

misrepresented the bonds' redemption dates and the bonds were purchased"; and (iii) the plaintiffs could not legally "dress an equitable tolling argument in new clothing to avoid the harsh result" of the statute of repose).  Simply put, "to be liable for scheme liability" the defendant "must have committed an independently actionable violation of Rule 10b-5(a) and (c)" within the repose period, and it is not enough to allege the defendant "committed any act in furtherance of the scheme" during that period.  *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 299 F. Supp. 3d 1055, 1063-1064 (D. Minn. 2018).  Because Plaintiff did not buy or sell any securities due any alleged fraud within the last 5-years, his securities fraud claim is untimely.[13]

### D.   Plaintiff's Claim is Barred By the 2-Year Statute of Limitations

The 2-year statute of limitations on a securities fraud claim begins to run "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation' – whichever comes first."  *Merck & Co.*, 559 U.S. at 637. Plaintiff allegedly realized HFN's misuse of its stock option pool in 2022 when he "was able to see" the capitalization table for 2019 through unspecified "means," which showed options were issued to Mr. Vaish, as well as Ganesh Krishnan.  (FAC ¶¶ 24, 30-31).  Because Plaintiff was admittedly able to obtain and review HFN's 2019 capitalization table in 2022 – and because the FAC does not indicate Plaintiff reasonably tried to obtain that information in 2019, let alone was denied access to it – his securities fraud claim is further time-barred.

---

[13] *See also Shixu Bai*, 2022 U.S. Dist. LEXIS 37162, at *18-20 (5-year statute of repose barred securities fraud claim filed in 2020 because: (i) the "only purchase of a security by [plaintiff] occurred in 2013"; (ii) plaintiff could not extend the statute of repose by claiming the defendants "engaged in a complex scheme between 2013 and 2019 to obtain and then retain [his] investment"; and (iii) the plaintiff "failed to allege" an actionable fraud "within the five year period prior to the filing of [his] action."); *Meide I*, 2019 U.S. Dist. LEXIS 234495, at *5-7, 9-12 (rejecting plaintiff's argument that securities fraud "claims [were] not time-barred because Defendants 'lulled' [him] into believing he would receive a return on his investment for several years"), *aff'd Meide II*, 2022 U.S. App. LEXIS 30288, at *3-4; *Isanaka v. Spectrum Techs. USA Inc.*, 131 F. Supp. 2d 353, 357-358 (N.D.N.Y. 2001) (a "violation of section 10(b) and Rule 10b-5 'can take place before and up to the time when the sale of securities take place, but not after the investment is made").

### E.   Plaintiff Has Failed to Adequately Plead a Securities Fraud Claim

Securities fraud claims are subject to heightened pleading standards under Rule 9 and the PSLRA,[14] and these requirements apply in "scheme liability" cases.[15]  Plaintiff's fraud allegations fall well-short of what is required.  (FAC ¶¶ 24-34, 120).  There are no allegations that HFN's attorney made any definitive representation during settlement discussions about the future use of the company's stock option pool, or that he did so for any fraudulent or deceptive purpose – **nor are an attorney's statements during settlement talks actionable at all, since they are protected by the litigation privilege**. *Kia Motors Corp. v. Keystone Auto. Indus.*, No. CV 08-4584-JFW (JCx), 2009 U.S. Dist. LEXIS 134874, at *9 (C.D. Cal. June 26, 2009) ("the litigation privilege generally applies to . . . statements made by counsel during settlement negotiations").  Likewise, there are no facts showing HFN intended Plaintiff to rely on any such representation – to the contrary, the Settlement and SPA omit any mention of the stock option pool and contain no-other-representation, no-reliance, and integration-clause provisions disclaiming all earlier representations.  Finally, Plaintiff admits that in December 2019 – more than 4-years after the Settlement and SPA were executed – Mr. Santhanam had **not** received **any** HFN stock options, which is fundamentally inconsistent with any fraud or fraudulent intent years earlier.  (FAC ¶ 31).

### F.   Plaintiff Cannot Maintain a Tag-Along Section 20(a) Claim

Without a valid Section 10(b) claim, Plaintiff's tag-along Section 20(a) claim also fails. *Nguyen*, 962 F.3d at 419, *Zucco Ptrs., LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

### G.   Plaintiff Has Failed to State a Valid Fiduciary Duty Claim Against HFN

Plaintiff's claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty are governed and barred by Delaware law.  *In re VeriSign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1214-1215 (N.D. Cal. 2007).  A "corporation owes no fiduciary duties to its owners, the stockholders, [] nor can it aid and abet the fiduciary breaches of those who direct its operations" –

---

[14] 15 U.S.C. § 78u-4(b); *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

[15] *World Surv. Grp., Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F. Supp. 3d 1233, 1237 (N.D. Cal. 2014); *In re Garrett Mot. Sec. Litig.*, 2022 U.S. Dist. LEXIS 60843, at *51 n.14 (S.D.N.Y. Mar. 31, 2022).

thus, such "claims against [a] corporation must be dismissed." *Buttonwood Tree Value Ptrs., L.P. v. R.l Polk & Co.*, 2014 Del. Ch. LEXIS 141, at *1 (Ch. Aug. 7, 2014).

### H.      **The Court Lacks Subject Matter Jurisdiction Over Plaintiff's DGCL Claim**

The Delaware Chancery Court has "exclusive jurisdiction" over Plaintiff's claim for books and records under the DGCL, and dismissal of that claim is required. 8 Del. C. § 220(c); *Utterkar v. Ebix, Inc.*, No. 14-CV-02250-LHK, 2015 U.S. Dist. LEXIS 113361, at *32-33 (N.D. Cal. Aug. 25, 2015).

### I.      **Plaintiff Also Cannot Maintain Any of His Claims on a Derivative Basis**

The gravamen of the FAC is that HFN has been mismanaged in a variety of ways that have supposedly diminished the value of Plaintiff's stake in the company.[16]   These "[c]laims of corporate mismanagement are classically derivative claims." *In re Saba Software, Inc. S'holder Litig.*, 2017 Del. Ch. LEXIS 52, at *47 & n. 106 (Del. Ch. Mar. 31, 2017).  Yet, Plaintiff cannot legally proceed on a derivative basis because: (1) Plaintiff is *pro se*;[17] (2) the FAC is not verified as required Rule 23.1; and (3) Plaintiff has not even attempted to show demand futility under the applicable Delaware standard, much less with the particularity required by Rule 23.1.[18]

## VI.     **CONCLUSION**

Because Plaintiff has now twice made clear he cannot establish jurisdiction or venue or state any viable claim as to HFN, the FAC should be dismissed with prejudice as to HFN.


Dated:  June 14, 2023                        TROUTMAN PEPPER HAMILTON SANDERS LLP

                                             By: /s/ Matthew H. Ladner
                                                   Matthew H. Ladner
                                                   Attorneys for Defendant HFN, INC.

---

[16] FAC ¶¶ 39, 55-56, 62-64, 72, 85, 92, 97, 100, 104, 131, 138 (collectively alleging HFN's "resources" are being misused "at the expense" and to the detriment of the company itself, and Plaintiff has therefore been "denied the value and appreciation of the resources of HFN).

[17] *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 662-663 (9th Cir. 2008); *Pinnavaia v. Moody-Stuart*, No. C 09-03803 CW, 2009 U.S. Dist. LEXIS 115453, at *7-9 (N.D. Cal. Dec. 11, 2009).

[18] *United Food & Comm. Wrks. Union v. Zuckerberg*, 262 A.3d 1034, 1049, 1059 (Del. 2021) (describing 3-part demand futility test that "is not excused lightly").