**Troutman Pepper Hamilton Sanders LLP**
Matthew H. Ladner (SBN 284594)
350 S. Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone:  (213) 928-9816
E-mail: Matthew.Ladner@troutman.com

William M. Taylor (*pro hac vice*)
125 High St., 19th Floor
Boston, MA 02110
Telephone:  (617) 204-5186
E-mail:  William.Taylor@troutman.com

Attorneys for Defendant
KUMAR SHIRALAGI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLAN MILLER,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC.; KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company; SRIDHAR DANTHANAM; KUMAR SHIRLAGI; PAVAN VAISH; and VANI KOLA,<br><br>　　　　　　Defendant. | Case No. 3:23-cv-0533-VC<br><br>**KUMAR SHIRALAGI'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR: (1) LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE, FOR (2) FAILURE TO STATE A CLAIM; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Kumar Shiralagi]<br><br>**Date:**　　July 27, 2023<br>**Time:**　　10:00 a.m.<br>**Ctrm:**　　4<br>**Floor:**　　17th |

# TABLE OF CONTENTS

**Page**

I.      CIVIL LOCAL RULE 7-4 STATEMENT OF ISSUES TO BE DECIDED ................... 1

II.     FACTS REGARDING THE LACK OF PERSONAL JURISDICTION OVER SHIRALAGI .............................................................................................................. 2

III.    FACTS ALLEGED IN THE FAC ............................................................................... 3

IV.     DISMISSAL IS REQUIRED UNDER RULES 12(B)(2) AND 12(B)(3) ....................... 5

       A.      The Court Does Not Have General or Specific Personal Jurisdiction Over Shiralagi ............................................................................................................. 5

       B.      The Exchange Act Does Not Confer Jurisdiction Over Shiralagi ......................... 6

       C.      This Court is Not a Proper Venue for Plaintiff's Claims Against Shiralagi ............................................................................................................. 6

V.      ALTERNATIVELY, RULES 12(B)(1), 12(B)(6), AND 23.1 REQUIRE DISMISSAL ............................................................................................................. 6

       A.      Plaintiff Fails to State a Valid Claim for Securities Fraud Against Shiralagi ............................................................................................................. 6

              1.      The Settlement and SPA Bar Plaintiff's Exchange Act Claims ................ 7

              2.      Plaintiff's Claim is Also Barred By the 5-Year Statute of Repose ......... 10

              3.      Plaintiff's Claim is Barred By the 2-Year Statute of Limitations ........... 12

              4.      Plaintiff Has Failed to Adequately Plead a Securities Fraud Claim ........ 12

       B.      Plaintiff Cannot Maintain a Tag-Along Section 20(a) Claim .............................. 13

       C.      Plaintiff Has Failed to State a Valid Fiduciary Duty Claim Against Shiralagi ........................................................................................................... 13

       D.      The Court Lacks Subject Matter Jurisdiction Over Plaintiff's DGCL Claim ............................................................................................................... 15

VI.     CONCLUSION ......................................................................................................... 15

MOTION TO DISMISS
CASE NO. 3:23-CV-0533-VC

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert v. Alex. Brown Mgmt. Servs.*,
    Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133 (Ch. Aug. 26, 2005) ................................... 14

*In re Amgen Inc. Sec. Litig.*,
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................. 13

*Betz v. Trainer Wortham & Co.*,
    829 F. Supp. 2d 860 (N.D. Cal. 2011) ................................................................. 11

*In re BGC Partners, Inc. Derivative Litig.*,
    2021 Del. Ch. LEXIS 213 (Ch. Sep. 20, 2021) ....................................................... 15

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ............................................................................................. 11

*Bocock v. Innovate Corp.*,
    No. 2021-0224-PAF, 2022 Del. Ch. LEXIS 307 (Ch. Oct. 28, 2022) ............................ 14, 15

*Brady v. Delta Energy & Communs. Inc.*,
    598 F. Supp. 3d 865 (C.D. Cal. 2022) ................................................................. 12

*Bristol-Myers Squibb Co. v. Super. Ct.*,
    137 S. Ct. 1773 (2017) ......................................................................................... 5

*Carlucci v. Han*,
    886 F. Supp. 2d 497 (E.D. Va. 2012) ................................................................. 10

*Clayton v. Landsing Pac. Fun, Inc.*,
    No. C01-03110 WHA, 2002 U.S. Dist. LEXIS 9446 (N.D. Cal. May 9, 2022) ................... 11

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................................. 7

*Doe v. Walmart Inc.*,
    No. 18-CV-02125-LHK, 2019 U.S. Dist. LEXIS 21975 (N.D. Cal.
    Feb. 8, 2019) ....................................................................................................... 5

*Durning v. Citibank*,
    990 F.2d 1133 (9th Cir. 1993) ........................................................................... 11

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
    640 F.3d 1034 (9th Cir. 2011) ............................................................................. 9

MOTION TO DISMISS
CASE NO. 3:23-CV-0533-VC

*In re Garrett Mot. Sec. Litig.*,
   2022 U.S. Dist. LEXIS 60843 (S.D.N.Y. Mar. 31, 2022) ...................................................... 12

*Golub v. Gigamon Inc.*,
   372 F. Supp. 3d 1033 (N.D. Cal. 2019) ................................................................................... 12

*Gopher Media Ltd. Liab. Co. v. Modern Doc Media*,
   No. 3:22-CV-00131 TWR (DDL), 2023 U.S. Dist. LEXIS 10650 (S.D. Cal.
   Jan. 20, 2023) ........................................................................................................................... 13

*In re Gupta Corp. Sec. Litig.*,
   900 F. Supp. 1217 (N.D. Cal. 1993) ....................................................................................... 13

*Harris v. Cnty. of Orange*,
   682 F.3d 1126 (9th Cir. 2012) ................................................................................................... 7

*In re iPhone Application Litig.*,
   No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865 (N.D. Cal.
   Sep. 20, 2011) ........................................................................................................................... 15

*Isanaka v. Spectrum Techs. USA Inc.*,
   131 F. Supp. 2d 353 (N.D.N.Y. 2001) .................................................................................... 12

*In re JPMorgan Chase Derivative Litig.*,
   No. 2:13-cv-02414-KJM-EFB, 2014 U.S. Dist. LEXIS 151370 (E.D. Cal. Oct.
   23, 2014) ..................................................................................................................................... 6

*In re Juniper Networks, Inc. Sec. Litig.*,
   542 F. Supp. 2d 1037 (N.D. Cal. 2008) .................................................................................. 10

*Kia Motors Corp. v. Keystone Auto. Indus.*,
   No. CV 08-4584-JFW, 2009 U.S. Dist. LEXIS 134874 (C.D. Cal.
   June 26, 2009) ........................................................................................................................... 13

*Kramer v. W. Pac. Inds., Inc.*,
   546 A.2d 348 (Del. 1988) ........................................................................................................ 14

*In re McDonald's Corp. Stockholder Deriv. Litig.*,
   No. 2021-0324-JTL, 2023 Del. Ch. LEXIS 23 (Ch. Jan. 25, 2023) ....................................... 14

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ..................................................................................................... 7

*Meide v. Centineo ("Meide I")*,
   No. CV 19-7171 PA, 2019 U.S. Dist. LEXIS 234495 (C.D. Cal. Oct. 31, 2019) ........... 10, 12

*Meide v. Centineo ("Meide II")*,
   No. 19-56402, 2022 U.S. App. LEXIS 30288 (9th Cir. Nov. 1, 2022) ............................. 10, 12

*Meland v. Weber*,
2 F.4th 838 (9th Cir. 2021) ................................................................................................ 13

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ............................................................................................... 10, 12

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017) .......................................................................................... 5, 6

*Nei Contracting & Eng'g v. Neighborhood Nat'l Bank*,
No. 3:15-cv-02954-CAB-(NLS), 2016 U.S. Dist. LEXIS 204270 (S.D. Cal. July
28, 2016) ............................................................................................................................ 10

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ....................................................................................... 12, 13

*Pinnavaia v. Moody-Stuart*,
No. C 09-03803 CW, 2009 U.S. Dist. LEXIS 115453 (N.D. Cal. Dec. 11, 2009) ................ 14

*Romman v. Gao*,
No. 2:11-cv-01178-MMD-CWH, 2013 U.S. Dist. LEXIS 60621 (D. Nev. Apr.
29, 2013) ............................................................................................................................ 14

*Rosenbloom v. Pyott*,
765 F.3d 1137 (9th Cir. 2014) .......................................................................................... 14

*In re Saba Software, Inc. S'holder Litig.*,
2017 Del. Ch. LEXIS 52 (Del. Ch. Mar. 31, 2017) .............................................................. 14

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ............................................................................................ 5

*Shixu Bai v. Tegs Mgmt., LLC*,
No. 20cv4942 (DLC), 2022 U.S. Dist. LEXIS 37162 (S.D.N.Y. Mar. 1, 2022) ................... 11

*Simon v. Hartford Life, Inc.*,
546 F.3d 661 (9th Cir. 2008) ............................................................................................ 14

*Stitching Pensioenfunds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................................ 10

*Swartz v. KPMG LLP*,
476 F. 3d 756 (9th Cir. 2007) ........................................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ......................................................................................................... 12

*In re Teva Sec. Litig.*,
No. 3:17-cv-558 (SRU), 2021 U.S. Dist. LEXIS 60195 (D. Conn. Mar. 30,
2021) ................................................................................................................................. 11

158217774v6

*Thornton v. Bernard Techs., Inc.*,
　No. 962-VCN, 2009 Del. Ch. LEXIS 29 (Ch. Feb. 20, 2009) ................................ 14

*United Food & Comm. Wrks. Union v. Zuckerberg*,
　262 A.3d 1034 (Del. 2021)...................................................................................... 14

*Utterkar v. Ebix, Inc.*,
　No. 14-CV-02250-LHK, 2015 U.S. Dist. LEXIS 113361 (N.D. Cal. Aug. 25,
　2015)....................................................................................................................... 15

*In re VeriSign, Inc. Derivative Litig.*,
　531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................................. 13

*VGS, Inc. v. Castiel*,
　No. 17995, 2003 Del. Ch. LEXIS 16 (Ch. Feb. 28, 2003)..................................... 14

*Walden v. Fiore*,
　571 U.S. 277 (2014) ................................................................................................. 6

*West Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
　299 F. Supp. 3d 1055 (D. Minn. 2018) .................................................................. 11

*World Surv. Grp., Inc. v. La Jolla Cove Inv'rs, Inc.*,
　66 F. Supp. 3d 1233 (N.D. Cal. 2014) ................................................................... 12

*Zucco Ptrs., LLC v. Digimarc Corp.*,
　552 F.3d 981 (9th Cir. 2009).................................................................................. 13

**Statutes**

8 Del. C. § 220 ............................................................................................................ 15

28 U.S.C. § 1391 ........................................................................................................... 6

28 U.S.C. § 1658 ......................................................................................................... 10

15 U.S.C. § 78u-4 ........................................................................................................ 12

Fed. R. Civ. P. 8 .......................................................................................................... 15

Fed. R. Civ. P. 9 .................................................................................................... 12, 13

Fed. R. Civ. P. 10 ........................................................................................ 6, 7, 9, 10, 11

Fed. R. Civ. P. 12 ............................................................................................. 2, 6, 8, 9

Fed. R. Civ. P. 23.1 ..................................................................................................... 14

N.D. Cal. Civ. L.R. 7-2 ................................................................................................. 1

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO THE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE THAT** on July 27, 2023 at 10:00 a.m. in Courtroom 4 of the United States District Court for the Northern District of California, located on the 17th Floor of 450 Golden Gate Avenue, San Francisco, California 94102, or at such other date and time ordered by the Court, Defendant Kumar Shiralagi ("**Shiralagi**") will and hereby does move the Court for an order dismissing the First Amended Complaint ("**FAC**") filed by Plaintiff Allan Miller ("**Plaintiff**") as to Shiralagi with prejudice, pursuant to Federal Rules of Civil Procedure 8, 9, 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), and 23.1, as well as applicable case law.  Pursuant to Civil Local Rule 7-2, Shiralagi requests an order dismissing the FAC as to Shiralagi on the grounds that the Court lacks personal jurisdiction over Shiralagi and this Court is an improper venue for Plaintiff's claims.  In the alternative, HFN requests that the Court dismiss the FAC as to Shiralagi because: (1) Plaintiff has failed to state any valid claim for relief against Shiralagi; (2) this Court lacks subject matter jurisdiction over Plaintiff's claim under Section 220 of the Delaware General Corporate Law ("**DGCL**"); and (3) Plaintiff cannot legally maintain any of his claims on a derivative basis.  The Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Kumar Shiralagi, the pleadings and other documents filed in this action, and any argument or evidence that the Court may consider.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

I.      **CIVIL LOCAL RULE 7-4 STATEMENT OF ISSUES TO BE DECIDED**

<u>**Issue No. 1**</u>:  **The Court Lacks Personal Jurisdiction Over Shiralagi**.  Plaintiff cannot show that general jurisdiction exists over Shiralagi because Shiralagi has never lived in California or had "continuous and systematic general business contacts" with the state.  Specific jurisdiction also does not exist because, among other reasons, none of Plaintiff's claims arise out of Shiralagi's limited contacts with California.

<u>**Issue No. 2**</u>:  **Venue in This Court is Improper**.  Venue is improper because no defendant resides in California, Plaintiff's claims have no California nexus, Shiralagi is not subject to personal jurisdiction here, and it does not appear any of the other named defendants are either.

**Issue No. 3**:  **Alternatively, Rules 12(b)(1), 12(b)(6), and 23.1 Require Dismissal.**

**A)**     Plaintiff asserts claims under the Exchange Act based on the allegation that he was induced to enter a Settlement Agreement ("**Settlement**") and Stock Purchase Agreement ("**SPA**") in 2015 due to purportedly false statements made by HFN's attorney during settlement discussions. Plaintiff alleges all "Defendants" engaged in this purported "scheme" which Shiralagi "condoned and assisted" by "virtue of [his] operational and management control in HFN . . . ."  (FAC ¶¶ 121, 124).  These claims are barred by the broad release provisions contained in the Settlement and SPA, both of which Plaintiff negotiated while he was represented by counsel.  In addition, these claims are untimely under the applicable 5-year statute of repose and 2-year statute of limitations, and they are not alleged with the legally required specificity.

**B)**     Plaintiff asserts claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty against all Defendants, including Shiralagi, based on the supposed mismanagement of HFN's business and misuse of the company's resources.  However, these are classic derivative claims which Plaintiff cannot legally maintain because he is a *pro se* litigant and also has not satisfied the requirements of Rule 23.1.  In addition, the SAC barely mentions Shiralagi and thus violates the rule that fiduciary duty claims must be separately and specifically alleged in non-conclusory fashion as to each director – "group pleading" will not suffice.

**C)**     If Plaintiff is attempting to maintain a books and records claim against Shiralagi, the Delaware Court of Chancery has exclusive subject matter jurisdiction over that claim.

## II.     FACTS REGARDING THE LACK OF PERSONAL JURISDICTION OVER SHIRALAGI

The FAC contains no allegations at all about Shiralagi's connections to California, which is not surprising because, as Shiralagi's Declaration shows, Shiralagi has never lived or worked in California, and Plaintiff's alleged claims in this case are not remotely connected to Shiralagi's sporadic visits to California.  Shiralagi served as a Director of HFN from June 2012 to June 2022. (Declaration of Kumar Shiralagi ("**K.S. Decl.**"), ¶ 4).  During that entire time, Shiralagi lived in India.  (*Id.* ¶ 5).  After he resigned as a Director from HFN, Shiralagi began residing for part of the year in Austin, Texas.  (*Id.* ¶ 12).  He lives the rest of the year in India.  (*Id.*).

Shiralagi is not a shareholder in HFN, and never has been.  (*Id.* ¶ 3).  Shiralagi has never lived or worked in California.  (*Id.* ¶ 6).  Shiralagi has never owned, leased, subleased, or occupied any real property in California, or maintained any office, post office box, mailing address, telephone listing, or other physical address in California.  (*Id.* ¶ 13).  All HFN Board meetings were held in India; the only exception is that during COVID, a few meetings were held over Zoom. (*Id.* ¶ 14).  Shiralagi never participated in any Board meetings in California (because HFN never held any there) or performed his duties as a director while in California. (*Id.* ¶ 15).  Shiralagi has never met Plaintiff or communicated with him other than to inform him in July 2022 that he was no longer a member of the HFN Board.  (*Id.* ¶ 16).

While he was a HFN Director (between June 2012 and June 2022), Shiralagi visited California five or six times for brief periods (typically three to four days).  (*Id*. ¶ 7).  The visits were typically for personal reasons only, such as vacation or to visit family or friends.  (*Id*. ¶ 8). For example, Shiralagi and his wife visited California in 2021 to meet their prospective son-in-law, and then again in July 2022 to visit their daughter and son-in-law.  (*Id.*).

On a trip to California in 2016, Shiralagi briefly participated in a meeting with a prospective HFN customer.  (*Id*. ¶ 10).  HFN did not make any business decisions during that meeting.  (*Id.*) The meeting did not have anything to do with Plaintiff, any shareholder, or any of the allegations set forth in Plaintiff's FAC.  (*Id.*)

Shiralagi's July 2022 visit occurred after he had resigned as a Director from HFN. (*Id.* ¶ 11).  He had no role in HFN at that time.  (*Id.*).  During that visit, he met HFN's CEO, Sridhar Santhanam, and an individual named Rahul Singh, for coffee as a courtesy in light of his past history with HFN.  (*Id.*).  During that meeting which lasted about an hour, Shiralagi did not act on behalf of HFN (nor could he have since he had already resigned from the company), and Shiralagi is not aware of Messrs. Santhanam or Singh taking any actions on behalf of HFN while they briefly met.  (*Id.*).

## III.    FACTS ALLEGED IN THE FAC

As described in more detail in HFN's pending Motion to Dismiss, (Dkt. No. 33), the FAC mostly recycles allegations from Plaintiff's original Complaint concerning various ways in which

HFN is supposedly being mismanaged with respect to: (1) allegedly "lax corporate governance. (FAC ¶¶ 50-54 (the "**Governance Allegations**")); (2) the supposed lack of "basic corporate oversight and controls" due to the absence of a human resources department and procedures.  (*id.* ¶¶ 55-58 (the "**HR Allegations**")); (3) HFN's partnership with Dubai-based Seed Group to explore business opportunities in the Middle East (*id.* ¶¶ 59-63 (the "**Seed Allegations**")); (4) Mr. Santhanam and Ruby Jha supposedly using their HFN travel budgets to engage in non-HFN activities (*id.* ¶¶ 66-73 (the "**Distraction Allegations**")); (5) HFN's alleged failure to protect and expand its patent portfolio (*id.* ¶¶ 74-87 (the "**Patent Allegations**")); (6) the purported failure to maintain and update HFN's software (*id.* ¶¶ 88-101 (the "Software Allegations")); and (7) the allegedly poor design of HFN's website  (*id.* ¶¶ 102-105 (the "**Webpage Allegations**")).

The FAC also alleges that in 2015, Plaintiff, through counsel, negotiated a Settlement and related SPA with HFN, Mr. Santhanam and others in order to resolve then-pending litigation between them in Massachusetts federal court (the "**Massachusetts Lawsuit**").  According to Plaintiff, he was induced to enter the Settlement and SPA and buy additional HFN stock in 2015 because HFN's attorney represented that the company's pool of unissued stock options would be used to attract and compensate future employees or may not be issued at all.  Plaintiff contends that years after he executed the Settlement and SPA, HFN used its stock option pool to provide equity to insiders, including Mr. Santhanam and Board member Pavan Vaish ("**Mr. Vaish**"). (*Id.* ¶¶ 24-33 and Ex. 4 and 7).  Plaintiff claims HFN violated the Exchange Act by misrepresenting the purpose of its stock option pool during settlement discussions.  (*Id.* ¶¶ 34, 119-126).

As to Shiralagi, the FAC only mentions him a few times in passing while referencing an alleged "scheme" from "ten years ago" that is not the subject of this lawsuit and describing how HFN's website supposedly continued to list Shiralagi as a Director for a few months after he left the company.  (*Id.* ¶¶ 38, 43-46, 51).  Based on these minimal allegations, Plaintiff (a) lumps Shiralagi together with all other Defendants in the FAC's securities fraud and fiduciary duty claims, but (b) fails to provide any detail whatsoever regarding how Shiralagi – as opposed to any other Defendant – actually committed, or even participated in, these purported violations. (*Id.* ¶ 121 (broadly alleging all "Defendants" engaged in a "scheme" to induce Plaintiff to enter

the Settlement and SPA and buy shares in HFN), ¶ 124 (alleging Shiralagi "condoned and assisted" that alleged scheme, but omitting any supporting facts or details), ¶¶ 130 and 137 (alleging all "Defendants" including Shiralagi breached their fiduciary duties and aided and abetted in those breaches, but omitting any further allegations about acts or omissions by Shiralagi specifically)).

## IV.     DISMISSAL IS REQUIRED UNDER RULES 12(B)(2) AND 12(B)(3)

### A.     The Court Does Not Have General or Specific Personal Jurisdiction Over Shiralagi

**First**, general personal jurisdiction is lacking.  For general jurisdiction to exist over a nonresident defendant, the defendant "must engage in 'continuous and systematic general business contacts'" with the forum state.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780 (2017). Here, general jurisdiction does not exist over Shiralagi because he does not live in California or have "continuous and systematic general business contacts" with California.  *See Doe v. Walmart Inc.*, No. 18-CV-02125-LHK, 2019 U.S. Dist. LEXIS 21975, *13 (N.D. Cal. Feb. 8, 2019) ("None of the Individual Defendants are alleged to have any connection with California whatsoever, let alone continuous and systematic contacts with California.  Therefore, the Court does not exercise general jurisdiction over the Individual Defendants.").

**Second**, specific personal jurisdiction is also lacking.  In the Ninth Circuit, a plaintiff must satisfy "a three-part test to determine whether a defendant has sufficient contacts to be subject to specific personal jurisdiction." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136 (9th Cir. 2017).  "The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]" *Id*. at 1142.  Next, "the claim must be one which arises out of or relates to the defendant's forum-related activities[.]"  *Id.*  Finally, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."  *Id.*  Here, Plaintiff cannot satisfy any of these requirements, much less all three.  Plaintiff fails to allege that Shiralagi purposely

directed his activities or purposely availed himself of the privilege of doing business in California. The fact that **<u>Plaintiff</u>** is a California resident is not remotely sufficient to satisfy the purposeful direction / purposeful availment test because "the plaintiff cannot be the only link between the defendant and the forum[,]" and "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 285-286 (2014); *see also Morrill,* 873 F.3d at 1148 ("when a defendant's relationship to the forum state arises from the fortuity of where the plaintiff resides," it "does not provide the basis for specific jurisdiction there."). Here, as shown in his Declaration, Shiralagi had very little contact with California, and, to the extent he did, Plaintiff's securities fraud, fiduciary duty, and books and records claims do not arise out of those minimal contacts. Thus, there is no basis at all – much less a reasonable justification – for exercising personal jurisdiction over Shiralagi.

### B.  The Exchange Act Does Not Confer Jurisdiction Over Shiralagi

As established below in Sections V.A-B, Plaintiff has failed to allege a valid claim under the Exchange Act. Thus, the Exchange Act cannot confer jurisdiction over any of Plaintiff's claims. *In re JPMorgan Chase Derivative Litig.*, No. 2:13-cv-02414-KJM-EFB, 2014 U.S. Dist. LEXIS 151370, at *41, 45, 68 (E.D. Cal. Oct. 23, 2014) (Exchange Act could not confer personal jurisdiction over state-law claims where plaintiff failed to plead a valid Exchange Act claim).

### C.  This Court is Not a Proper Venue for Plaintiff's Claims Against Shiralagi

Venue is also lacking under 28 U.S.C. § 1391 because: (1) the FAC does not allege any Defendant resides in California; (2) Plaintiff's claims lack any nexus to California; and (3) Shiralagi is not subject to personal jurisdiction here, nor are there well-pleaded facts indicating any other Defendant is. (FAC ¶¶ 5-10). Accordingly, dismissal is warranted under Rule 12(b)(3).

## V.  ALTERNATIVELY, RULES 12(B)(1), 12(B)(6), AND 23.1 REQUIRE DISMISSAL

### A.  Plaintiff Fails to State a Valid Claim for Securities Fraud Against Shiralagi

Plaintiff's claim for securities fraud focuses on his purchase of additional HFN shares in 2015 pursuant to the Settlement and SPA he negotiated through counsel. (FAC ¶¶ 24-36, 120-122, 124-126). In addition, it appears Plaintiff is proceeding under Rules 10b-5(a) and (c) only, which collectively: (1) prohibit any "device, scheme, or artifice to defraud" and "any act, practice,

or course of business which operates or would operate as a fraud or deceit upon any person"; and
(2) are known as Section 10(b)'s "scheme liability" provisions. (*Id.* ¶¶ 34-35, 120). As explained
below, Plaintiff has not stated a valid securities fraud claim as to Shiralagi, nor can he.

       **1.**      **The Settlement and SPA Bar Plaintiff's Exchange Act Claims**

      If a complaint references a document that contains a release barring the plaintiff's claims,
a court may consider and enforce the release at the pleading stage. *Marder v. Lopez*, 450 F.3d 445,
448, 454 (9th Cir. 2006). Here, the FAC alleges HFN – and all other Defendants including
Shiralagi – committed securities fraud by misrepresenting the purpose of HFN's stock option pool
during 2015 settlement discussions, resulting in Plaintiff agreeing to purchase additional HFN
shares pursuant to the Settlement and SPA. (FAC ¶¶ 24-34, 120 and Exs. 4, 7). However, the
Settlement and SPA contain broad release provisions that prohibit Plaintiff from maintaining any
claims that existed when he executed those documents against HFN **or** any of its "directors" or
other "agents," including any claims under the Exchange Act.[1] Specifically, Plaintiff agreed in the
Settlement to:

> **[F]orever release and discharge** . . . **Defendants including
> without limitation each Defendant's** officers, **directors**,
> shareholders, **agents**, attorneys, investors, parents, subsidiaries,
> affiliates, successors, predecessors, assigns, heirs (the 'Releasees')
> from **any and all claims, demands, debts, liens, causes of action,
> or liabilities, of whatsoever kind and nature**, character and
> description, whether in law or equity, whether as a shareholder,
> sounding in tort, contract or other applicable law, **whether known
> or unknown**, fixed or contingent, concealed or hidden, latent or
> patent, anticipated or unanticipated, direct or derivative
> (collectively, 'Claims'), including, **but not limited to**, any Claims
> arising out of, in connection with, or in any way related to the
> [Massachusetts] Lawsuit and the facts alleged therein in any way
> related to the [parties' prior] Lawsuit and the facts alleged therein.
> **It is understood and agreed that this shall be a full and complete
> release**, and includes all consideration of any kind or character,

---

[1] The Settlement and SPA are already properly before this Court by virtue of Mr. Santhanam's Declaration authenticating and attaching those documents in support of HFN's pending Motion to Dismiss, (Dkt. Nos. 33, 33-1), and the Court can and should consider the Settlement and SPA in connection with Shiralagi's Motion as well. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-1132 (9th Cir. 2012) (granting request for judicial notice of declaration and attached exhibits); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 941 (C.D. Cal. 2015) ("It is well established that a court can take judicial notice of its own files and records").

including any actual, consequential or other damages alleged or which could have been alleged as against Defendants in the [Massachusetts] Lawsuit **or as of the date of this Settlement Agreement**." (Dkt. No. 33-1 at Settlement at § 3.1 (emphasis added)).

Similarly, Plaintiff further agreed in the SPA that:

> **Purchaser has independently and without reliance upon the Seller or the Company, and based on such information and the advice of such advisors as Purchaser has deemed appropriate, made its own independent analysis and decision to enter into this Agreement and to purchase the Shares it is purchasing hereunder.** Such Purchaser acknowledges that the Seller may now possess or may hereafter possess nonpublic information concerning the Company not known to such Purchaser (the 'Seller Excluded Information') . . . [which] may or may not be material, may or may not have been disclosed by or on behalf of the Company, and may or may not be available to such Purchaser from sources other than the Company or the Seller. **Such Purchaser . . . hereby: (a) agrees that none of the Seller Released Parties [] or Company Released Parties shall have any liability to such Purchaser** . . . . with respect to, based upon, arising from, resulting from, or relating directly or indirectly to the existence, substance possession, disclosure, or nondisclosure of any Seller Excluded Information whatsoever . . . ; **(b) waives any right, claim or cause of action at law or in equity** with respect to, arising from, based upon, resulting from or relating to directly or indirectly the existence, substance, possession, disclosure or nondisclosure of any Seller Excluded Information, **including, without limitation, pursuant to Sections 10b and 20A of the Exchange Act, or the rules and regulations promulgated by the Securities and Exchange Commission under the Exchange Act . . . and relinquishes all rights and remedies** accorded by applicable law to a purchaser of securities to the maximum extent permitted by law . . . ; and **(c) hereby and forever releases and discharges the Seller . . . and Company Released Parties of and from any and all suits, demands, obligations, liabilities, claims and causes of action, contingent or otherwise, of every kind and nature,** at law and in equity, whether asserted, unasserted, absolute, contingent, known or unknown, which such Purchaser . . . may have against any of the Seller Released Parties or Company Released Parties, **to the extent arising from the transactions contemplated by this Agreement**, except for claims arising under, and subject to the limitations contained in, the express terms of this Agreement." (*Id.* at SPA at § 3.6 (emphasis added)).

As a matter of law, these expansive release provisions encompass and preclude Plaintiff's alleged securities fraud claims, including as to Shiralagi, a former HFN Director.  In *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011), the Ninth Circuit held that a similarly broad contractual release was enforceable and barred the plaintiffs' securities fraud allegations against Facebook where: (1) the release was part of a settlement to resolve pending litigation between the plaintiffs and Facebook; (2) the plaintiffs agreed to receive stock from Facebook pursuant to the settlement; and (3) after signing the settlement agreement, the plaintiffs claimed Facebook had violated Rule 10b-5 because it supposedly misrepresented the true value of their stock during settlement discussions. *Id.* at 1038-1041.  In rejecting the plaintiffs' theory, the Ninth Circuit explained that "[p]arties involved in litigation know that they are locked in combat with an adversary and thus have every reason to be skeptical of each other's claims and representations[,]" and "[s]uch parties stand on very different footing from those who enter into an investment relationship in the open market[,]" particularly when "the two sides have counsel." *Id.* at 1039.  **Thus, the Ninth Circuit held that a settlement that resolves litigation between represented parties "cannot reasonably be interpreted as leaving open the door to litigation about the settlement negotiation process[,]" because "[a] release in such an agreement would be useless to end litigation if it couldn't include claims arising from the settlement negotiations[,]" <u>including claims that "securities law violations took place in connection with the settlement itself.</u>"** *Id.* at 1040 (emphasis added)

Consistent with this binding precedent, Plaintiff has released any claim that HFN **or any of its "<u>directors</u>" or "<u>agents</u>"** committed securities fraud while negotiating the Settlement and SPA, and enforcing the releases in the Settlement and SPA is particularly warranted where: (i) Plaintiff was represented by counsel in the Massachusetts Lawsuit and during settlement negotiations;[2] (ii) those documents also contain broad no-other-representation, no-reliance, and integration-clause provisions, and omit any mention of, let alone restriction on, HFN's stock option

---

[2] FAC ¶ 25 and Ex. 4; Dkt. No. 33-1 at Settlement at §§ 6.1-6.2 and 7.

158217774v6

pool;[3] and (iii) Plaintiff admits his attorney negotiated a "compromise" to account for any uncertainty regarding HFN's use of its stock option pool (namely, half of HFN's outstanding stock options were allocated to the calculation of how much stock Plaintiff would be permitted to purchase under the Settlement and SPA, thereby increasing his shares in the company).[4]

### 2.    Plaintiff's Claim is Also Barred By the 5-Year Statute of Repose

Under 28 U.S.C. § 1658(b), a securities fraud claim must be filed "not later than the earlier of . . . 2 years after the discovery of the facts constituting the violation[,] or [] 5 years after such violation[,]" and "[t]he five-year outer limitation period in a § 10(b) claim serves as a statute of repose" which is "a fixed, statutory cutoff date" for any claim.  *Meide v. Centineo ("Meide I")*, No. CV 19-7171 PA (KSx), 2019 U.S. Dist. LEXIS 234495, at *10 (C.D. Cal. Oct. 31, 2019), *aff'd Meide v. Centineo ("Meide II")*, No. 19-56402, 2022 U.S. App. LEXIS 30288, at *3-4 (9th Cir. Nov. 1, 2022).  The statute of repose is "an unqualified bar," *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010), and it "begins to run on the date that the plaintiff purchased the securities at issue." *Stitching Pensioenfunds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1134 (C.D. Cal. 2011).[5]  Here, the only purchase by Plaintiff alleged in the FAC occurred in **2015**.[6]  Because Plaintiff did not file this action until more than 7-years later in February 2023, (Dkt. No. 1), his claims under Section 10(b) and Rule 10b-5 are time-barred.

Plaintiff asserts "[t]his action is within the five-year statute of repose" because Mr. Santhanam received equity from HFN's stock option pool "between 2019 and 2021," which allegedly continued the "fraudulent scheme" HFN started in 2015.  (FAC ¶¶ 34-35, 120).  There are several problems with this theory.  **First**, courts have repeatedly rejected a "continuing fraud" exception to the statute of repose governing securities fraud claims.  *In re Juniper Networks, Inc.*

---

[3]Dkt. No. 33-1 at Settlement at §§ 6.3, 6.5, 11, and SPA at § 4.9.

[4]FAC ¶¶ 25, 27; *see also* Dkt. No. 33-1 at Settlement at Recital No. 2 (the Settlement was a "compromise and settlement" of any and all claims as of the date of the Settlement).

[5]*See also Carlucci v. Han*, 886 F. Supp. 2d 497, 514 (E.D. Va. 2012); *Nei Contracting & Eng'g v. Neighborhood Nat'l Bank*, No. 3:15-cv-02954-CAB-(NLS), 2016 U.S. Dist. LEXIS 204270, at *7 (S.D. Cal. July 28, 2016).

[6]FAC ¶¶ 24, 25, 29, 33 and Ex. 7; S.S. Decl., Ex. 1.

*Sec. Litig.*, 542 F. Supp. 2d 1037, 1051 (N.D. Cal. 2008) ("A plaintiff may not recover for reliance on representations made prior to the five-year . . . period under a theory of continuing wrong."); *see also Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 864 (N.D. Cal. 2011); *Clayton v. Landsing Pac. Fun, Inc.*, No. C01-03110 WHA, 2002 U.S. Dist. LEXIS 9446, at *8 (N.D. Cal. May 9, 2022); *In re Teva Sec. Litig.*, No. 3:17-cv-558 (SRU), 2021 U.S. Dist. LEXIS 60195, at *25 (D. Conn. Mar. 30, 2021).

**Second**, to be actionable under Section 10(b) or Rule 10b-5, a fraud must cause the plaintiff himself to buy or sell a security.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). "Thus, to succeed, even a scheme liability claim 'must have occurred in connection with the purchase or sale of a security.'"  *Shixu Bai v. Tegs Mgmt., LLC*, No. 20cv4942 (DLC), 2022 U.S. Dist. LEXIS 37162, at *14 (S.D.N.Y. Mar. 1, 2022).  Here, Plaintiff at best alleges **one** supposed "fraud" that resulted in **his** purchase of a security: HFN's purported misrepresentation during 2015 settlement negotiations.  (FAC ¶¶ 24-34, 120).  While Plaintiff alleges Messrs. Santhanam and Vaish received stock options years after the Settlement and SPA were executed, there is no allegation that those subsequent transactions caused **Plaintiff** to buy or sell any further HFN shares **himself**.  (*Id.*).  To the contrary, Plaintiff merely contends those transactions "erod[ed] the value of [his] holdings" in HFN, (*id.* ¶ 34), which is precisely the type of securities fraud "holder" claim Plaintiff tried to allege in his original Complaint, and which Supreme Court law forbids, and this Court has already rejected.  *Blue Chip Stamps*, 421 U.S. at 731.

When – as in this case – a plaintiff purchases securities outside of the repose period and then seeks to maintain a Section 10(b) claim based on later events that are not independently actionable, courts routinely dismiss the claim as untimely.  *Durning v. Citibank*, 990 F.2d 1133, 1135-1137 (9th Cir. 1993).  Simply put, "to be liable for scheme liability" the defendant "must have committed an independently actionable violation of Rule 10b-5(a) and (c)" within the repose period; it is **not** **enough** to allege the defendant merely "committed any act in furtherance of the scheme" during that period.  *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 299 F. Supp. 3d 1055, 1063-1064 (D. Minn. 2018).  Because Plaintiff did not buy or sell any securities due any alleged fraud within the last 5-years, his securities fraud claim is untimely.  *See also Shixu*

*Bai*, 2022 U.S. Dist. LEXIS 37162, at *18-20; *Meide I*, 2019 U.S. Dist. LEXIS 234495, at *5-7, 9-12, *aff'd Meide II*, 2022 U.S. App. LEXIS 30288, at *3-4; *Isanaka v. Spectrum Techs. USA Inc.*, 131 F. Supp. 2d 353, 357-358 (N.D.N.Y. 2001).

### 3. Plaintiff's Claim is Barred By the 2-Year Statute of Limitations

The 2-year statute of limitations for securities fraud begins "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation' – whichever comes first." *Merck & Co.*, 559 U.S. at 637. Plaintiff allegedly realized HFN misused of its options pool in 2022 when he "was able to see" HFN's 2019 capitalization table. (FAC ¶¶ 24, 30-31). Because Plaintiff was admittedly able to obtain and review HFN's capitalization table in 2022 – and because the FAC does not indicate Plaintiff reasonably tried to do so in 2019, let alone was denied access – his claim is further time-barred.

### 4. Plaintiff Has Failed to Adequately Plead a Securities Fraud Claim

Securities fraud claims are subject to heightened pleading standards under Rule 9(b) and the PSLRA,[7] and these requirements apply in "scheme liability" cases,[8] as well as to Section 20(a) claims.[9] To satisfy these requirements, a plaintiff cannot "merely lump[] multiple defendants together" without "differentiat[ing]" them and "identif[ying] the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F. 3d 756, 764-765 (9th Cir. 2007). Thus, a complaint is "insufficient as a matter of law" if it "is shot through with general allegations that the 'defendants' engaged in fraudulent conduct" or "[c]onclusory allegations" that all defendants "were acting in concert[,]" *id.* at 765, and "courts around the country" have also "emphatically rejected the use of group pleading" in securities fraud cases. *Brady v. Delta Energy & Communs. Inc.*, 598 F. Supp. 3d 865, 871 (C.D. Cal. 2022).

---

[7]15 U.S.C. § 78u-4(b); *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

[8]*World Surv. Grp., Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F. Supp. 3d 1233, 1237 (N.D. Cal. 2014); *In re Garrett Mot. Sec. Litig.*, 2022 U.S. Dist. LEXIS 60843, at *51 n.14 (S.D.N.Y. Mar. 31, 2022).

[9]*Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1053 (N.D. Cal. 2019) (applying the PSLRA's heightened pleading requirements to a Section 20(a) claim).

In violation of both Rule 9(b) and the PSLRA, the FAC is devoid of allegations showing Shiralagi personally made, or directed anyone else to make, any misleading representations during settlement discussions in 2015 about the future use of HFN's stock option pool – **nor are statements during settlement talks actionable at all, since they are protected by the litigation privilege**.[10]   Indeed, the FAC merely asserts all "Defendants" engaged in a "scheme" to defraud Plaintiff during settlement talks, (FAC ¶ 121), which is clearly prohibited "group pleading." Similarly, Plaintiff has not alleged facts supporting his claim that Shiralagi used his purported "operational and management control in HFN" to "condone[] and assist[] with the conception and implementation" of any securities fraud, (*id.* ¶ 124), and Shiralagi's "status" as a former HFN Director is "insufficient to establish control personal liability" under Section 20(a) because "mere titles are not adequate indicators of control authority." *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1993); *see also In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008) ("an individual's status as an officer or director of the issuing corporation is insufficient, standing alone, to demonstrate the exercise of control").

### B.   Plaintiff Cannot Maintain a Tag-Along Section 20(a) Claim

In addition to being conclusory, the FAC's tag-along claim under Section 20(a) must be dismissed because Plaintiff has not alleged any valid claim under Section 10(b) or Rule 10b-5. *Nguyen*, 962 F.3d at 419, *Zucco Ptrs., LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

### C.   Plaintiff Has Failed to State a Valid Fiduciary Duty Claim Against Shiralagi

Delaware law governs Plaintiff's fiduciary duty claims against Shiralagi, *In re VeriSign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1214-1215 (N.D. Cal. 2007), including whether those claims are direct or derivative.  *Meland v. Weber*, 2 F.4th 838, 848 (9th Cir. 2021).  As a matter of both Delaware and federal law, Plaintiff's fiduciary duty claims are barred.  **First**, Plaintiff's fiduciary duty allegations pertain to the alleged mismanagement of HFN's affairs, misuse of the

---

[10] *Gopher Media Ltd. Liab. Co. v. Modern Doc Media*, No. 3:22-CV-00131 TWR (DDL), 2023 U.S. Dist. LEXIS 10650, at *11 (S.D. Cal. Jan. 20, 2023) ("the litigation privilege applies to [a] [p]laintiff's fraud claim . . . premised on [a] [d]efendant['s] alleged fraudulent promises and misrepresentations during settlement discussions"); *Kia Motors Corp. v. Keystone Auto. Indus.*, No. CV 08-4584-JFW (JCx), 2009 U.S. Dist. LEXIS 134874, at *9 (C.D. Cal. June 26, 2009) (litigation privilege also covers "statements made by counsel during settlement negotiations").

company's resources, and waste/self-dealing – as such, they are "classically derivative claims." *In re Saba Software, Inc. S'holder Litig.*, 2017 Del. Ch. LEXIS 52, at *47 & n. 106 (Del. Ch. Mar. 31, 2017); *see also Thornton v. Bernard Techs., Inc.*, No. 962-VCN, 2009 Del. Ch. LEXIS 29, at *9-11 (Ch. Feb. 20, 2009).[11]  That is especially true where the FAC is replete with allegations that these activities injured Plaintiff by diminishing the value of his stake in HFN.[12]  "Delaware courts have long recognized" that "where a plaintiff shareholder claims that the value of his stock [has] deteriorated and that the value of his proportionate share of the stock [has] decreased . . . his cause of action is derivative in nature." *Kramer v. W. Pac. Inds., Inc.*, 546 A.2d 348, 353 (Del. 1988).

**Second**, Plaintiff, as a *pro se* litigant, cannot maintain any derivative claims.  *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 662-663 (9th Cir. 2008); *Pinnavaia v. Moody-Stuart*, No. C 09-03803 CW, 2009 U.S. Dist. LEXIS 115453, at *7-9 (N.D. Cal. Dec. 11, 2009); *Romman v. Gao*, No. 2:11-cv-01178-MMD-CWH, 2013 U.S. Dist. LEXIS 60621, at *1-3 (D. Nev. Apr. 29, 2013).

**Third**, the FAC is not verified under penalty of perjury as required by Rule 23.1 governing derivative actions.

**Fourth**, a plaintiff asserting derivative claims must plead demand futility "with particularity[,]" Fed. R. Civ. P. 23.1(b)(3)(A)-(B), and Delaware law governs the demand futility analysis in this case.  *Rosenbloom v. Pyott*, 765 F.3d 1137, 114 (9th Cir. 2014); *see also United Food & Comm. Wrks. Union v. Zuckerberg*, 262 A.3d 1034, 1049, 1059 (Del. 2021) (describing

---

[11]Specifically, the FAC's **Governance, HR, Patent, Software, and Webpage Allegations** contend that Defendants are not exercising proper oversight over various aspects of HFN's business and are otherwise operating the business negligently, which are quintessential derivative claims.  *In re McDonald's Corp. Stockholder Deriv. Litig.*, No. 2021-0324-JTL, 2023 Del. Ch. LEXIS 23, at *48 (Ch. Jan. 25, 2023) ("oversight claims are derivative"); *Albert v. Alex. Brown Mgmt. Servs.*, Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133, at *46 (Ch. Aug. 26, 2005) ("claims for gross negligence and failure to provide competent and active management are clearly derivative.").  In addition, the **Seed Allegations** concern "harm that is derivative" since they relate to an allegedly "unfavorable agreement[] that negatively impact[s]" HFN's "financial position." *Bocock v. Innovate Corp.*, No. 2021-0224-PAF, 2022 Del. Ch. LEXIS 307, at *42 (Ch. Oct. 28, 2022).  Likewise, the **Distraction Allegations** concern the misuse or waste of HFN resources for non-HFN activities, which is a classic derivative claim.  *VGS, Inc. v. Castiel*, No. 17995, 2003 Del. Ch. LEXIS 16, at *39 (Ch. Feb. 28, 2003).

[12]FAC ¶¶ 34, 39, 55-56, 62-64, 72, 85, 92, 97, 100, 104, 131, 138 (collectively alleging HFN's "resources" are being misused "at the expense" of the company itself, and Plaintiff has been "denied the value and appreciation of the resources of HFN).

3-part demand futility test which is "not excused lightly"). Plaintiff has not even attempted to plead demand futility, much less alleged particularized facts making the required showing.

**Finally**, the FAC lacks any facts explaining how Shiralagi – as opposed to any other Defendant – committed, participated in, or aided any breach of any fiduciary duty, and Plaintiff instead resorts to undifferentiated "group pleading." (FAC ¶¶ 37-105, 127-139). However, " [a] plaintiff must adequately plead a breach of fiduciary duty claim against each individual director or officer[,]" and "so called 'group pleading' will not suffice" because "[e]ach director has a right to be considered individually[.]" *Bocock*, 2022 Del. Ch. LEXIS 307, at *39; *see also In re BGC Partners, Inc. Derivative Litig.*, 2021 Del. Ch. LEXIS 213, at *28 n.127 (Ch. Sep. 20, 2021). Plaintiff's generic allegations against all Defendants – which fail to specify each Defendant's alleged acts or omissions – is not even sufficient under Rule 8(a), much less compliant with substantive Delaware law. *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865, at *26-27 (N.D. Cal. Sep. 20, 2011) (by "lumping all eight of the[] [defendants] together, Plaintiffs have not stated sufficient facts . . . against [any] one Defendant" under Rule 8).

###### D.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's DGCL Claim

To the extent Plaintiff is trying to maintain a books and records claim against Shiralagi under the DGCL, the Delaware Chancery Court has "exclusive jurisdiction" over that claim, and it must be dismissed. 8 Del. C. § 220(c); *Utterkar v. Ebix, Inc.*, No. 14-CV-02250-LHK, 2015 U.S. Dist. LEXIS 113361, at *32-33 (N.D. Cal. Aug. 25, 2015).

## VI.     CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC as to Shiralagi with prejudice, particularly where Plaintiff has now had two opportunities to plead his claims.

Dated:  June 21, 2023                    TROUTMAN PEPPER HAMILTON SANDERS LLP


                                         By: /s/ Matthew H. Ladner
                                         Attorney for Defendant
                                         KUMAR SHIRALAGI