Allan Miller
3385 Claudia Drive
Concord, CA  94519
650-468-7387
(no fax number)
allan.miller@alumni.stanford.edu
Pro Se Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

ALLAN MILLER

        Plaintiff,

   vs.

HFN, INC., a Delaware Corporation, d/b/a as
NANOHEAL BY HFN INC.,
KALAARI CAPITAL ADVISORS
PRIVATE LIMITED, an Indian Company,
SRIDHAR SANTHANAM,
KUMAR SHIRALAGI, PAVAN VAISH,
and VANI KOLA

Defendants.

Case Number: 23-CV-0533-VC

**OPPOSITION TO DEFENDANT HFN INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ISSUES TO BE DECIDED .........................................................................................1

I.      SANTHANAM'S DECLARATION MUST BE EXCLUDED ............................1

II.     THIS COURT HAS JURISDICTION OVER THE 10(b) AND 20(a) EXCHANGE
ACT COUNTS ............................................................................................................2

    A.   The Exchange Act claims are not barred by the 2015 settlement .......................2

    B.   The Exchange Act claims are not time-barred ....................................................2

III.    THIS COURT HAS PERSONAL JURISDICTION OVER THE FIDUCIARY
DUTY CLAIMS ..........................................................................................................2

    A.   The Fiduciary Duty claims are a federal case unaffected by Delaware law........2

    B.   The Fiduciary Duty counts have jurisdiction in this Court .................................2

IV.     THIS IS NOT A DERIVATIVE ACTION .........................................................3

RELEVANT FACTS....................................................................................................3

ARGUMENT ...............................................................................................................3

I.      SANTHANAM'S DECLARATION CONTAINS FALSE STATEMENTS AND
MUST BE EXCLUDED ..............................................................................................3

    A.   The declaration is inconsistent with Santhanam's first declaration ...................3

    B.   The inconsistency is significant and the entire declaration shows bad faith.......4

II.     THE EXCHANGE ACT COUNTS ARE VALID CLAIMS.................................5

    A.   The settlement agreement does not bar the claims..............................................5

    B.   *Facebook, Inc. v. Pac. Northwest Software, Inc.* is not a relevant precedent......6

    C.   The Exchange Act claims are within the 5-year statute of repose.......................6

D.    The Exchange Act claims are within the 2-year statute of limitations ................9

E.    The Defendant misrepresents the nature of the settlement compromise .............9

III.    THE PATENT IRREGULARITIES GIVE THIS COURT JURISDICTION OVER THE FIDUCIARY DUTY COUNTS ............................................................................10

A.    The Defendant's breach arises under Federal patent law ..................................10

B.    This Court's jurisdiction is well established .....................................................12

IV.    THE RESELLER RELATIONSHIP BETWEEN HFN AND GODADDY GIVE THIS COURT JURISDICTION OVER THE FIDUCIARY DUTY COUNTS ......................13

A.    The GoDaddy relationship is a model of breach of fiduciary duty ..................13

B.    The Defendant has failed to provide any substantive objections to the Plaintiff's evidence of the Court's personal jurisdiction over HFN .......................................14

V.    THE DEFENDANT HAS DE FACTO BOARD MEETINGS IN THE NORTHERN DISTRICT OF CALIFORNIA ........................................................................16

VI.    THIS IS NOT A DERIVATIVE ACTION ......................................................16

CONCLUSION ...........................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.* (Fed.Cir. 2021) 6 F.4th 1283.........................12

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.* (9th Cir. 1995) 69 F.3d ...............................4

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.* (2017) 582 U.S. 497 [137 S.Ct. 2042, 2045, 198 L.Ed.2d 584, 587].......................................................................................................................9

*China Agritech, Inc. v. Resh* (2018) ___U.S.___, fn. 1 [138 S.Ct. 1800, 1804, 201 L.Ed.2d 123, 128].....................................................................................................................................................9

*Christianson v. Colt Indus. Operating Corp.* (1988) 486 U.S. 800 [108 S.Ct. 2166, 2173, 100 L.Ed.2d 811]......................................................................................................................10, 11

*Daimler AG v. Bauman* (2014) 571 U.S. 117 [134 S.Ct. 746, 187 L.Ed.2d 624].........................15

*Facebook, Inc. v. Pac. Northwest Software, Inc.* (9th Cir. 2011) 640 F.3d 1034 ..........................6

*Gergawy v. United States Bakery, Inc.* (E.D.Wash. Feb. 8, 2022, No. 2:19-CV-00417-SAB) 2022 U.S.Dist.LEXIS 22721 ...............................................................................................................4

*Gunn v. Minton* (2013) 568 U.S. 251 [133 S.Ct. 1059, 1065, 185 L.Ed.2d 72]...........................11

*In re Cray Inc.* (Fed.Cir. 2017) 871 F.3d 1355 ...........................................................................12

*In re Garrett Motion Sec. Litig.* (S.D.N.Y. Mar. 31, 2022) 2022 U.S.Dist.LEXIS 60843 .............8

*In re Google LLC* (Fed.Cir. 2020) 949 F.3d 1338.........................................................................12

*In re Mindbody, Inc. Sec. Litig.* (S.D.N.Y. 2020) 489 F. Supp. 3d 188 .........................................8

*In re TC Heartland LLC* (Fed.Cir. 2016) 821 F.3d 1338 .............................................................12

*In re Teva Sec. Litig.* (D.Conn. 2021) 512 F. Supp. 3d 321 ......................................................7, 8

*JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC* (M.D.Tenn. 2022) 615 F. Supp. 3d 750 .................................................................................................................................................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.* (Fed.Cir. 2012) 694 F.3d 51 .............................11

*McNeal v. Williams* (D.Nev. Aug. 5, 2022, No. 2:16-cv-01618-JAD-EJY) 2022 U.S.Dist.LEXIS 139508 .............................................................................................................................................5

*Meyer v. Holley* (2003) 537 U.S. 280 [123 S.Ct. 824, 829, 154 L.Ed.2d 753] .............................15

*Miller et al. v. Donnini et al.*, D Mass 1:14-cv-12337-NMG ........................................................... 6

*Neogen Corp. v. Neo Gen Screening, Inc.* (6th Cir. 2002) 282 F.3d 883 ..................................... 13

*Ont. Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, D. Conn 3:17-cv-558 (SRU) ................ 7

*ResQNet.com, Inc. v. Lansa, Inc* (Fed.Cir. 2010) 594 F.3d 860 ................................................... 11

*SEC v. Blockvest, LLC* (S.D.Cal. Apr. 17, 2020, No. 18cv2287-GPC (MSB)) 2020

    U.S.Dist.LEXIS 68951 ......................................................................................................... 4

*SEC v. Kelly* (S.D.N.Y. 2011) 817 F.Supp.2d 340 ....................................................................... 8

*SEC v. Rio Tinto PLC* (2d Cir. 2022) 41 F.4th 47 ....................................................................... 8

*See Merck & Co. v. Reynolds* (2010) 559 U.S. 633 [130 S.Ct. 1784, 1789, 176 L.Ed.2d 582] ...... 9

*United States v. Campos* (5th Cir. Apr. 14, 1994, No. 92-4573) 1994 U.S. App. LEXIS 43317 ... 4

*United States v. Devine*, 934 F.2d 1325 (5th Cir. 1991), cert. denied, 502 U.S. 1065, 112 S. Ct.

    954, 117 L. Ed. 2d 121 (1992) .......................................................................................... 4

*Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.* (S.D.N.Y. Sep. 30, 2019) 2019

    U.S.Dist.LEXIS 169560 ..................................................................................................... 11

*Vogel v. Tulaphorn, Inc.*, CV 13-464 PSG (PLAx), 2013 U.S. Dist. LEXIS 200563, 2013 WL

    12166212 (C.D. Cal. Nov. 15, 2013) ................................................................................. 4

**Statutes**

17 CFR 240.10b-5 ......................................................................................................................... 8

28 U.S.C. § 1338 ......................................................................................................................... 12

28 U.S.C. § 1658(b) ...................................................................................................................... 7

Fed. R. Civ. P. 12 ..................................................................................................................... 1, 13

Fed. R. Civ. P., Advisory Committee Notes (1966) H.R. Doc. No. 391, 89th Cong., 2d Sess. 40

    ..................................................................................................................................... 16

## INTRODUCTION

The defendant HFN, Inc. ("Defendant" or "HFN") is back with a new motion to dismiss ("MTD 2"). Instead of simply demonstrating that the claims are false, which would only entail providing a few records, the Defendant continues to present long and tortured arguments as to why this Court should not hear the case, based on jurisdiction. The Defendant alleges that the first amended complaint ("FAC") is "mostly recycled" (MTD 2 at 3), but the actual recycled document is MTD 2 since it tries to use the same arguments against significant new allegations by plaintiff Miller ("Plaintiff"). Not surprisingly, these efforts are unconvincing.[1]

The new MTD 2 also demonstrates beyond doubt that Santhanam's declarations in both the original motion to dismiss ("MTD 1") and the new MTD 2 are filled with false statements made in bad faith, confirming the Plaintiff's assertion in the original opposition motion to MTD 1 ("Opp. 1") at ¶ 12-18.

## ISSUES TO BE DECIDED

## I.  SANTHANAM'S DECLARATION MUST BE EXCLUDED

In filing this MTD 2, the Defendant has provided conflicting testimony where only one can be true. The Plaintiff had previously demonstrated the falsehood, and now the Defendant has confirmed this beyond doubt. The Defendant's is providing false testimony designed solely to support the narrative of the motion, and this testimony must therefore be stricken by the Court and not relied upon.

Further, in considering a motion to dismiss as a matter of law under Fed. R. Civ. P. 12(b)(6), the Court can only consider the facts within the FAC, which are presumed to be true. Consequently, the Defendant's statements must be disregarded at this stage.

---

[1] The Defendant also seems to have literally recycled some of the original motion to dismiss with copy-and-paste. For example, MTD 2 at 5 claims that FAC ¶ 4 indicates that "HFN is incorporated in Delaware and its principal place of business is Utah," which appears to be a reference to the original complaint, and is not mirrored in the FAC.

## II.  THIS COURT HAS JURISDICTION OVER THE 10(b) AND 20(a) EXCHANGE ACT COUNTS

### A.  The Exchange Act claims are not barred by the 2015 settlement

The Defendant alleges that the terms of the 2015 settlement preclude this action. However, those terms allow actions based on misdeeds of the Defendant **after** the settlement, and the FAC pleads in detail a scheme that started after the settlement.

### B.  The Exchange Act claims are not time-barred

The Defendant alleges that "a reasonably diligent plaintiff" would have discovered the scheme in 2019 and so the action is beyond the 2-year statute of limitations. The facts of the case indicate that the Plaintiff is reasonably diligent, and that the Defendant would have not made it possible to obtain the facts necessary to unmask the scheme in 2019.

The Defendant also alleges that the scheme is beyond the 5-year statute of repose. However, a contemporary interpretation of the law concludes that the last known culpable act of the scheme was in 2019 at the earliest and the current action satisfies the statute of repose.

## III. THIS COURT HAS PERSONAL JURISDICTION OVER THE FIDUCIARY DUTY CLAIMS

### A.  The Fiduciary Duty claims are a federal case unaffected by Delaware law

The fiduciary duty claims arising from the mismanagement of the patent assets of HFN arise under patent law and are a federal matter. The internal affairs doctrine cited by the Defendant is not relevant, since patent law is not an "internal affair" of a corporation, and the claims are capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

### B.  The Fiduciary Duty counts have jurisdiction in this Court

This court has jurisdiction over the patent-related fiduciary duty claims because of the agency relationship between HFN and GoDaddy in Northern California. The Court also has jurisdiction over the other fiduciary duty claims because they are intimately tied to the reseller agreement between HFN and GoDaddy in Northern California.

## IV. THIS IS NOT A DERIVATIVE ACTION

The Defendant continues to argue that the claims in this action cannot be pursued as a derivative action. The Plaintiff has never proposed that this is a derivative action.

## RELEVANT FACTS

The Plaintiff filed an original complaint seven counts, including four counts of violations of the Exchange Act, two counts of breach of fiduciary duty, and one count for injunctive relief for books and records. The Defendant filed a motion to dismiss based on lack of personal jurisdiction, or in the alternative, failure to state a claim, lack of subject matter jurisdiction, and lack of standing. After an opposition and reply, the Court granted the Defendant's motion, with leave to amend, on the two grounds that (1) the Plaintiff failed to allege sufficient contacts for the Defendant with California, and (2) the Plaintiff failed to adequately plead a securities fraud claim.

The Plaintiff filed an amended complaint with five counts, including two counts of violations of the Exchange Act, two counts of breach of fiduciary duty, and one count of injunctive relief for books and records. The Defendant filed a second motion to dismiss based on lack of personal jurisdiction, or in the alternative, failure to state a claim, lack of subject matter jurisdiction, and lack of standing. This filing is the Plaintiff's opposition to that second motion to dismiss.

In the amended complaint and this opposition, the Plaintiff has maintained all the allegations from the initial complaint, and added or supplemented allegations in four key areas: (1) the Defendant's presentation of false testimony, (2) a scheme liability violation of the Exchange Act, (3) more detail on the Defendant's mismanagement of HFN's patents, and (4) a significant reseller relationship between HFN and GoDaddy in the Northern District of California.

## ARGUMENT

## I. SANTHANAM'S DECLARATION CONTAINS FALSE STATEMENTS AND MUST BE EXCLUDED

### A. The declaration is inconsistent with Santhanam's first declaration

"It is well-settled that evidence of a prior inconsistent statement is admissible to impeach a witness." *United States v. Campos* (5th Cir. Apr. 14, 1994, No. 92-4573) 1994 U.S. App. LEXIS

43317, at *52, fn. 51 (citing *United States v. Devine*, 934 F.2d 1325, 1344 (5th Cir. 1991), cert. denied, 502 U.S. 1065, 112 S. Ct. 954, 117 L. Ed. 2d 121 (1992)). The first Declaration of Sridhar Santhanam ("SS Decl. 1") in support of the original motion to dismiss ("MTD 1") (Dkt. 11) is inconsistent with the Declaration of Sridhar Santhanam ("SS Decl. 2") filed with this motion to dismiss ("MTD 2"). In the first declaration, Santhanam declares that "HFN is incorporated in Delaware and its principal place of business is Utah, where HFN maintains its corporate headquarters **and nearly all operational employees**" (SS Decl. 1, ¶5, emphasis added). In the current declaration, Santhanam declares that "HFN is incorporated in Delaware and its principal place of business is Utah, where HFN maintains its corporate headquarters **and nearly all U.S.-based operational employees**" and also adds that "**HFN also maintains significant operations and personnel [in India]**" (SS Decl. 2, ¶5,  emphasis added).

### B.  The inconsistency is significant and the entire declaration shows bad faith

This is not simply a small correction to a typographical error. The two declarations are inconsistent, and both of them cannot be true. The Plaintiff's original opposition to the original motion to dismiss ("Opp. 1") included significant evidence of the falsehood of the first declaration (Opp. 1, ¶¶ 3,16-17, Ex. 6-8). With the second declaration, Santhanam has confirmed that the Plaintiff's assertion of falsehood was correct. The original motion MTD 1 relied heavily on the specific declaration in SS Decl 1 ¶ 5, referring to it three separate times. "When a party falsifies evidence of central importance to a case, this shows bad faith, willfulness, or fault[.]" *SEC v. Blockvest, LLC* (S.D.Cal. Apr. 17, 2020, No. 18cv2287-GPC (MSB)) 2020 U.S.Dist.LEXIS 68951, at *37 (citing *Vogel v. Tulaphorn, Inc.*, CV 13-464 PSG (PLAx), 2013 U.S. Dist. LEXIS 200563, 2013 WL 12166212, at *4 (C.D. Cal. Nov. 15, 2013), *Anheuser-Busch, Inc. v. Natural Beverage Distribs.* (9th Cir. 1995) 69 F.3d at 352). Santhanam has demonstrated that his declarations are simply stories crafted for the express purpose of supporting the narrative.[2]

---

[2] See also *Gergaway v. United States Bakery, Inc.* (E.D.Wash. Feb. 8, 2022, No. 2:19-CV-00417-SAB) 2022 U.S.Dist.LEXIS 22721, at *21, where inconsistent testimony in two declarations resulted in a successful motion to strike the testimony.

The Defendant's counsel is not completely innocent in this. "[C]ounsel is not appointed to act as a mere scrivener to restate and reassert each and every allegation, claim, and argument that a petitioner desires to pursue." *McNeal v. Williams* (D.Nev. Aug. 5, 2022, No. 2:16-cv-01618-JAD-EJY) 2022 U.S.Dist.LEXIS 139508, at *4. Since counsel drafted both declarations, they have an obligation to verify that the testimony is consistent, especially when it represents a key basis for the argument. "Counsel instead is appointed to exercise her independent professional judgment about which allegations, claims, and arguments she believes collectively present the best chance of success." *Id.*, at *4.

## II. THE EXCHANGE ACT COUNTS ARE VALID CLAIMS

### A. The settlement agreement does not bar the claims

The Defendant alleges that the 2015 Settlement and Stock Purchase Agreement ("Agreement") bar the Exchange Act claims (MTD 2 at 8-10), quoting and highlighting large sections of the Agreement (SS Decl. 2, Ex. 1 and Ex. 1 to Settlement Agreement). The only relevant sections of the Agreement are (emphasis added):

> It is understood and agreed that this shall be a full and complete release, and includes all consideration of any kind or character, including any actual, consequential or other damages alleged or which could have been alleged against Defendants in the Lawsuit or **as of the date of this Settlement Agreement**. (SS Decl. 2, Ex. 1 §§ 3.1 and 3.2)

> … waives any right, claim or cause of action at law or in equity with respect to, arising from, based upon, resulting from or relating to directly or indirectly the existence, substance, possession, disclosure or nondisclosure of any **Seller Excluded Information**, including, without limitation, pursuant to Sections 10(b) and 20A of the Exchange Act … (SS Decl. 2, Ex. 1 to Settlement Agreement, § 3.6)

**As of the date of the settlement**, the fraud **scheme** had not commenced, based on the information provided by HFN. The grant to Krishnan was a non-qualified stock option that was separate from the ESOP, as described in the first amended complaint ("FAC") at ¶ 26. The ESOP

was in place with 2,616,500 shares (FAC ¶ 25). The fraud **scheme** did not commence until sometime after the settlement (FAC ¶ 31).

Similarly, the Exchange Act claims are not based on any **Seller Excluded Information** that existed at the time of the settlement. They are based on the fraud **scheme** that was discovered through the capitalization tables of HFN from 2019 and 2021 (FAC ¶¶ 30-33).

### B. *Facebook, Inc. v. Pac. Northwest Software, Inc.* **is not a relevant precedent**

In arguing that the settlement agreement bars the Exchange Act claims, the Defendant relies heavily on *Facebook, Inc. v. Pac. Northwest Software, Inc.* (9th Cir. 2011) 640 F.3d 1034 (MTD 2 at 9-10). This reliance is misplaced, because the fact pattern of that case is significantly different from the litigation that resulted in the Agreement. The Ninth Circuit relied on the facts that "adversaries [were] in a roughly equivalent bargaining position" (*Id.* at 1039), "[t]hey can use discovery to ferret out a great deal of information" (*Id.* at 1039), "some material aspects of the deal would be papered later" (*Id.* at 1038), and that the basis of the dispute was that "[the plaintiffs] argue that [the defendant] misled them into believing its shares were worth four times as much" (*Id.* at 1038), a very subjective and imprecise measure based on valuation.

In *Miller et al. v. Donnini et al.*, D Mass 1:14-cv-12337-NMG, the defendant was a well-funded venture-backed company and the plaintiffs were self-funded, so the adversaries were not roughly equivalent. Various constraints prevented the plaintiffs from advancing the case deep into discovery, so the plaintiffs did not have the opportunity to "ferret out a great deal of information." No material aspects of the deal were left until later. The issue in the current action is not a subjective stock price, but is instead the objective treatment of an option pool that is governed by law. The conclusions of the Ninth Circuit do not apply here.

### C. **The Exchange Act claims are within the 5-year statute of repose**

The Defendant fills over two pages trying to argue that the Plaintiff is barred by the 5-year statute of repose (MTD 2 at 11-13), citing 14 cases. The situation is much simpler than that. The Defendant is erroneously conflating the **conception** of a scheme with its **implementation**, as well

as avoiding the fact that reliance on a representation can include reliance on the fact that the representation **will not change** over time.

HFN **conceived** the scheme to misuse the ESOP at some time, either before or after the settlement, but did not **implement** the scheme until after the settlement. The Plaintiff properly relied on the representation that the option pool was an ESOP, which did not become a misrepresentation until HFN started to misuse the ESOP. This was a scheme because the HFN didn't simply repeat a misrepresentation or omission, but acted deceptively at discrete intervals, every time HFN improperly used the ESOP.

With that timeline in mind, the existing case law indicates no time bar. The Defendant alleges that the Exchange Act claims are time barred by the 5-year statute of repose of 28 U.S.C. § 1658(b), citing a variety of older case law. A more relevant precedent for this case is *In re Teva Sec. Litig.* (D.Conn. 2021) 512 F. Supp. 3d 321. The plaintiffs alleged scheme liability under Rule 10b-5(a) and (c), and the Court indicated during oral argument that the last act in a scheme would "start the clock" for the statute of Repose without being considered equitable tolling. "Equitable tolling is a little different, in my mind, than continuing course of conduct. A continuing course of conduct, **if the last act is within** … **the statute of limitations**, **allows the entire scheme to be considered as timely**. Equitable tolling I think is a little bit different, where, for whatever equitable reason, you don't start the clock quite as quickly as you might have." *Ont. Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, D. Conn 3:17-cv-558 (SRU), Dkt. 647 at 10 (emphasis added). The Court agreed that the legislative history of the statute of repose was not to effectively immunize multi-year fraudulent schemes and reward defendants for continuing the schemes longer than five years by imposing a five-year cap on liability for securities fraud. "Giving repose to a defendant who has ceased to do wrong may well be worthwhile even if it is 'unfair' to a plaintiff whose cause of action has not yet accrued. But it is a different thing altogether to give repose to a defendant who continued his wrongful conduct, perhaps even beyond the time specified by the repose period." *In re Teva* at 338. Ultimately, the Court ruled that the plaintiffs did not sufficiently allege scheme

liability, since the allegations emphasized a series of misstatements and omissions, and never mentioned the scheme liability before the oral argument. *See Id.* at 336-337.

Here, the Plaintiff has alleged scheme liability with particularity (FAC ¶¶ 31-34). The Defendant's ongoing and systematic use of the option pool to defraud the Plaintiff in light of that misrepresentation is a "scheme liability" under 10b-5(a) and 10b-5(c). A scheme liability must involve "performance of an inherently deceptive act that is distinct from an alleged misstatement." *SEC v. Kelly* (S.D.N.Y. 2011) 817 F.Supp.2d 340, 344.

"*Lentell* binds: misstatements and omissions can form *part* of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions …" *SEC v. Rio Tinto PLC* (2d Cir. 2022) 41 F.4th 47, 49. Here, the scheme goes far beyond the initial misrepresentation, and also far beyond continued dissemination of false information as in *Rio Tinto*. Instead, the scheme here involves the continuous and systematic abuse of the option pool to allocate shares to company insiders over a long period.[3]

"To state a claim for scheme liability, a plaintiff must present facts showing '(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance.'" *In re Mindbody, Inc. Sec. Litig.* (S.D.N.Y. 2020) 489 F. Supp. 3d 188, 216. The Defendant committed a deceptive act by using shares from a purported ESOP option pool to directly enrich Santhanam's account. This act was in furtherance of the scheme to use the ESOP pool for self-dealing and grants to insiders. Scienter was demonstrated by the continued misrepresentation throughout the settlement negotiation and afterward, and reliance by the Plaintiff was demonstrated by the eventual agreement to compromise on the treatment of the ESOP options.

The Plaintiff indicates that the "last culpable act" of the scheme known to him is Santhanam's transfer of 307,154 shares from the ESOP option pool to his personal account

---

[3] See also *In re Garrett Motion Sec. Litig.* (S.D.N.Y. Mar. 31, 2022) 2022 U.S.Dist.LEXIS 60843, at *50-51, where "a scheme liability hinges on the performance of an inherently deceptive act."

happened sometime between 2019 and 2021, which is well within the 5-year statute of repose.[4] Courts, including the Supreme Court, have been consistent in using the "**last** culpable act" as the start of the repose. *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.* (2017) 582 U.S. 497, 498 [137 S.Ct. 2042, 2045, 198 L.Ed.2d 584, 587], *China Agritech, Inc. v. Resh* (2018) ___U.S.___, fn. 1 [138 S.Ct. 1800, 1804, 201 L.Ed.2d 123, 128].

### D.  The Exchange Act claims are within the 2-year statute of limitations

The Defendant alleges that the Exchange Act claims are outside the 2-year statute of limitations because the Plaintiff should have been "a reasonably diligent plaintiff [who] would have discovered 'the facts constituting the violation'" in 2019 by examining the capitalization table of HFN. *See Merck & Co. v. Reynolds* (2010) 559 U.S. 633, 637 [130 S.Ct. 1784, 1789, 176 L.Ed.2d 582, 589]. However, the fault here lies not with the Plaintiff, but with the Defendant, who was required to provide the 2019 capitalization table to the Plaintiff in 2019 at the required annual shareholder meeting, and did not even have such a meeting. Even if the Plaintiff had requested information in 2019, the Defendant has demonstrated what would have happened: a series of stalling tactics while providing no information, culminating with a complete lack of communication (FAC, ¶¶ 39-48, Ex. 15-26).

The Defendant had a fiduciary duty toward the Plaintiff, and so should have informed him of this information without even taking positive action. As it was, however, a "reasonably diligent plaintiff" would have only discovered the violation in 2022, when the Plaintiff did, with the cooperation of multiple anonymous informants. 2022 is well within the 2-year statute of limitations.

### E.  The Defendant misrepresents the nature of the settlement compromise

The Defendant characterizes the compromise that enabled the settlement as one "to account for any uncertainty regarding HFN's use of its stock option pool" (MTD 2 at 10), implying that the plaintiffs were giving HFN *carte blanche* to do whatever they liked with the options. As the

---

[4] See also *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC* (M.D.Tenn. 2022) 615 F. Supp. 3d 750, 762, where several Courts agreed that "the repose period 'runs from the date of the fraud rather than the date of the injury.'"

Plaintiff described in detail, the compromise was made based on the representation that the large option pool was an ESOP, a key component to attract talent to a high-tech company (FAC ¶ 27).

The Defendant also tries to allege that HFN made no representations about HFN's future use of the stock option pool, and that any statements by HFN's counsel during the settlement negotiation are not actionable since they are privileged (MTD 2 at 14). Once again, this mischaracterizes the amended complaint. HFN made a specific representation that the option pool was an ESOP (FAC ¶ 25 and Ex. 3). Although the statements of HFN's counsel eased the process of the negotiation (FAC ¶ 27 and Ex. 4), it was the plaintiffs who made the final compromise based on the representations made by HFN in its documentary disclosures. The Plaintiff is providing FAC Ex. 4 to the Court to illuminate and corroborate the decision-making process of the plaintiffs and help the Court feel more comfortable that the Plaintiff is not simply making up a story to match the narrative, as Santhanam has done with his Declaration.

## III. THE PATENT IRREGULARITIES GIVE THIS COURT JURISDICTION OVER THE FIDUCIARY DUTY COUNTS

The Defendant is nearly silent on the breach of fiduciary duty relevant to the Defendant's management of HFN's patents, only summarizing the FAC (MTD 2 at 4) and briefly alleging that the Defendant's decisions on HFN patents were not made in California (MTD 2 at 6), which is not relevant to this cause of action.

### A.  The Defendant's breach arises under Federal patent law

The patent claims depend on the resolution of a substantial question of federal patent law and constitute a federal case. "[I]n order to demonstrate that a case is one 'arising under' federal patent law 'the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws." *Christianson v. Colt Indus. Operating Corp.* (1988) 486 U.S. 800, 807-808 [108 S.Ct. 2166, 2173, 100 L.Ed.2d 811, 824]. The Plaintiff pleads with specificity that the breach of fiduciary duty arises from the fact that the *interpretation of the claims* of the patents in question could not have had any bearing on the business of the companies

providing the security interest, and that HFN was needlessly foregoing the opportunity to monetize these patents as a result.

Under the pre-*Christianson* test of *Gunn*, the Supreme Court would also find this case to have federal jurisdiction. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton* (2013) 568 U.S. 251, 258 [133 S.Ct. 1059, 1065, 185 L.Ed.2d 72, 80]. The first, second, and fourth prongs of the *Gunn* test are satisfied in this case for much the same reasoning as applied in *Gunn*. In the third prong, this case diverges from *Gunn* and is clearly also satisfied; in *Gunn*, "the question is posed in a merely hypothetical sense: If Minton's lawyers had raised a timely experimental-use argument, would the result in the patent infringement proceeding have been different?" *Id.* at 261, 81-82. However, in this case, there is no hypothetical question. The interpretation of the patent claims (clearly a patent law issue) in light of relevance to the business underlying the security interest is the very real question at the basis of the claims of breach of fiduciary duty.[5]

It is well known that the value of a patent is tied to the damages that could reasonably be expected in an infringement action. "[T]he patentee … must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *LaserDynamics, Inc. v. Quanta Computer, Inc.* (Fed.Cir. 2012) 694 F.3d 51, 67. This determination must be made by evaluating the claimed invention relative to the products in the market where the assertion would be made. "[T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc* (Fed.Cir. 2010) 594 F.3d 860, 869.

---

[5] See also *Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.* (S.D.N.Y. Sep. 30, 2019) 2019 U.S.Dist.LEXIS 169560, at *13-14, where claims including breach of contract and fraud raised questions of patent claim construction.

The FAC details this valuation (FAC ¶¶ 76-77), HFN's assignment of a security interest to companies where the valuation would be *de minimis* (FAC ¶¶ 78-81), and the result that the assignment prevented the proper realization of the value by HFN (FAC ¶¶ 82-83).

The determination of the value of HFN's patents for a security interest (which would be a required assessment by Morgan Stanley and the lenders) therefore depends on claim construction and relevance to the field of use, all of which is specific to Federal patent statutes, so this is a civil action that is "arising under" patent law under 28 U.S.C. § 1338(a). FAC ¶¶ 79-82.

**B. This Court's jurisdiction is well established**

The jurisdiction of patent cases is established by *In re TC Heartland LLC* (Fed.Cir. 2016) 821 F.3d 1338, as further clarified by the Federal Circuit in *In re Cray Inc.* (Fed.Cir. 2017) 871 F.3d 1355, *In re Google LLC* (Fed.Cir. 2020) 949 F.3d 1338, and *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.* (Fed.Cir. 2021) 6 F.4th 1283.[6] Jurisdiction is proper when "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray* at 1360. To satisfy the second and third prongs, "a 'regular and established place of business' requires the regular, physical presence of an employee **or other agent of the defendant** conducting the defendant's business at the alleged 'place of business.'" *In re Google* at 1345, emphasis added. Finally, "[t]he essential elements of agency are (1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'" *In re Google* at 1345.

HFN satisfies each of these requirements at least through its relationship with GoDaddy. The "physical place in the district" is the Sunnyvale office of GoDaddy (FAC ¶ 13), which is a "regular and established place of business" (FAC ¶ 13) that is "the place of the defendant" through GoDaddy's agency relationship with HFN (FAC ¶ 14). The agency relationship is demonstrated by HFN's "right to direct or control" the royalty rate and features of the software and services sold

---

[6] Note that these are all patent infringement cases, but the jurisdictional considerations are the same for any patent case arising under 28 U.S.C. § 1338(a).

by GoDaddy, the "consent" of GoDaddy to "act on the behalf" of HFN by reselling the HFN software and services, and the "consent" by GoDaddy to act by entering into the reseller agreement (FAC Ex. 1).

## IV. THE RESELLER RELATIONSHIP BETWEEN HFN AND GODADDY GIVE THIS COURT JURISDICTION OVER THE FIDUCIARY DUTY COUNTS

"Where a district court did not conduct an evidentiary hearing on the issue of personal jurisdiction in considering a defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff need only make a *prima facie* showing of jurisdiction. A plaintiff can meet that burden by establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction. Under those circumstances, a court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff and will construe the facts in the light most favorable to the nonmoving party in reviewing a dismissal pursuant to Rule 12(b)(2)." *Neogen Corp. v. Neo Gen Screening, Inc.* (6th Cir. 2002) 282 F.3d 883, 886. The Plaintiff's demonstration of the reseller relationship of GoDaddy with HFN satisfies the burden of establishing sufficient contacts between the Defendant and the Northern District of California.

### A. The GoDaddy relationship is a model of breach of fiduciary duty

The Defendant alleges, without elaboration, that "none of Plaintiff's claims [of breach of fiduciary duty] pertain to or arise out of [the] relationships [with GoDaddy and others]" (MTD 2 at 7). This demonstrates a profound lack of understanding of the nature and depth of the breach. Other than the patent-related breach, the relationship between HFN and GoDaddy demonstrates every aspect of this breach.

As a summary, GoDaddy executed a reseller agreement with HFN in early 2020, to resell HFN software and services, providing a substantial $1.25 million advance payment against future royalties. (FAC ¶¶ 13-14) The Plaintiff believes that this advance payment represents a significant contribution to HFN's revenues in FY 2020/2021. The expectation by both HFN and GoDaddy was that GoDaddy would significantly increase HFN's software and service offerings in this market, but the reality was that HFN was unable to deliver on its promises.

This pattern of events, which has been repeated for at least TCS, Infosys, HCL Infosystems, Accenture, and Compucom, demonstrates nearly every element of the Defendant's breach of fiduciary duty. Having a dysfunctional Board, with an unchecked Chairman who is also running engineering development and has no accountability to investors or shareholders (FAC ¶¶ 50-54), results in product and services decisions that are not in tune with the needs of GoDaddy, causing customer attrition and loss of revenue. Having essentially no HR and fostering a culture of inappropriate relationships within the company (FAC ¶¶ 55-58) distracts employees and diverts resources from the support and development activities needed to support GoDaddy, causing further deterioration of the sales process. Having no controls on financial management with unreviewed spending and contractual power concentrated in one individual (FAC ¶¶ 59-65) causes diversion of time, resources, and money away from fruitful relationships like GoDaddy into dead end zero-revenue pursuits like the Seed Group. Having a CEO who focuses more on a host of outside businesses than on HFN, especially when that CEO is also running engineering development and using HFN resources to support the outside businesses (FAC ¶¶ 66-73), drains away precious time, resources, and funds from HFN, causing stagnation in the product and a failure to address the support and product requirements of GoDaddy. Leaving key product development issues unaddressed for many years (FAC ¶¶ 88-101) causes dissatisfaction and a loss of faith in HFN at GoDaddy. Ignoring key marketing tools like the web site (FAC ¶¶ 102-105) causes HFN to lose credibility with GoDaddy and its customers, tarnishing HFN's reputation and impairing its ability to do additional sales. All of these elements of the breach of fiduciary duty are also demonstrated by HFN's high attrition rate of customers through other partners, including TCS, Infosys, HCL Infosystems, Accenture, and Compucom, as well as numerous HFN employees leaving.

**B. The Defendant has failed to provide any substantive objections to the Plaintiff's evidence of the Court's personal jurisdiction over HFN**

The Defendant cites a list of "facts" in support of HFN's limited contacts with California (MTD 2 at 2-3), but all are based on Santhanam's declaration, which has been shown to contain false statements made in bad faith, so this argument lacks any foundation. Additionally, the

GoDaddy relationship demonstrates significant contacts by HFN in California that are directly related to all of the allegations in the current action, so the entire thesis of this section of the MTD is flawed.

The Defendant also alleges (MTD 2 at 5) that this Court lacks general personal jurisdiction over HFN using an argument that relies heavily on *Daimler AG v. Bauman* (2014) 571 U.S. 117 [134 S.Ct. 746, 187 L.Ed.2d 624]. However, *Daimler* has a significantly different fact pattern from the current action, so the conclusions of the Supreme Court are not relevant here. The plaintiffs argued that "jurisdiction over Daimler could be founded on the California contacts of MBUSA" (*Id.* at 627) and "MBUSA … was Daimler's 'agent' for jurisdictional purposes" (*Id.* at 627). The only relationship between MBUSA and Daimler was one of an independent business subsidiary, which failed to meet the criteria of an agency relationship. "[T]he relevant principal/agency relationship demands not only control (or the right to direct or control) but also 'the manifestation of consent by one person to another that the other shall act *on his behalf* . . ., and consent by the other so to act.'" *Meyer v. Holley* (2003) 537 U.S. 280, 286 [123 S.Ct. 824, 829, 154 L.Ed.2d 753, 760]. As described earlier in the context of this Court's jurisdiction of the patent irregularities, this agency relationship is exactly the relationship between HFN and GoDaddy. Furthermore, the Supreme Court concluded that "the proper inquiry, this Court has explained, is whether a foreign corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 119. Through its agent GoDaddy, HFN is serving and billing customers in Northern California (FAC ¶ 16), collecting revenue in Northern California (FAC ¶ 14), holding regular business meetings in Northern California (FAC ¶¶ 13,15), and marketing products and services in Northern California (FAC ¶ 16). HFN is essentially at home in Northern California, unlike Daimler with only an arms-length relationship with an independent business unit MBUSA.

## V.  THE DEFENDANT HAS DE FACTO BOARD MEETINGS IN THE NORTHERN DISTRICT OF CALIFORNIA

The Plaintiff has detailed a lengthy dinner meeting in San Francisco on July 25, 2023 by **at least a quorum** of the HFN Board, where the Board members had invited the Plaintiff through Rahul Singh ("Singh") in order to discuss what direction HFN should take and possible compensation for the Plaintiff. Singh confirmed with the Plaintiff on a phone call during the dinner meeting that Santhanam and Shiralagi were at the meeting and were making great progress on shaping HFN's strategy and defining next steps on corporate management activities (Opp. 1 ¶ 14). Shiralagi has confirmed that both he and Singh were at this meeting (Declaration of Kumar Shiralagi, Dkt. 34-1 ¶ 11). The Plaintiff alleges that this meeting was a *de facto* Board meeting, since a quorum was present, where the Board members discussed and made decisions on the corporate strategy, HR policy, and specific operational next steps for HFN. The Defendant's only response (MTD 2 at 5) relies solely on Santhanam's declaration, which has shown to contain false statements and be made in bad faith, so this argument is moot.

## VI. THIS IS NOT A DERIVATIVE ACTION

The Defendant continues to argue that the claims in this action cannot be pursued as a derivative action (MTD 2 at 15). The Plaintiff is well aware that a *pro se* plaintiff cannot represent the interests of anyone other than himself. The Plaintiff is not seeking to recover on behalf of the corporation for injury done to the corporation by Defendants. In fact, since HFN is largely owned by the Defendants, it would make no sense for Plaintiff to try to recover on behalf of the corporation, since **it would benefit the Defendants**. Instead, the injury applies directly to the Plaintiff. "A stockholder's derivative suit is brought to enforce a cause of action which the corporation itself possesses against some third party, a suit to recompense the corporation for injuries which it has suffered as a result of the acts of third parties . . . [t]he stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual." Fed. R. Civ. Proc., Advisory Committee Notes (1966) H.R. Doc. No. 391, 89th Cong., 2d Sess. 40.

**CONCLUSION**

In this amended complaint, the Plaintiff has corrected the deficiencies noted by the Court in the original complaint. The Defendant has failed to make any compelling argument against this Court's jurisdiction over the current action, so the Court should dismiss the Defendant's motion to dismiss with prejudice and allow the action to proceed.

Date: _____June 28, 2023_____          Signature: _____/S/ Allan A. Miller_____

Printed name: _____Allan A. Miller_____