**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Matthew H. Ladner (SBN 284594)
350 S. Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone:  (213) 928-9816
E-mail: Matthew.Ladner@troutman.com

William M. Taylor (*pro hac vice*)
125 High St., 19th Floor
Boston, MA 02110
Telephone:  (617) 204-5186
Email:  William.Taylor@troutman.com

Attorneys for Defendant
HFN, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLAN MILLER,<br><br>                            Plaintiff,<br><br>        vs.<br><br>HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC.; KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company; SRIDHAR SANTHANAM; KUMAR SHIRALAGI; PAVAN VAISH; and VANI KOLA,<br><br>                            Defendants. | Case No. 3:23-cv-0533-VC<br><br>**DEFENDANT HFN, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR: (1) LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE, FOR (2) FAILURE TO STATE A CLAIM, LACK OF SUBJECT MATTER JURISDICTION, AND LACK OF STANDING**<br><br><br>**Date:**    July 27, 2023<br>**Time:**    10:00 a.m.<br>**Ctrm:**    4<br>**Floor:**    17th |

159530359v1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................1

II.     PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF ESTABLISHING
        PERSONAL JURISDICTION AND VENUE......................................................1

III.    DISMISSAL IS ALSO REQUIRED ON THE MERITS ....................................6

        A.      Plaintiff Has Failed to State a Valid Exchange Act Claim ......................6

        B.      Plaintiff Has Failed to State a Valid Fiduciary Duty Claim Against HFN ............10

        C.      The Court Lacks Subject Matter Jurisdiction Over Plaintiff's DGCL Claim........10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
   69 F.3d 337 (9th Cir. 1995) ............................................................................................2

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975)...........................................................................................................8

*BNSF Ry. v. Tyrrell*,
   137 S. Ct. 1549 (2017).......................................................................................................3

*Borg v. Principal Life Ins. Co.*,
   2008 U.S. Dist. LEXIS 142163 (N.D. Cal. July 24, 2008)...................................78

*Carpenter v. Sikorsky Aircraft Corp.*,
   101 F. Supp. 3d 911 (C.D. Cal. 2015) .......................................................................5

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) .....................................................................................5

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
   934 F. Supp. 2d 1219 (C.D. Cal. 2013) ....................................................................4

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...........................................................................................................3

*Durning v. Citibank*,
   990 F.2d 1133 (9th Cir. 1993) .................................................................................7, 8

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
   640 F.3d 1034, 1040 (9th Cir. 2011) .........................................................................7

*Fluidigm Corp. v. bioMérieux SA*,
   No. 19-CV-02716-LHK, 2019 U.S. Dist. LEXIS 210944 (N.D. Cal. Dec. 5,
   2019) ....................................................................................................................................5

*Gergawy v. United States Bakery, Inc.*,
   2022 U.S. Dist. LEXIS 22721 (E.D. Wash. Feb. 8, 2022) ......................................3

*Matus v. Premium Nutraceuticals, LLC*,
   715 Fed. App'x 662 (9th Cir. 2018) ...........................................................................4

*In re Maxim Integrated Prods.*,
   574 F. Supp. 2d 1046 (N.D. Cal. 2008) .....................................................................7

*McNeal v. Williams*,
　　2022 U.S. Dist. LEXIS 139508 (D. Nev. Aug. 5, 2022) ........................................................3

*Meide v. Centineo*,
　　2019 U.S. Dist. LEXIS 234495 (C.D. Cal. Oct. 31, 2019), *aff'd* 2022 U.S.
　　App. LEXIS 30288 (9th Cir. Nov. 1, 2022)....................................................................9

*NexLearn v. Allen Interactions, Inc.*,
　　859 F.3d 1371 (Fed. Cir. 2017)........................................................................................5

*O'Handley v. Padilla*,
　　579 F. Supp. 3d 1163 (N.D. Cal. 2022) ...........................................................................6

*Ranza v. Nike*,
　　793 F.3d 1059, 1071 (9th Cir. 2015) ................................................................................3

*SEC v. Blockvest, LLC*,
　　2020 U.S. Dist. LEXIS 68951 (S.D. Cal. Apr. 17, 2020)..................................................2

*Stitching Pensioenfunds ABP v. Countrywide Fin. Corp.*,
　　802 F. Supp. 2d 1125 (C.D. Cal. 2011) .............................................................................8

*In re Teva Sec. Litig.*,
　　2021 U.S. Dist. LEXIS 60195 (D. Conn. Mar. 30, 2021).................................................9

*In re Teva Sec. Litig.*,
　　512 F. Supp. 3d 321 (D. Conn. 2021) ................................................................................9

*United States v. Campos*,
　　1994 U.S. App. LEXIS 43317 (5th Cir. Apr. 14 1994) ....................................................2

*Wu v. Stomber*,
　　883 F. Supp. 2d 233 (D.D.C. 2012) ..................................................................................9

**Statutes**

28 U.S.C. § 1400.....................................................................................................................5

Fed. R. Civ. P. 9..................................................................................................................6, 9

I.      **INTRODUCTION**

Plaintiff's Opposition not only violates the 15-page limit prescribed by the Court's Civil Standing Order, but also relies on allegations missing from the FAC and unsubstantiated argument untethered to the law.  As explained below, and for the reasons stated in HFN's Motion, the FAC must be dismissed – this time, with prejudice.

II.     **PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF ESTABLISHING PERSONAL JURISDICTION AND VENUE**

As set forth in HFN's Motion, the FAC is premised on, and seeks relief for, seven categories of allegations regarding the purported mismanagement of HFN's affairs – namely, the Governance, HR, Seed, Distraction, Patent, Software, and Webpage Allegations.  (Mot. at 3-4, citing FAC ¶¶ 30-105).  In addition, Plaintiff seeks recovery under the Exchange Act for alleged misrepresentations during settlement discussions in 2015 regarding the intended purpose of HFN's stock option pool.  (Mot. 4-5, citing FAC ¶¶ 24-34, 119-126).  However, as established in the Motion, this Court does not have general or specific jurisdiction over HFN with respect to any of these allegations or Plaintiff's corresponding claims because: (1) California is not HFN's state of incorporation or principal place of business, nor is this an "exceptional" case in which an out-of-state corporation is essentially at home in California; and (2) there is no "substantial connection" between Plaintiff's claims and HFN's alleged forum contacts.  (Mot. 5-7).  For a second time, Plaintiff has failed to refute these dispositive points, and it is clear that he has not carried – nor can he possibly carry – his legal burden of establishing personal jurisdiction over HFN.

<u>**First**</u>, Plaintiff argues the Court should disregard Mr. Santhanam's Declaration entirely because of a perceived inconsistency with the Declaration he previously filed in support of HFN's first Motion to Dismiss.  Specifically, Plaintiff notes that: (a) Mr. Santhanam's prior Declaration stated HFN is incorporated in Delaware and has its principal place of business in Utah where it maintains "nearly all operational employees"; and (b) his current Declaration states the same facts regarding HFN's state of incorporation and principal place of business, and also clarifies that in addition to maintaining "nearly all U.S.-based operational employees" in Utah, HFN also has

"significant operations and personnel" in India, including its management team.  (Opp. at 1, 3-5; *see also* Dkt. No. 11-1 at ¶ 5, Dkt. No. 33-1 at ¶ 5).

This clarification is consistent with HFN's prior submissions and cannot justify denial of HFN's Motion.  Mr. Santhanam's original Declaration disclosed that HFN operates in India by stating "HFN's management team principally resides and works in India."  (Dkt. No. 11-1 at ¶ 5). In addition, HFN previously acknowledged that Plaintiff had submitted LinkedIn webpages showing HFN personnel and operations in India, but explained that such "evidence" was irrelevant to the propriety of personal jurisdiction over HFN in California.  (Dkt. No. 18 at 2).  Thus, Mr. Santhanam's current Declaration clarifying the nature of HFN's India operations is not inconsistent with any positions taken or facts put forward by HFN earlier in this case, especially where (i) both of Mr. Santhanam's Declarations clearly state HFN is not incorporated in California, does not maintain its principal place of business in California, and has only limited contacts with California (all of which are irrelevant to Plaintiff's alleged claims); and (ii) Plaintiff has never offered contrary evidence rebutting any of these critical jurisdictional facts.  Simply put, there is no basis for concluding Mr. Santhanam has provided false or inconsistent testimony to this Court, nor is Plaintiff's focus on the presence of HFN personnel in India versus Utah relevant to the operative jurisdictional question – namely, whether HFN has contacts with **California** capable of supporting personal jurisdiction in this forum.[1]

---

[1] Plaintiff cites various cases allegedly supporting his request to exclude Mr. Santhanam's Declaration (Opp. 3-5) – however, those cases are distinguishable, and their dramatically different facts serve only to confirm that Plaintiff is attempting to manufacture a discrepancy where none exists.  *See SEC v. Blockvest, LLC*, 2020 U.S. Dist. LEXIS 68951, at *12-31 (S.D. Cal. Apr. 17, 2020) (granting government's motion for terminating sanctions where defendants submitted multiple declarations with forged signatures, solicited false declarations from witnesses, and directed affiliates to lie during an interview with the SEC and submit a false declaration containing fabricated information); *Anheuser-Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 339-344, 348-355 (9th Cir. 1995) (affirming summary judgment of cross-complaint where party knowingly and intentionally concealed that relevant documents had survived a fire, and then, after deceiving the other side and the court for years, sought to use those documents on the eve of trial); *United States v. Campos*, 1994 U.S. App. LEXIS 43317, at *46-65 (5th Cir. Apr. 14 1994) (reversing convictions due to *Brady* violation where government withheld notes taken during plea

**Second**, Plaintiff argues general jurisdiction is present because HFN has supposedly entered a reseller arrangement with California-based GoDaddy, under which GoDaddy is allegedly operating as HFN's agent in this state.  (Opp. at 14-15; *see also* FAC ¶¶ 13-16).  But, general jurisdiction over a corporation typically exists only if (i) the corporation is incorporated or has its principal place of business in the forum state, or (ii) there are "exceptional" circumstances that render the corporation's "affiliations with the State [] so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 137-139 and n. 19 (2014).  To that end, the Supreme Court has expressly rejected the exercise of general jurisdiction based on a purported agency relationship, even between entities that – **unlike HFN and GoDaddy** – are part of the same corporate family.  *Id.* at 134-135; *see also Ranza v. Nike*, Inc., 793 F.3d 1059, 1071 (9th Cir. 2015) ("The agency test is therefore no longer available . . . to establish jurisdiction over NEON.").  Accordingly, there is no legal or factual basis for finding general jurisdiction over HFN based on a purported reseller "agency" relationship with GoDaddy, particularly where Plaintiff has not adduced any facts remotely supporting his presumptions about the nature of that relationship.  *See also BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (the Supreme Court has recognized only one "exceptional case" of general jurisdiction – namely, an out-of-state corporation relocating "the center of [its] [] activities" to the forum during wartime); *Daimler*, 571 U.S. at 139 and n. 20 (a corporation is not subject to general jurisdiction in every state where its "sales are sizable" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them.").

**Third**, with respect to specific jurisdiction, Plaintiff has failed to submit admissible evidence establishing any nexus, let alone the required "substantial connection," between his

---

negotiations with former defendant and cooperating witness, which revealed prior inconsistent statements regarding a meeting with defendants that "was vital to the government's case"); *McNeal v. Williams*, 2022 U.S. Dist. LEXIS 139508, at *4-5 (D. Nev. Aug. 5, 2022) (denying petitioner's request to dismiss counsel and represent himself in habeas proceeding, and admonishing petitioner that counsel was not required to blindly follow his orders); *Gergawy v. United States Bakery, Inc.*, 2022 U.S. Dist. LEXIS 22721, at *22-24 (E.D. Wash. Feb. 8, 2022) (striking "sham affidavit" where it was contrary to plaintiff's sworn deposition testimony on multiple material topics).

claims and HFN's purported forum activities.  *Matus v. Premium Nutraceuticals, LLC*, 715 Fed. App'x 662, 662 (9th Cir. 2018).  Instead, Plaintiff makes two arguments, both of which are unavailing.  To begin, Plaintiff claims there is jurisdiction over his fiduciary duty claims because he "believes" GoDaddy provided HFN with a $1.25 million advance payment against future royalties.  In addition, Plaintiff contends HFN's "dysfunctional" management has "resulted in" unspecified "product and services decisions that are not in tune with the needs of GoDaddy," which has supposedly led to "customer attrition and loss of revenue" for GoDaddy or HFN (it is not clear which).  Plaintiff also argues HFN's generally deficient HR procedures, software and website decisions, and management have adversely impacted its relationship with GoDaddy in unspecified ways.  (Opp. at 13-14).  **However, in addition to being devoid of evidentiary support, these accusations are also glaringly missing from the FAC itself**, which only: (i) alleges HFN engaged in discussions with GoDaddy between 2019 and 2022 related to a reseller relationship; but (ii) omits any facts regarding the status, nature, success, or failure of that arrangement, let alone any fiduciary breaches related to it.  (FAC ¶¶ 13-18).  Thus, as actually pleaded, none of Plaintiff's fiduciary duty claims arise from HFN's alleged relationship with GoDaddy, and Plaintiff cannot establish jurisdiction by changing his theory of his case at the last minute.  *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1237 n.23 (C.D. Cal. 2013) (rejecting jurisdictional allegation made for the first time in opposition to motion to dismiss).[2]

Next, Plaintiff claims HFN holds "*de facto*" Board meetings in California because Messrs. Santhanam and Singh met with Mr. Shiralagi in San Francisco in July 2022.  (Opp. at 16).  But, the only evidence cited by Plaintiff is Mr. Shiralagi's Declaration in support of his own Motion to Dismiss, which unambiguously states that this July 2022 meeting occurred **after** Mr. Shiralagi had already resigned from HFN, and **no** corporate actions were taken during the brief meeting.  (Dkt. No. 34-1 at ¶ 11).  Indeed, the FAC does not allege HFN made any specific decisions regarding management, HR, the Seed Partnership, patents, software, website content, or any other matters

---

[2] In any event, Plaintiff's fiduciary duty claims are barred as a matter of law.  (Mot. at 14-15).

during Mr. Santhanam's meeting with Mr. Shiralagi in July 2022, and Plaintiff's speculation is no substitute for an actual link between his claims and California.  *Carpenter v. Sikorsky Aircraft Corp.*, 101 F. Supp. 3d 911, 923 (C.D. Cal. 2015) (forum contacts unconnected to a plaintiff's claim are not relevant to personal jurisdiction).

**Fourth**, Plaintiff argues jurisdiction exists because his fiduciary duty claims are partially based on allegations that HFN failed to prosecute its patents and entered a transaction with Zelis Payments and Red-Card Payment Systems that involved HFN pledging certain patents as collateral.  (Opp. at 10-13; FAC ¶¶ 74-87).  But, Plaintiff's cited authorities on this point are obviously inapposite because they exclusively concern *venue* under 28 U.S.C. § 1400(b), which provides that "[a]ny civil action for **patent infringement** may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  (Emphasis added).  Here, Plaintiff has not alleged a cause of action for infringement under the federal patent statutes or otherwise accused Defendants of infringement – **nor would it matter if he did so because, even in patent cases, a plaintiff must still establish personal jurisdiction in accordance with the standards set forth in HFN's Motion**.  *Fluidigm Corp. v. bioMérieux SA*, No. 19-CV-02716-LHK, 2019 U.S. Dist. LEXIS 210944, at *6 (N.D. Cal. Dec. 5, 2019) (explaining Federal Circuit law governs personal jurisdiction in patent cases, and when a patent case is filed in California federal court, "the jurisdictional analyses under state law and federal due process coalesce into a single inquiry" of whether personal jurisdiction exists under federal law concerning general and specific jurisdiction); *NexLearn v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375-1376 (Fed. Cir. 2017) (citing *Daimler* and *Walden* for the jurisdiction standards in patent cases).[3]

_____

[3] Plaintiff cites a Sixth Circuit case for the alleged proposition that the Court should not consider any of HFN's evidence regarding the lack of jurisdiction because Plaintiff has supposedly made a prima facie showing that jurisdiction exists.  (Opp. at 13).  However, Ninth Circuit law is clear that **Plaintiff** has the "burden of establishing that jurisdiction is proper[,]" and to meet that burden, he "cannot simply rest on the bare allegations of his complaint[,]" and the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."  *CollegeSource, Inc. v.*

**Finally**, for the reasons stated above, as well as in the Motion, venue is not proper in this Court because: (i) no defendant resides in California; (ii) there is no nexus between Plaintiff's claims and California; and (iii) HFN is not subject to personal jurisdiction in this Court, nor does it appear any other defendant would be.  (Mot. at 7).

## III.  DISMISSAL IS ALSO REQUIRED ON THE MERITS

### A.  Plaintiff Has Failed to State a Valid Exchange Act Claim

As set forth in HFN's Motion, Plaintiff's Exchange Act claims must be dismissed because they are: (1) barred by the broad release provisions found in the Settlement and SPA Plaintiff negotiated through counsel and executed in 2015; (2) untimely under the applicable 5-year statute of repose and 2-year statute of limitations; and (3) inadequately pleaded under the heightened standards of Rule 9(b) and the PSLRA.  (Mot. at 7-14).  Plaintiff fails to overcome these fatal defects.  **First**, Plaintiff argues his Exchange Act claims are outside the Settlement's and SPA's release provisions because HFN's fraud "did not commence until sometime after" those documents were executed, when the company began issuing stock options to insiders.  (Opp. at 5-6).  There are multiple problems with this contention:

A)     It is belied by the FAC's express allegations that: (i) "HFN intentionally misrepresented the capitalization of the company during the 2015 settlement," which "was a significant component of the 2015 settlement negotiations"; (ii) HFN's counsel made "[t]he representation that the large option pool was an ESOP" during settlement discussions; (iii) "HFN induced the Plaintiff to purchase shares during the settlement by misrepresenting the option pool as an ESOP" rather than source for "allocation of large numbers of shares to insiders"; (iv) "the misrepresentation of the option pool as an ESOP" during settlement talks "an 'untrue statement of material fact' that was 'in connection with the sale of [a] security'" that violated the Exchange Act; and (v) "Plaintiff purchased shares in HFN" in 2015 "based on this misrepresentation" regarding the company's stock option pool.  (FAC ¶¶ 24-25, 27-28, 33-34, 120).  Clearly, the only

---

*AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011); *see also see also O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022).

purported securities fraud actually alleged in the FAC consists of supposedly false representations made **during** settlement discussions **before** Plaintiff executed the Settlement and SPA – and not HFN's alleged issuance of stock options to insiders years later.

B)      In a securities fraud case, the actionable "violation" is the fraudulent representation that caused the plaintiff to buy or sell a security.  *Durning v. Citibank*, 990 F.2d 1133, 1136 (9th Cir. 1993) ("The Durnings securities fraud claim arose in 1981, when the Official Statement allegedly misrepresented the bonds' redemption dates and the bonds were purchased."); *In re Maxim Integrated Prods.*, 574 F. Supp. 2d 1046, 1071 (N.D. Cal. 2008) (in a securities fraud case, "a violation is considered to have occurred on the date the false representation was made").  Here, that alleged misrepresentation occurred **during** settlement talks, such that any claim for securities fraud relating to the misrepresentation was subsequently released by the Settlement and SPA.

C)      In *Facebook, Inc. v. Pac. Nw. Software, Inc.*, the Ninth Circuit held that a broad release contained in a settlement agreement necessarily includes the claim that "securities law violations took place in connection with the settlement itself" and induced a plaintiff to purchase the defendant's stock.  *See* 640 F.3d 1034, 1040 (9th Cir. 2011).  Plaintiff does not dispute this law – instead, he contends it should not apply to him because of alleged differences between the financial condition of the parties to the Settlement and SPA.  (Opp. at 6).  However, Plaintiff was represented by counsel in the Massachusetts Lawsuit and related negotiations leading-up the Settlement and SPA, and there is no reason to doubt the experience, sophistication or competence of his counsel, particularly where the Massachusetts Lawsuit resulted in a significant monetary settlement in favor of the plaintiffs.  (Dkt. No. 33-1, Ex. 1).  Plaintiff does not cite any law for the proposition that release provisions in settlements between **represented parties** are unenforceable against the less-wealthy party, and no such rule does or could exist since it would be fundamentally inconsistent with, and frustrate, the policies favoring settlement and finality.  *Facebook*, 640 F.3d at 1039 ("It hardly seems necessary to point out that there is an overriding public interest and settling and quieting litigation." (internal citation and quotation omitted)); *see also Borg v. Principal Life Ins. Co.*, 2008 U.S. Dist. LEXIS 142163, at *8 (N.D. Cal. July 24, 2008) (rejecting

claim plaintiff was fraudulently induced to enter settlement because "[w]here a party is represented by counsel, or where the alleged misrepresentation was made by an adversary during the course of negotiations, courts have held that reliance is unjustifiable.").

D)    Plaintiff asserts in his Opposition that HFN's "fraud scheme did not commence until some time after the settlement[,]" and he does not even know whether "HFN conceived of the scheme to misuse the ESOP at some time, either before or after the settlement[.]"  (Opp. at 6, 8).  To the extent Plaintiff now contends HFN did not intentionally deceive him during settlement talks but simply acted "fraudulently" years later by issuing stock options to insiders, Plaintiff is pursuing nothing more than a legally prohibited "holder" claim in violation of Supreme Court precedent.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975).

**Second**, Plaintiff argues the 5-year statute of repose does not bar his claims because although he was induced to purchase HFN stock in 2015, HFN did not "implement" its fraud until much later when it began to actually issue stock options to insiders.  (Opp. at 6-7).  However, the statute of repose "**begins to run on the date that the plaintiff purchased the securities at issue**[,]" *Stiching Pensioenfunds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1134 (C.D. Cal. 2011) (emphasis added), and it is equally well-established under Ninth Circuit law that (i) there is no "continuing fraud" exception to the 5-year statute of repose, and (ii) a plaintiff cannot avoid the statute of repose by pointing to subsequent conduct that supposedly furthered a fraud but did not actually cause the plaintiff to buy or sell any additional securities.  *Durning*, 990 F.2d at 1135-1137; *Meide v. Centineo*, 2019 U.S. Dist. LEXIS 234495, at *5-7, 9-12 (C.D. Cal. Oct. 31, 2019), *aff'd* 2022 U.S. App. LEXIS 30288, at *3-4 (9th Cir. Nov. 1, 2022); *see also authorities at* Mot. at 11-13 and n. 10-13.  Here, Plaintiff purchased HFN stock in 2015, and the FAC is devoid of any allegation that HFN engaged in any fraudulent conduct after 2015 which caused **Plaintiff himself** to buy or sell additional securities.  (FAC ¶¶ 24-34, 120).  As such, Plaintiff's securities fraud claims are clearly time-barred.[4]

---

[4] Plaintiff does not substantively address HFN's authorities on these points.  Instead, Plaintiff asks

**Third**, Plaintiff contends his claims are within the 2-year statute of limitations because: (i) HFN "was required to provide the 2019 capitalization table to [him] in 2019 at the required annual shareholder meeting, and [HFN] did not even have such a meeting," and (ii) "[e]ven if the Plaintiff had requested information in 2019" regarding HFN's stock option pool – which he did not – HFN supposedly would have "stall[ed] . . . while providing no information[.]" (Opp. at 9). In other words, Plaintiff contends he *knew* he should have received information in 2019 showing the status of HFN's stock option pool, yet knowingly failed to request or take any other steps to obtain that information because he apparently presumed doing so would be futile. This is the antithesis of reasonable diligence, and Plaintiff's claim is therefore time-barred. *Wu v. Stomber*, 883 F. Supp. 2d 233, 254-255 (D.D.C. 2012) (expressing skepticism that securities fraud claim was timely where plaintiffs did not "even attempt[] to undertake an investigation" of the facts).

**Fourth**, Plaintiff argues he has satisfied the heightened pleading requirements of Rule 9(b) and the PSLRA by alleging that HFN and all other defendants engaged in an "ongoing and systematic use of the option pool to defraud Plaintiff," which includes the "abuse of the option pool to allocate shares to company insiders over a long period." (Opp. at 8). But, this argument

---

the Court to follow the District of Connecticut's 2021 decision in *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321 (D. Conn. 2021). However, in that case, the court (i) **rejected** the plaintiffs' reliance on the "last culpable act" doctrine and their attempt to maintain a securities fraud claim where misrepresentations outside of the 5-year repose period were supposedly part of a multiyear "scheme" of "interrelated misstatements and omissions"; and also (ii) **rejected** the plaintiffs' attempt to recast their claims under Rule 10b-5's "scheme liability" provisions, because their claims were "plainly" based on "misstatements and omissions," and not any other fraudulent/deceptive conduct that caused them to buy or sell any securities. *Id.* at 331-339. Moreover, in a later order denying reconsideration of its ruling, the court clarified that, even assuming the plaintiffs had alleged a viable "scheme liability" claim, they **still** could not maintain a securities fraud claim based on misrepresentations outside of the repose period, because there is no law holding that "otherwise-untimely misstatements or omissions [are] timely [if] they were part of a Defendant's scheme of many interrelated misstatements or omissions[,]" and "such a result would defy common sense" by "enabl[ing] plaintiffs to evade a statute of repose through a simple, semantic pleading trick." *In re Teva Sec. Litig.*, 2021 U.S. Dist. LEXIS 60195, at *25-26 and n. 1 (D. Conn. Mar. 30, 2021). Thus, Plaintiff's reliance on *In re Teva* is misplaced, especially where Ninth Circuit law is clear that Plaintiff cannot revive an untimely misrepresentation claim based on subsequent events that did not cause him to buy any further HFN stock.

is just as conclusory as the FAC itself, and Plaintiff ignores that: (i) any statements made by HFN or its counsel during settlement discussions are non-actionable under the litigation privilege; (ii) there is no allegation HFN intended Plaintiff to rely on any statements made during settlement negotiations – to the contrary, the Settlement and SPA omit any mention of HFN's option pool and disclaim all statements/representations not expressly contained in those documents; (iii) Plaintiff admits that by 2019 HFN still had not issued Mr. Santhanam any options from its pool, which is irreconcilable with a fraudulent intent in 2015; and **critically** (iv) Plaintiff now **admits** he is not even sure whether HFN actually intended to misrepresent the purpose of its option pool in 2015.  (Mot. at 14; FAC ¶ 13; Opp. at 7, stating "HFN conceived the scheme to misuse the ESOP *at some time*, *either* before *or after the settlement*" (emphasis added)).

**Finally**, Plaintiff does not contest that without a valid Section 10(b) claim, his Section 20(a) claim also fails.  (Mot. at 14).

### B.   Plaintiff Has Failed to State a Valid Fiduciary Duty Claim Against HFN

Plaintiff argues he is proceeding on a direct rather than derivative basis.  (Opp. at 16).  In doing so, Plaintiff ignores and thus concedes that: (i) Delaware law governs his fiduciary duty claims; (ii) a shareholder cannot sue a corporation directly for breach of fiduciary duty; and (iii) a corporation cannot aid and abet alleged fiduciary breaches of its officers or directors.  (Mot. at 14-15).  Taking Plaintiff at his word that he is proceeding directly, his claims are legally barred and must be dismissed.  Furthermore, even if the Court finds Plaintiff has alleged derivative claims, dismissal is still to be required because, as Plaintiff concedes, a *pro se* litigant cannot maintain a derivative suit, nor has Plaintiff even tried to plead demand futility.  (Opp. at 16; Mot. at 15).

### C.   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's DGCL Claim

Plaintiff does not address, much less dispute, the Delaware court's exclusive jurisdiction over his DGCL claim, (Mot. at 15), and that claim should therefore be dismissed.

Dated:  July 5, 2023                    TROUTMAN PEPPER HAMILTON SANDERS LLP

                                        By: /s/ Matthew H. Ladner
                                            Attorneys for Defendant HFN, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the forgoing **DEFENDANT HFN, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR: (1) LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE, FOR (2) FAILURE TO STATE A CLAIM, LACK OF SUBJECT MATTER JURISDICTION, AND LACK OF STANDING,** with the Clerk of the Court for the United States District Court, Central District of California, by using the Court's CM/ECF system on July 5, 2023.

I certify that all participants in the case re registered CM/ECF users and that the service will be accomplished by the Court's CM/ECF system.

I declare under penalty of perjury of the laws of the Unites States of America that I am employed by a member of the Bar of this Court at whose direction the service is made and that the foregoing is true and correct.

Executed on July 5, 2023, at Irvine, California.

_____
Janine Philips