Allan Miller
3385 Claudia Drive
Concord, CA  94519
650-468-7387
(no fax number)
allan.miller@alumni.stanford.edu
Pro Se Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ALLAN MILLER<br><br>        Plaintiff,<br><br>    vs.<br><br>HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC.,<br>KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company,<br>SRIDHAR SANTHANAM,<br>KUMAR SHIRALAGI, PAVAN VAISH, and VANI KOLA<br><br>Defendants. | Case Number: 23-CV-0533-VC<br><br><br>**OPPOSITION   TO   DEFENDANT KUMAR SHIRALAGI'S  MOTION  TO DISMISS    FIRST    AMENDED COMPLAINT  AGAINST  DEFENDANT KUMAR SHIRALAGI** |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ISSUES TO BE DECIDED ........................................................................................1

   I.    SHIRALAGI'S DECLARATION MUST BE EXCLUDED ..................................1

   II.   THE DEFENDANT IS LIABLE FOR THE 20(a) EXCHANGE ACT COUNTS.1

      A.   The Defendant is a controlling person of the 10(b) violations ............................1

      B.   The Plaintiff has pled the Defendants' specific liability ......................................1

      C.   The Plaintiff's pleading meets the heightened pleading standards of the PSLRA
         2

   III.  THIS COURT HAS JURISDICTION OVER THE 10(b) AND 20(a) COUNTS
         2

      A.   The Exchange Act claims are not barred by the 2015 settlement .......................2

      B.   The Exchange Act claims are not time-barred .....................................................2

   IV.   THIS COURT HAS JURISDICTION OVER THE FIDUCIARY DUTY
CLAIMS    2

      A.   The Fiduciary Duty claims are a federal case unaffected by Delaware law........2

      B.   The Fiduciary Duty claims have jurisdiction in this Court ..................................2

   V.   THIS IS NOT A DERIVATIVE ACTION ............................................................2

   VI.   ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND .......................3

RELEVANT FACTS..................................................................................................3

ARGUMENT ............................................................................................................3

   I.    SHIRALAGI'S DECLARATION CONTAINS FALSE STATEMENTS AND
MUST BE EXCLUDED ............................................................................................3

A.   The Defendant continued as a Board member of HFN into at least August 2022
    4

B.   The Defendant attended at least two *de facto* Board meetings, as a Board member,
in the Northern District of California ..................................................................................4

C.   The Defendant moved to Texas while still on the Board of HFN ......................5

D.   The Defendant has most likely worked in the Northern District of California ...5

E.   These false statements are significant and the entire declaration shows bad faith
    5

II.    THE DEFENDANT IS LIABLE FOR THE EXCHANGE ACT COUNTS UNDER
SECTION 20(a) ....................................................................................................................6

A.   The Defendant is a controlling person of the 10(b) violations ...........................6

B.   The Plaintiff has pled the Defendants' specific liability .....................................7

C.   The Plaintiff's pleading meets the heightened standards of the PSLRA.............7

III.    THE EXCHANGE ACT COUNTS ARE VALID CLAIMS ............................7

A.   The settlement agreement does not bar the claims ..............................................7

B.   *Facebook, Inc. v. Pac. Northwest Software, Inc.* is not a relevant precedent......8

C.   The Exchange Act claims are within the 5-year statute of repose.......................8

D.   The Exchange Act claims are within the 2-year statute of limitations..............10

E.   The Defendant misrepresents the nature of the settlement compromise ...........10

IV.    THE  PATENT  IRREGULARITIES  GIVE  THIS  COURT  JURISDICTION
OVER THE FIDUCIARY DUTY COUNTS.......................................................................11

A.   The Defendant's breach arises under Federal patent law ..................................11

B.   This Court's jurisdiction is well established ......................................................12

V.    THE GODADDY RELATIONSHIP GIVES THIS COURT JURISDICTION ...13

    A.    The GoDaddy relationship is a model of breach of fiduciary duty ...................13

    B.    The Defendant provides no objections to the Court's jurisdiction over Shiralagi
      14

VI.    THIS IS NOT A DERIVATIVE ACTION .......................................................15

VII.    ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND ...................15

CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.* (Fed.Cir. 2021) 6 F.4th 1283.........................12

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.* (9th Cir. 1995) 69 F.3d ...............................6

*Brady v. Delta Energy & Communs. Inc.* (C.D.Cal. 2022) 598 F. Supp. 3d 865...........................7

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.* (2017) 582 U.S. 497 [137 S.Ct. 2042, 2045, 198 L.Ed.2d 584, 587]...........................................................................................................10

*China Agritech, Inc. v. Resh* (2018) ___U.S.___, fn. 1 [138 S.Ct. 1800, 1804, 201 L.Ed.2d 123, 128]...............................................................................................................................................10

*Christianson v. Colt Indus. Operating Corp.* (1988) 486 U.S. 800 [108 S.Ct. 2166, 2173, 100 L.Ed.2d 811]..........................................................................................................................11

*Facebook, Inc. v. Pac. Northwest Software, Inc.* (9th Cir. 2011) 640 F.3d 1034 ..........................8

*Gergawy v. United States Bakery, Inc.* (E.D.Wash. Feb. 8, 2022, No. 2:19-CV-00417-SAB) 2022 U.S.Dist.LEXIS 22721 ..............................................................................................................6

*Gunn v. Minton* (2013) 568 U.S. 251 [133 S.Ct. 1059, 1065, 185 L.Ed.2d 72].....................11, 12

*Hollinger v. Titan Capital Corp.* (9th Cir. 1990) 914 F.2d 1564 ...................................................6

*In re Cray Inc.* (Fed.Cir. 2017) 871 F.3d 1355 .............................................................................12

*In re Garrett Motion Sec. Litig.* (S.D.N.Y. Mar. 31, 2022) 2022 U.S.Dist.LEXIS 60843 .............9

*In re Google LLC* (Fed.Cir. 2020) 949 F.3d 1338...................................................................12, 13

*In re Mindbody, Inc. Sec. Litig.* (S.D.N.Y. 2020) 489 F. Supp. 3d 188 ........................................10

*In re TC Heartland LLC* (Fed.Cir. 2016) 821 F.3d 1338 ..............................................................12

*In re Teva Sec. Litig.* (D.Conn. 2021) 512 F. Supp. 3d 321 ...........................................................9

*JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC* (M.D.Tenn. 2022) 615 F. Supp. 3d 750 ...............................................................................................................................................10

*LaserDynamics, Inc. v. Quanta Computer, Inc.* (Fed.Cir. 2012) 694 F.3d 51 ..............................12

*McNeal v. Williams* (D.Nev. Aug. 5, 2022, No. 2:16-cv-01618-JAD-EJY) 2022 U.S.Dist.LEXIS 139508 ..........................................................................................................................................6

*Miller et al. v. Donnini et al.*, D Mass 1:14-cv-12337-NMG ........................................................8

*Neogen Corp. v. Neo Gen Screening, Inc.* (6th Cir. 2002) 282 F.3d 883.....................................13

*Ont. Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, D. Conn 3:17-cv-558 (SRU)................9

*ResQNet.com, Inc. v. Lansa, Inc* (Fed.Cir. 2010) 594 F.3d 860 ..................................................12

*Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004) 374 F.3d 797 ............................14, 15

*SEC v. Blockvest, LLC* (S.D.Cal. Apr. 17, 2020, No. 18cv2287-GPC (MSB)) 2020
    U.S.Dist.LEXIS 68951 ...........................................................................................................5

*SEC v. Kelly* (S.D.N.Y. 2011) 817 F.Supp.2d 340.......................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (2007) 551 U.S. 308, 321 [127 S.Ct. 2499, 2508, 168
    L.Ed.2d 179].........................................................................................................................7

*Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.* (S.D.N.Y. Sep. 30, 2019) 2019
    U.S.Dist.LEXIS 169560......................................................................................................12

*Vogel v. Tulaphorn, Inc.*, CV 13-464 PSG (PLAx), 2013 U.S. Dist. LEXIS 200563, 2013 WL
    12166212 (C.D. Cal. Nov. 15, 2013) ..................................................................................5

*Welgus v. Trinet Grp., Inc.* (N.D.Cal. Jan. 17, 2017, No. 15-cv-03625-BLF) 2017
    U.S.Dist.LEXIS 6347 ........................................................................................................6, 7

**Statutes**

15 U.S.C. § 78t-1 ...........................................................................................................................1

17 CFR 240.10b-5 .......................................................................................................................1, 9

28 U.S.C. § 1338 ..........................................................................................................................12

8 Del. C. c. 1 § 141 ........................................................................................................................5

Fed. R. Civ. P. 12 ..........................................................................................................................1

## INTRODUCTION

The defendant Kumar Shiralagi ("Defendant" or "Shiralagi") has filed a motion to dismiss ("MTD"). Instead of simply demonstrating that the claims are false, which would only entail providing a few records, the Defendant presents lengthy arguments attempting to distance Shiralagi from HFN, Inc. ("HFN") (especially during the *de facto* HFN Board meeting of July 25, 2023) and to argue why this Court should not hear the case, based on jurisdiction. The Defendant alleges that the first amended complaint ("FAC") is "mostly recycled" (MTD at 3), but the actual recycled document is the MTD since it tries to use the same arguments as the original Motion to Dismiss for HFN ("HFN MTD", Dkt. 11) against significant new allegations by plaintiff Miller ("Plaintiff" or "Miller"). Not surprisingly, these efforts are unconvincing.[1]

## ISSUES TO BE DECIDED

## I.   SHIRALAGI'S DECLARATION MUST BE EXCLUDED

In filing this MTD, the Defendant has filed a declaration ("KS Decl.") providing testimony that directly conflicts with facts that the Plaintiff has learned from numerous sources. Shiralagi is providing false testimony designed solely to support the narrative of the motion, and this testimony must therefore be stricken by the Court and not relied upon.

Further, in considering a motion to dismiss as a matter of law under Fed. R. Civ. P. 12(b)(6), the Court can only consider the facts within the FAC, which are presumed to be true. Consequently, the Defendant's statements must be disregarded at this stage.

## II.   THE DEFENDANT IS LIABLE FOR THE 20(a) EXCHANGE ACT COUNTS

### A.   The Defendant is a controlling person of the 10(b) violations

Shiralagi's involvement with HFN goes far beyond his role as a former Board member. He had knowledge of the scheme, knew its effect on the Plaintiff, and helped to implement it

### B.   The Plaintiff has pled the Defendants' specific liability

---

[1] The Defendant also seems to have literally recycled some other document with copy-and-paste. For example, MTD at 2 refers to a non-existing (in this docket) Second Amended Complaint ("SAC").

The Defendant alleges that the Plaintiff's makes a "group pleading." The Plaintiff has properly alleged Shiralagi's scheme liability under 20(a) as Kalaari's Managing Director in charge of HFN as a portfolio company and active Board member of HFN.

### C. The Plaintiff's pleading meets the heightened pleading standards of the PSLRA

The Plaintiff has met the pleading standards of the PSLRA and properly alleges Shiralagi's scheme liability under 20(a) as Kalaari's Managing Director in charge of HFN as a portfolio company and active Board member of HFN.

## III. THIS COURT HAS JURISDICTION OVER THE 10(b) AND 20(a) COUNTS

### A. The Exchange Act claims are not barred by the 2015 settlement

The terms of the 2015 settlement allow actions based on misdeeds of the Defendant **after** the settlement, and the Plaintiff pleads in detail a scheme that started after the settlement.

### B. The Exchange Act claims are not time-barred

The facts of the case indicate that the Plaintiff is reasonably diligent, and that the Defendant would have not made it possible to obtain the facts necessary to unmask the scheme in 2019, within the 2-year statute of limitations. The last known culpable act of the scheme was in 2019 at the earliest and the current action is within the 5-year statute of repose.

## IV. THIS COURT HAS JURISDICTION OVER THE FIDUCIARY DUTY CLAIMS

### A. The Fiduciary Duty claims are a federal case unaffected by Delaware law

The Fiduciary Duty claims arising from the mismanagement of the patent assets of HFN arise under patent law and are a federal matter. Patent law is not an "internal affair" of a corporation, and the claims are capable of resolution in federal court without disrupting the federal-state balance.

### B. The Fiduciary Duty claims have jurisdiction in this Court

This court has jurisdiction over at least the patent-related Fiduciary Duty claims because of the agency relationship between HFN and GoDaddy in Northern California, and over the other fiduciary duty claims through the reseller agreement between HFN and GoDaddy.

## V. THIS IS NOT A DERIVATIVE ACTION

The Plaintiff has never proposed that this is a derivative action.

## VI. ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND

The Defendant introduces numerous new technical objections specific to Shiralagi for the first time, and conflates this with the HFN MTD. The Plaintiff has had only one opportunity to plead the claims against Shiralagi.

## RELEVANT FACTS

The Plaintiff filed an original complaint with seven counts, including four counts of violations of the Exchange Act, two counts of breach of fiduciary duty, and one count for injunctive relief for books and records. The defendant filed a motion to dismiss against HFN based on lack of personal jurisdiction, failure to state a claim, lack of subject matter jurisdiction, and lack of standing. After opposition and reply, the Court granted the defendant HFN's motion, with leave to amend, on the two grounds that (1) the Plaintiff failed to allege sufficient contacts for the defendant HFN with California, and (2) the Plaintiff failed to adequately plead a securities fraud claim.

The Plaintiff served the original complaint on defendant Shiralagi at his residence in Texas. Counsel requested a stipulation for Shiralagi to answer only the amended complaint. In the interest of cooperation and efficiency of the Court, the Plaintiff agreed to the stipulation.

The Plaintiff filed an amended complaint with five counts, including two counts of violations of the Exchange Act, two counts of breach of fiduciary duty, and one count of injunctive relief for books and records. Defendant Shiralagi filed a motion to dismiss based on lack of personal jurisdiction, failure to state a claim, lack of subject matter jurisdiction, and lack of standing.

In the amended complaint and this opposition, the Plaintiff has maintained all the allegations from the initial complaint, and added or supplemented allegations in three key areas: (1) a scheme liability violation of the Exchange Act, (2) more detail on HFN's mismanagement of its patents, and (3) a significant reseller relationship between HFN and GoDaddy in the Northern District of California.

## ARGUMENT

## I.   SHIRALAGI'S DECLARATION CONTAINS FALSE STATEMENTS AND MUST

**BE EXCLUDED**

Shiralagi's declaration has at least eight false or misleading statements that fall into a few categories: (1) Shiralagi continued to effectively act as a Board member into at least August 2022, contradicting KS Decl. ¶¶ 4,11; (2) Shiralagi participated at two Board meetings in San Francisco on June 25 and 26, 2022, while he was still acting as a Board member, contradicting KS Decl. ¶¶ 4,9,11,14,15; (3) Shiralagi lived in Austin, Texas during 2021, and also in June 2022, contradicting KS Decl. ¶¶ 5,12 and (4) Shiralagi worked for Intel Capital and most likely attended meetings there from 2003 to 2007, contradicting KS Decl. ¶ 6.

### A.  The Defendant continued as a Board member of HFN into at least August 2022

Shiralagi indicates that he resigned from the HFN Board in June 2022 (KS Decl. ¶ 4). There was never any communication to the management team about this in June, or later. The only communication to any shareholder was the July 11, 2022 email to the Plaintiff mentioned in his declaration (KS Decl. ¶ 16), which did not indicate that "[he] was no longer a member of the HFN Board," but instead said "neither [he] nor anyone from Kalaari is … on the Board of the company."

Shiralagi continued to have an active involvement with the management team well into August, both in Board meetings and other important operational meetings. He attended a multi-hour meeting call with HFN management in July, 2022, discussing the state of the company and management actions required to address important company issues. Throughout July and August, he communicated with the management team and with Rahul Singh ("Singh"), who was facilitating the process. This included two in-person meetings in San Francisco with Santhanam and Singh, a multi-hour dinner meeting on July 25, 2022, and a breakfast/coffee meeting on July 26. Both meetings included detailed discussions about HFN's strategy, corporate management activities, personnel decisions, and shareholder issues (Dkt. 17 ¶ 14). These meetings were not a "coffee meeting which lasted about an hour" where the participants "did not take any actions on behalf of HFN" (KS Decl. ¶ 11). Shiralagi continued to send messages to HFN management in August 2022, following up on the activities and decisions of the July 25-26 meetings.

### B.  The Defendant attended at least two *de facto* Board meetings, as a Board member,

**in the Northern District of California**

The July 25-26, 2022 meetings in San Francisco were Board meetings. 8 Del. C. c. 1 § 141 has no notice requirement for a Board meeting and only requires a quorum of Board members and a simple majority vote for any actions. These two meetings were attended by a quorum of Board members (Santhanam and Shiralagi) and Singh, with discussion topics including actions on shareholder issues, operational issues, and personnel issues.

### C.  The Defendant moved to Texas while still on the Board of HFN

Shiralagi indicates that he "decided to live in Texas … [b]eginning in August 2022 … [a]fter retiring [from the HFN Board]" (KS Decl. ¶ 12). Shiralagi bought his Texas house in June 2022 and arrived there June 28. He immediately scheduled a multi-hour call a few days later in July with HFN management to discuss HFN's strategy, corporate management activities, personnel decisions, and shareholder issues.

Shiralagi also lived in Austin, Texas for an extended period of time in the summer of 2021, while he was still on the Board of Directors at HFN (KS Decl. ¶ 4).

### D.  The Defendant has most likely worked in the Northern District of California

Shiralagi indicates that "[he has] never … worked in California" (KS Decl. ¶ 6). Shiralagi was a director at Intel Capital from 2003 to 2007 and likely attended company meetings at the main office of Intel Capital at 2200 Mission College Boulevard in Santa Clara, California.

### E.  These false statements are significant and the entire declaration shows bad faith

These multiple false statements are not simply typographical errors or minor errors in the memory of events. The MTD relies heavily on Shiralagi's declaration, referring to it four separate times.[2] "When a party falsifies evidence of central importance to a case, this shows bad faith, willfulness, or fault[.]" *SEC v. Blockvest, LLC* (S.D.Cal. Apr. 17, 2020, No. 18cv2287-GPC (MSB)) 2020 U.S.Dist.LEXIS 68951, at *37 (citing *Vogel v. Tulaphorn, Inc.*, CV 13-464 PSG (PLAx), 2013 U.S. Dist. LEXIS 200563, 2013 WL 12166212, at *4 (C.D. Cal. Nov. 15, 2013),

---

[2] As well as referring to Santhanam's previously discredited declarations twice.

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.* (9th Cir. 1995) 69 F.3d at 352). Shiralagi has demonstrated that his declarations are multiple false stories crafted for the express purpose of supporting the narrative.[3]

The Defendant's counsel is not completely innocent in this. "[C]ounsel is not appointed to act as a mere scrivener to restate and reassert each and every allegation, claim, and argument that a petitioner desires to pursue." *McNeal v. Williams* (D.Nev. Aug. 5, 2022, No. 2:16-cv-01618-JAD-EJY) 2022 U.S.Dist.LEXIS 139508, at *4. In drafting the declaration, counsel has an obligation to verify that the testimony is consistent with evidence such as emails and text messages.

## II.  THE DEFENDANT IS LIABLE FOR THE EXCHANGE ACT COUNTS UNDER SECTION 20(a)

### A.  The Defendant is a controlling person of the 10(b) violations

"Section 20(a) of the Exchange Act extends liability for 10(b) violations to those who are 'controlling persons' of the alleged violations." *Welgus v. Trinet Grp., Inc.* (N.D.Cal. Jan. 17, 2017, No. 15-cv-03625-BLF) 2017 U.S.Dist.LEXIS 6347, at *38, citing *Hollinger v. Titan Capital Corp.* (9th Cir. 1990) 914 F.2d 1564, at 1572. The Defendant alleges that Shiralagi's "status" as a former HFN Director is "insufficient to establish control personal liability" under Section 20(a) (MTD at 13). Shiralagi's involvement with HFN goes far beyond his role as a former Board member. He oversaw the initial $4 million funding of HFN by Kalaari and was an active and involved Board member from that time through at least August 2022. He was aware of the settlement discussions and even discussed the settlement with the Plaintiff in a lengthy phone call in 2015. Shiralagi had a vested interest in all share transactions of HFN, both as a Managing Director at Kalaari, where he held the responsibility of HFN as a portfolio company, and as an active outside Board member of HFN, where he had significant influence over the operations of the company. He had knowledge of the scheme, knew its effect on the Plaintiff, and helped to

---

[3] See also *Gergawy v. United States Bakery, Inc.* (E.D.Wash. Feb. 8, 2022, No. 2:19-CV-00417-SAB) 2022 U.S.Dist.LEXIS 22721, at *21, where inconsistent testimony in two declarations, such as that in Santhanam's declarations, resulted in a successful motion to strike the testimony.

implement it on an ongoing basis. "A plaintiff is not required to show the defendant's 'actual participation or the exercise of actual power.' However, the plaintiff must allege specific facts concerning a defendant's responsibilities within the company that demonstrate his involvement in the day-to-day affairs of the company …" (*Id.* , at \*39). The Plaintiff pleads in detail Shiralagi's active involvement with Kalaari and HFN, as Managing Director and Board member (FAC ¶ 50).

### B. The Plaintiff has pled the Defendants' specific liability

The Defendant characterizes the FAC as a "group pleading," heavily based on *Brady v. Delta Energy & Communs. Inc.* (C.D.Cal. 2022) 598 F. Supp. 3d 865. In *Brady*, "Brady merely avers statements made by 'Defendants.' That broad allegation constitutes impermissible group pleading." *Id.* at 871. Here, the Plaintiff specifically names Shiralagi in the Exchange Act claim (FAC ¶ 124) and details his active involvement in HFN (FAC ¶ 50).

### C. The Plaintiff's pleading meets the heightened standards of the PSLRA

The Defendant alleges that the Plaintiff has not met the pleading standards of the PSLRA. The pleading standards of the PSLRA are met by the FAC ¶ 34, and FAC ¶ 124 properly alleges Shiralagi's scheme liability under 20(a) as Kalaari's Managing Director in charge of HFN as a portfolio company. "Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u-4(b)(1); and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind[.]'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (2007) 551 U.S. 308, 321 [127 S.Ct. 2499, 2508, 168 L.Ed.2d 179, 192]. FAC ¶ 25 and Ex. 3 satisfy the first prong of the test, and FAC ¶¶ 27-28,31-33,50 satisfy the second prong.

## III. THE EXCHANGE ACT COUNTS ARE VALID CLAIMS

### A. The settlement agreement does not bar the claims

The Defendant alleges that the 2015 Settlement and Stock Purchase Agreement ("Agreement") bar the Exchange Act claims (MTD at 7-10). The only relevant sections of the Agreement are that the release is "**as of the date of [the] Settlement Agreement**" (Dkt. 33, Ex. 1

§§ 3.1 and 3.2), and that it "waives … cause of action … based upon any **Seller Excluded Information**" (Dkt. 33, Ex. 1 to Settlement Agreement, § 3.6).

**As of the date of the settlement**, the fraud **scheme** had not commenced, based on the information provided by HFN. The grant to Krishnan was a non-qualified stock option that was separate from the ESOP (FAC ¶ 26). The ESOP was in place with 2,616,500 shares (FAC ¶ 25). The fraud **scheme** did not commence until sometime after the settlement (FAC ¶ 31).

Similarly, the Exchange Act claims are not based on any **Seller Excluded Information** that existed at the time of the settlement. They are based on the fraud **scheme** that was discovered through the capitalization tables of HFN from 2019 and 2021 (FAC ¶¶ 30-33).

## B. *Facebook, Inc. v. Pac. Northwest Software, Inc.* is not a relevant precedent

In arguing that the settlement agreement bars the Exchange Act claims, the Defendant relies heavily on *Facebook, Inc. v. Pac. Northwest Software, Inc.* (9th Cir. 2011) 640 F.3d 1034 (MTD at 9-10). The fact pattern of *Facebook* is significantly different from the litigation that resulted in the Agreement, with reliance on "adversaries [that were] in a roughly equivalent bargaining position" (*Id.* at 1039), "discovery to ferret out a great deal of information" (*Id.* at 1039), "some material aspects of the deal … papered later" (*Id.* at 1038), and "believing … shares were worth four times as much" (*Id.* at 1038). In *Miller et al. v. Donnini et al.*, D Mass 1:14-cv-12337-NMG, the defendant was a well-funded company and the plaintiffs were self-funded, not roughly equivalent, the plaintiffs were not able to advance to discovery, no material aspects of the deal were left until later, and the current issue is the objective treatment of an option pool, not a subjective stock price. *Facebook* does not apply here.

## C. The Exchange Act claims are within the 5-year statute of repose

The Defendant fills over two pages trying to argue that the Plaintiff is barred by the 5-year statute of repose (MTD at 10-12), citing 14 cases. The situation is much simpler than that. The Defendant is erroneously conflating the **conception** of a scheme with its **implementation**. HFN **conceived** the scheme to misuse the ESOP, but did not **implement** the scheme until after the settlement. The Plaintiff properly relied on the representation that the option pool was an ESOP,

which did became a misrepresentation when HFN started to misuse the ESOP. This was not a repeated misrepresentation or omission, but a scheme of repeated deceptive action every time HFN improperly used the ESOP.

Existing case law indicates no time bar. A relevant precedent for this case is *In re Teva Sec. Litig.* (D.Conn. 2021) 512 F. Supp. 3d 321. The plaintiffs alleged scheme liability under Rule 10b-5(a) and (c), and the Court indicated during oral argument that the last act in a scheme would "start the clock" for the statute of Repose without being considered equitable tolling. "Equitable tolling is a little different, in my mind, than continuing course of conduct. A continuing course of conduct, **if the last act is within** … **the statute of limitations**, **allows the entire scheme to be considered as timely**. Equitable tolling I think is a little bit different, where, for whatever equitable reason, you don't start the clock quite as quickly as you might have." *Ont. Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, D. Conn 3:17-cv-558 (SRU), Dkt. 647 at 10 (emphasis added). The Court agreed that the legislative history of the statute of repose was not to effectively immunize multi-year fraudulent schemes and reward defendants for continuing the schemes longer than five years by imposing a five-year cap on liability for securities fraud. Ultimately, the Court ruled that the plaintiffs did not sufficiently allege scheme liability, since the allegations emphasized a series of misstatements and omissions, and never mentioned the scheme liability before the oral argument. *See Id.* at 336-337. Here, the Plaintiff has alleged scheme liability with particularity (FAC ¶¶ 31-34). The Defendant's ongoing and systematic use of the option pool to defraud the Plaintiff in light of that misrepresentation is a "scheme" under 10b-5(a) and 10b-5(c). A scheme must involve "performance of an inherently deceptive act that is distinct from an alleged misstatement." *SEC v. Kelly* (S.D.N.Y. 2011) 817 F.Supp.2d 340, 344.[4]

"To state a claim for scheme liability, a plaintiff must present facts showing '(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance.'" *In re Mindbody, Inc. Sec. Litig.* (S.D.N.Y. 2020) 489

---

[4] See also *In re Garrett Motion Sec. Litig.* (S.D.N.Y. Mar. 31, 2022) 2022 U.S.Dist.LEXIS 60843, at *50-51, where "a scheme liability hinges on the performance of an inherently deceptive act."

F. Supp. 3d 188, 216. The Defendant committed a deceptive act by using shares from a purported ESOP option pool to directly enrich Santhanam's account. This act was in furtherance of the scheme to use the ESOP pool for self-dealing and grants to insiders. Scienter was demonstrated by the continued misrepresentation throughout the settlement negotiation and afterward, and reliance by the Plaintiff was demonstrated by the eventual agreement to compromise on the treatment of the ESOP options.

The known "last culpable act" of the scheme is Santhanam's transfer of 307,154 shares from the ESOP option pool to his personal account sometime between 2019 and 2021, which is well within the 5-year statute of repose.[5] Courts, including the Supreme Court, have been consistent in using the "**last** culpable act" as the start of the repose.[6]

### D. The Exchange Act claims are within the 2-year statute of limitations

The Defendant alleges that the Plaintiff should have been "a reasonably diligent plaintiff [who] would have discovered 'the facts constituting the violation'" in 2019 by examining the capitalization table of HFN (MTD at 12). The Defendant has demonstrated that in addition to not having the required 2019 annual shareholder meeting and providing the information, any such request would have met with a series of stalling tactics while providing no information, culminating with a complete lack of communication (FAC, ¶¶ 39-48, Ex. 15-26). Any "reasonably diligent plaintiff" would have only discovered the violation in 2022, when the Plaintiff did.

### E. The Defendant misrepresents the nature of the settlement compromise

The Defendant characterizes the compromise that enabled the settlement as one "to account for any uncertainty regarding HFN's use of its stock option pool" (MTD at 10), implying that the plaintiffs were giving HFN *carte blanche* to do whatever they liked with the options. The

---

[5] See also *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC* (M.D.Tenn. 2022) 615 F. Supp. 3d 750, 762, where several Courts agreed that "the repose period 'runs from the date of the fraud rather than the date of the injury.'"
[6] See *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.* (2017) 582 U.S. 497, 498 [137 S.Ct. 2042, 2045, 198 L.Ed.2d 584, 587], *China Agritech, Inc. v. Resh* (2018) ___U.S.___, fn. 1 [138 S.Ct. 1800, 1804, 201 L.Ed.2d 123, 128].

compromise was made based on the representation that the large option pool was specifically an ESOP, a key component to attract talent to a high-tech company (FAC ¶ 27). HFN made a specific representation that the option pool was an ESOP (FAC ¶ 25 and Ex. 3). Although the statements of HFN's counsel eased the process of the negotiation (FAC ¶ 27 and Ex. 4), it was the plaintiffs who made the final compromise based on the representations made by HFN in its documentary disclosures. The Plaintiff is providing FAC Ex. 4 to the Court to illuminate and corroborate the decision-making process of the plaintiffs and help the Court feel more comfortable that the Plaintiff is not simply making up a story to match the narrative, as Shiralagi has done with his Declaration.

## IV. THE PATENT IRREGULARITIES GIVE THIS COURT JURISDICTION OVER THE FIDUCIARY DUTY COUNTS

### A. The Defendant's breach arises under Federal patent law

The Defendant is specifically liable for the breach relevant to HFN's patents through his position as an outside Board member (possibly the sole outside Board member) of HFN (FAC ¶¶ 50-51,85-86).

The patent claims depend on the resolution of a substantial question of federal patent law and constitute a federal case. "[I]n order to demonstrate that a case is one 'arising under' federal patent law 'the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws." *Christianson v. Colt Indus. Operating Corp.* (1988) 486 U.S. 800, 807-808 [108 S.Ct. 2166, 2173, 100 L.Ed.2d 811, 824]. The Plaintiff pleads with specificity that the breach of fiduciary duty arises the *interpretation of the claims* of the patents in question (FAC ¶¶ 19,74-83).[7]

---

[7] Under the pre-*Christianson* test of *Gunn*, the Supreme Court would also find this case to have federal jurisdiction. The first, second, and fourth prongs of the *Gunn* test are satisfied in this case for much the same reasoning as applied in *Gunn*. In the third prong, this case diverges from *Gunn* and is clearly also satisfied since Gunn posed a hypothetical question but this case relies on the real question of whether the patent claims support the business case underlying the security interest.

The value of a patent is tied to the damages that could reasonably be expected in an infringement action. "[T]he patentee … must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *LaserDynamics, Inc. v. Quanta Computer, Inc.* (Fed.Cir. 2012) 694 F.3d 51, 67. This determination must be made by evaluating the claimed invention relative to the products in the market where the assertion would be made. "[T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc* (Fed.Cir. 2010) 594 F.3d 860, 869. The FAC details this valuation (FAC ¶¶ 76-77), HFN's assignment of a security interest to companies where the valuation would be *de minimis* (FAC ¶¶ 78-81), and the result that the assignment prevented the proper realization of the value by HFN (FAC ¶¶ 82-83).

The determination of the value of HFN's patents for a security interest (which would be a required assessment by Morgan Stanley and the lenders) therefore depends on claim construction and relevance to the field of use, all of which is specific to Federal patent statutes, so this is a civil action that is "arising under" patent law under 28 U.S.C. § 1338(a). FAC ¶¶ 79-82.

## B.  This Court's jurisdiction is well established

The jurisdiction of patent cases is established by *In re TC Heartland LLC* (Fed.Cir. 2016) 821 F.3d 1338, as further clarified by the Federal Circuit in *In re Cray Inc.* (Fed.Cir. 2017) 871 F.3d 1355, *In re Google LLC* (Fed.Cir. 2020) 949 F.3d 1338, and *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.* (Fed.Cir. 2021) 6 F.4th 1283.[8] Jurisdiction is proper when "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray* at 1360. To satisfy the second and third prongs, "a

---

*Gunn v. Minton* (2013) 568 U.S. 251, 258 [133 S.Ct. 1059, 1065, 185 L.Ed.2d 72, 80]. See also *Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.* (S.D.N.Y. Sep. 30, 2019) 2019 U.S.Dist.LEXIS 169560, at *13-14, where claims including breach of contract and fraud raised questions of patent claim construction.

[8] Note that these are all patent infringement cases, but the jurisdictional considerations are the same for any patent case arising under 28 U.S.C. § 1338(a).

'regular and established place of business' requires the regular, physical presence of an employee **or other agent of the defendant** conducting the defendant's business at the alleged 'place of business.'" *In re Google* at 1345, emphasis added. Finally, "[t]he essential elements of agency are (1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'" *In re Google* at 1345.

HFN satisfies each of these requirements at least through its relationship with GoDaddy. The "physical place in the district" which is a "regular and established place of business" is the Sunnyvale office of GoDaddy (FAC ¶ 13), which is "the place of the defendant" through GoDaddy's agency relationship with HFN (FAC ¶ 14). The agency relationship is demonstrated by HFN's "right to direct or control" the royalty rate and features of the software and services sold by GoDaddy, the "consent" of GoDaddy to "act on the behalf" of HFN by reselling the HFN software and services, and the "consent" by GoDaddy to act by entering into the reseller agreement (FAC Ex. 1).

## V.  THE GODADDY RELATIONSHIP GIVES THIS COURT JURISDICTION

The Plaintiff's demonstration of the reseller relationship of GoDaddy with HFN satisfies the burden of establishing sufficient contacts between the Defendant and the Northern District of California, and making a prima facie showing of jurisdiction for the Fiduciary Duty counts (*Neogen Corp. v. Neo Gen Screening, Inc.* (6th Cir. 2002) 282 F.3d 883, 886).

### A.  The GoDaddy relationship is a model of breach of fiduciary duty

Relying on the faulty declaration from Shiralagi, the Defendant alleges that "[the] fiduciary duty claims … do not arise out of [Shiralagi's] minimal contacts [with California]" (MTD at 6). The relationship between HFN and GoDaddy demonstrates every aspect of this breach other than the patent-related aspect.

GoDaddy executed a reseller agreement with HFN in early 2020, to resell HFN software and services, providing a substantial $1.25 million advance payment against future royalties. (FAC ¶¶ 13-14) The Plaintiff believes that this advance payment represents a significant contribution to

HFN's revenues in FY 2020/2021. Rather than significantly increasing HFN's software and service offerings in GoDaddy's market, HFN was unable to deliver on its promises.

This pattern of events was repeated for at least TCS, Infosys, HCL Infosystems, Accenture, and Compucom. The damage to the GoDaddy relationship: a dysfunctional Board with an unchecked Chairman (FAC ¶¶ 50-54) gives bad product and services decisions; no HR and inappropriate relationships (FAC ¶¶ 55-58) distracts employees and diverts resources from customers; no financial controls and spending and contractual power with one individual (FAC ¶¶ 59-65) diverts resources away from good relationships into dead end pursuits like the Seed Group; CEO focus on outside businesses using HFN resources (FAC ¶¶ 66-73) drains those from HFN with product stagnation and little support; little product development (FAC ¶¶ 88-101) causes dissatisfaction and a loss of faith; ignoring the web site (FAC ¶¶ 102-105) causes loss of credibility. HFN's high customer and employee attrition rate ensues.

The CEO had some accountability to the Defendant as an HFN Director and a Managing Director at Kalaari, who held enough power to force some change. In his active role in both places (FAC ¶ 50), he had to either contribute to the solution, or contribute to the problem, and he chose the latter. The GoDaddy relationship is exemplary of this choice.

**B. The Defendant provides no objections to the Court's jurisdiction over Shiralagi**

The Defendant cites a list of "facts" in support of Shiralagi's limited contacts with California (MTD at 2-3), but all are based on Shiralagi's declaration, which has been shown to contain false statements made in bad faith, so this argument lacks any foundation.

The Defendant also alleges (MTD at 5-6) that Shiralagi's only contact to California is through the Plaintiff, pointing to *Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004) 374 F.3d 797. Shiralagi has significant interest and control in the business contacts and activities of HFN. *Schwarzenegger* provides a three-prong test for personal jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; … (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and

substantial justice, i.e. it must be reasonable." *Id.* at 802. The first prong of the test is satisfied by the GoDaddy agreement that was negotiated, executed, and serviced at in-person meetings in Northern California (FAC ¶¶ 13-15). The second prong is satisfied as described in detail in the last section of this memorandum. The third prong is satisfied by the fact that through its agent GoDaddy, HFN is serving and billing customers (FAC ¶ 16), collecting revenue (FAC ¶ 14), holding regular business meetings (FAC ¶¶ 13,15), and marketing products and services (FAC ¶ 16), all in Northern California. HFN is essentially at home in Northern California.

## VI. THIS IS NOT A DERIVATIVE ACTION

The Defendant continues to argue that the claims in this action cannot be pursued as a derivative action (MTD at 13-14). The Plaintiff is well aware that a *pro se* plaintiff cannot represent the interests of anyone other than himself. Since HFN is largely owned by the Defendants, it would make no sense for Plaintiff to try to recover on behalf of the corporation, since **it would benefit the Defendants**. Instead, the injury applies directly to the Plaintiff.

## VII.   ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND

Should the Court decide to dismiss the FAC, the Plaintiff requests leave to amend. The Defendant alleges "[the] Plaintiff has now had two opportunities to plead his claims" (MTD at 15). In the spirit of cooperation, the Plaintiff stipulated to the Defendant's request to forego a response to the original complaint (Dkt. 31), and now the Defendant is using this action against the Plaintiff by introducing numerous new technical objections specific to Shiralagi for the first time.

## CONCLUSION

In this amended complaint, the Plaintiff has corrected the deficiencies noted by the Court in the original complaint. The Defendant has failed to make any compelling argument against this Court's jurisdiction over the current action, so the Court should dismiss the Defendant's motion to dismiss with prejudice and allow the action to proceed.

Date: _____July 5, 2023_____        Signature: _____/S/ Allan A. Miller_____

                                           Printed name: _____Allan A. Miller_____