# REQUEST FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

DEMANDE AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ÉTRANGER
D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965.**

Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965.

| Identity and address of the applicant<br>Identité et adresse du requérant | Address of receiving authority<br>Adresse de l'autorité destinataire |
|---|---|
| Mark B. Busby, Court Official<br>US District Court for the Northern District of California<br>450 Golden Gate Avenue<br>San Francisco, California 94102, USA<br>E: media@cand.uscourts.gov<br>Tel.: +1.415-522-2000 | Central Authority<br>The Ministry of Law and Justice<br>Department of Legal Affairs<br>Room No. 439-A, 4th Floor A-Wing, Shastri Bhavan<br>New Delhi, 110 001 India |

08 other cuntry
01-7-23

**The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.:**

Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire – à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir :

**(identity and address) /** (identité et adresse)

> PAVAN VAISH
> M-1617B, The Magnolias
> DLF Golf Links, DLF Phase 5
> Gurgaon, Haryana 122002
> India

| | | |
|---|---|---|
| ☒ | a) | **in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention\***<br>selon les formes légales (article 5, alinéa premier, lettre a))\* |
| ☐ | b) | **in accordance with the following particular method (sub-paragraph b) of the first paragraph of Article 5)\*:**<br>selon la forme particulière suivante (article 5, alinéa premier, lettre b)\* |
| ☐ | c) | **by delivery to the addressee, if he accepts it voluntarily (second paragraph of Article 5)\***<br>le cas échéant, par remise simple (article 5, alinéa 2)\* |

**The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes\* - with the attached certificate.**

Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes\* - avec l'attestation ci-jointe.

*List of documents / Énumération des pièces*

Hague Service Convention Warning; Summary of the Document to Be Served; Summons; Complaint with Exhibits 1-42; Order setting initial case management conference and ADR deadlines; Standing orders for Judge Kandis A. Westmore; Instructions for preparing a Case Management Statement; Notice of assignment of case to a Magistrate; ECF registration information; Filing instructions

\* if appropriate / s'il y a lieu

| Done at / Fait à<br>San Francisco, California<br>USA<br><br>The / le   8, MAY, 2023 | Signature and/or stamp<br>Signature et / ou cachet<br>MARK B. BUSBY  By<br><br>WILLIAM NOBLE |
|---|---|

N.D. Cal. 3:23-cv-00533



विधि एवं न्याय मंत्रालय
प्राप्ति तथा प्रेषक अनुभाग
2 6 MAY 2023
अनु. डा. सं. 513913

Generated by:  **HAGUE ENVOY**

## WARNING
### AVERTISSEMENT

**Identity and address of the addressee /** Identité et adresse du destinataire

PAVAN VAISH
M-1617B, The Magnolias
DLF Golf Links, DLF Phase 5
Gurgaon, Haryana 122002
India

### IMPORTANT

**THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.**

**IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.**

**ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:**

### TRÈS IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES « ÉLÉMENTS ESSENTIELS DE L'ACTE » VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT. IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE, SOIT DANS VOTRE PAYS, SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES À :

Justice and Diversity Center (JDC) Legal Help Center
450 Golden Gate Avenue, 15th Floor, Room 2796
San Francisco, California 94102, USA
Tel.: +1.415-782-8982

**It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or in one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the document is to be sent, or in English or French.**

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'État d'origine de l'acte. Les blancs pourraient être remplis, soit dans la langue de l'État où le document doit être adressé, soit en langue française, soit en langue anglaise.

Generated by:  **HAGUE ENVOY**

## SUMMARY OF THE DOCUMENT TO BE SERVED
### ÉLÉMENTS ESSENTIELS DE L'ACTE

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965 (Article 5, fourth paragraph).**
Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965 (article 5, alinéa 4).

| | |
|---|---|
| **Name and address of the requesting authority:**<br>Nom et adresse de l'autorité requérante : | Mark B. Busby, Court Official<br>US District Court for the Northern District of California<br>450 Golden Gate Avenue<br>San Francisco, California 94102, USA<br>E: media@cand.uscourts.gov<br>Tel.: +1.415-522-2000 |
| **Particulars of the parties\*:**<br>Identité des parties\* : | Plaintiff: ALLAN MILLER<br>Defendants: HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC., KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company, SRIDHAR SANTHANAM, KUMAR SHIRALAGI, PAVAN VAISH, VANI KOLA |

\* If appropriate, identity and address of the person interested in the transmission of the document
S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte

☒ **JUDICIAL DOCUMENT\*\***
ACTE JUDICIAIRE\*\*

| | |
|---|---|
| **Nature and purpose of the document:**<br>Nature et objet de l'acte : | To inform the defendant of a claim against him and to demand his appearance at court. |
| **Nature and purpose of the proceedings and, when appropriate, the amount in dispute:**<br>Nature et objet de l'instance, le cas échéant, le montant du litige : | The plaintiff accuses the defendant of Fraudulent share transactions and Breach of fiduciary duty, and demands a jury trial seeking damages. |
| **Date and Place for entering appearance\*\*:**<br>Date et lieu de la comparution\*\* : | Within 21 days after service, the addressee must appear and file an answer in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102. |
| **Court which has given judgment\*\*:**<br>Juridiction qui a rendu la décision\*\* : | No court has issued a judgment. |
| **Date of judgment\*\*:**<br>Date de la décision\*\* : | No court has issued a judgment. |
| **Time limits stated in the document\*\*:**<br>Indication des délais figurant dans l'acte\*\* : | 21 days |

\*\* if appropriate / s'il y a lieu

Generated by:   **HAGUE ENVOY**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| ALLAN MILLER | ) |
|  | ) |
|  | ) |
|  | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.  4:23-cv-00533-KAW |
| HFN, INC. d/b/a NANOHEAL BY HFN, KALAARI | ) |
| CAPITAL ADVISORS PRIVATE LIMITED, SRIDHAR | ) |
| SANTHANAM, KUMAR SHIRALAGI, PAVAN VAISH, | ) |
| and VANI KOLA | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Pavan Vaish
M-1617B, The Magnolias
DLF Golf Links, DLF Phase 5
Gurgaon, Haryana  122002
India

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Allan Miller
3385 Claudia Dr
Concord, CA  94519

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

MARK B. BUSBY

Date: ___02/13/2023___

*Signature of Clerk or Deputy Clerk*

1  Allan Miller

2  3385 Claudia Drive

3  Concord, CA  94519

4  650-468-7387

5  (no fax number)

6  allan.miller@alumni.stanford.edu

7  Pro Se Plaintiff

**ORIGINAL FILED**

FEB =6 2023

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

8  **UNITED STATES DISTRICT COURT**

9  **NORTHERN DISTRICT OF CALIFORNIA**

10  **SAN FRANCISCO DIVISION**

11

**CV 23 - 0533 KAW**

12  ALLAN MILLER                                        Case Number:

13          Plaintiff,                                            )

14      vs.                                                      )  **COMPLAINT**

15  HFN, INC., a Delaware Corporation, d/b/a as )  **DEMAND FOR JURY TRIAL**

16  NANOHEAL BY HFN INC.,                          )

17  KALAARI CAPITAL ADVISORS               )

18  PRIVATE LIMITED, an Indian Company,    )

19  SRIDHAR SANTHANAM,                          )

20  KUMAR SHIRALAGI, PAVAN VAISH,      )

21  and VANI KOLA                                         )

22          Defendants.                                         )

23  ─────────────────────────────

24      "Plus ça change, plus c'est la même chose." *Jean-Baptiste Alphonse Karr, 1849.*

25      "We live and do not learn – or so the cynics say." *Beryl Markham, 1938.*

26      "Oops! … I did it again." *Britney Spears, 2000.*

27

28

Complaint                                          Case No.

Page No. 1  of  30

1.      This is an action brought pro se by Plaintiff Allan Miller, who is a minority shareholder of HFN, Inc. ("HFN"), against Defendants who have intentionally forsaken their fiduciary duty to him and the other minority shareholders of HFN. The Defendants, having already been forced to settle a fraud action brought by minority shareholders nine years ago, felt that they were now above the law and proceeded to use HFN resources for their own personal benefit. Coming out of the COVID era, the Plaintiff had not heard from HFN since the lawsuit, and simply requested a shareholder meeting and some updated information about the company. Instead, the Defendants, sensing that the party of unaccountability might be over, simply stonewalled and hoped that Miller would just go away. However, since the Plaintiff Miller is one of the original founders of the company, multiple anonymous informants within the company, who were all worried about what was going on, contacted Miller, and in a situation eerily similar to the 2014 litigation, provided the basis for this Complaint.

2.      This is not a derivative suit. Plaintiff Miller is not seeking to recover on behalf of the corporation for injury done to the corporation by Defendants. Instead, the injury applies directly to the Plaintiff through his unlawful loss of access, value, and appreciation of HFN's resources, benefit that was unlawfully enjoyed by the Defendants. "A stockholder's derivative suit is brought to enforce a cause of action which the corporation itself possesses against some third party, a suit to recompense the corporation for injuries which it has suffered as a result of the acts of third parties . . . [t]he stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual." (Fed. R. Civ. Proc., Advisory Committee Notes (1966) H.R. Doc. No. 391, 89th Cong., 2d Sess. 40.) The filing of this action does not preclude a future derivative action.

## PARTIES

3.      Plaintiff, Allan Miller ("Miller"), is a US citizen and individual residing in Concord, California. At all relevant times, Miller was a minority shareholder of Defendant HFN, Inc. and a founder of HandsFree Networks, the predecessor of HFN, Inc.

4.      Defendant, HFN, Inc. ("HFN"), is a Delaware corporation with a principal place of business located in Orem, Utah.

## REQUEST FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ÉTRANGER D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965.**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965.*

| **Identity and address of the applicant**<br>*Identité et adresse du requérant* | **Address of receiving authority**<br>*Adresse de l'autorité destinataire* |
|---|---|
| Mark B. Busby, Court Official<br>US District Court for the Northern District of California<br>450 Golden Gate Avenue<br>San Francisco, California 94102, USA<br>E: media@cand.uscourts.gov<br>Tel.: +1.415-522-2000 | Central Authority<br>The Ministry of Law and Justice<br>Department of Legal Affairs<br>Room No. 439-A, 4th Floor A-Wing, Shastri Bhavan<br>New Delhi, 110 001 India |

**The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.:**

*Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire – à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir :*

| **(identity and address) /** *(identité et adresse)* |
|---|
| PAVAN VAISH<br>M-1617B, The Magnolias<br>DLF Golf Links, DLF Phase 5<br>Gurgaon, Haryana 122002<br>India |

| | | |
|---|---|---|
| ☒ | a) | **in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention\***<br>*selon les formes légales (article 5, alinéa premier, lettre a))\** |
| ☐ | b) | **in accordance with the following particular method (sub-paragraph b) of the first paragraph of Article 5)\*:**<br>*selon la forme particulière suivante (article 5, alinéa premier, lettre b)\** |
| ☐ | c) | **by delivery to the addressee, if he accepts it voluntarily (second paragraph of Article 5)\***<br>*le cas échéant, par remise simple (article 5, alinéa 2)\** |

**The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes\* - with the attached certificate.**

*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes\* - avec l'attestation ci-jointe.*

*List of documents / Énumération des pièces*

| |
|---|
| Hague Service Convention Warning; Summary of the Document to Be Served; Summons; Complaint with Exhibits 1-42; Order setting initial case management conference and ADR deadlines; Standing orders for Judge Kandis A. Westmore; Instructions for preparing a Case Management Statement; Notice of assignment of case to a Magistrate; ECF registration information; Filing instructions |

\* if appropriate / s'il y a lieu

| **Done at /** *Fait à*<br>San Francisco, California<br>USA<br>**The /** *le*  8, MAY, 2023 | **Signature and/or stamp**<br>*Signature et / ou cachet*<br>MARK B. BUSBY By<br>WILLIAM NOBLE |
|---|---|

Generated by:  **HAGUE ENVOY**

## WARNING
### AVERTISSEMENT

---

**Identity and address of the addressee** / Identité et adresse du destinataire

PAVAN VAISH
M-1617B, The Magnolias
DLF Golf Links, DLF Phase 5
Gurgaon, Haryana 122002
India

---

### IMPORTANT

**THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.**

**IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.**

**ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:**

### TRÈS IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES « ÉLÉMENTS ESSENTIELS DE L'ACTE » VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT. IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE, SOIT DANS VOTRE PAYS, SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES À :

---

Justice and Diversity Center (JDC) Legal Help Center
450 Golden Gate Avenue, 15th Floor, Room 2796
San Francisco, California 94102, USA
Tel.: +1.415-782-8982

---

**It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or in one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the document is to be sent, or in English or French.**

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'État d'origine de l'acte. Les blancs pourraient être remplis, soit dans la langue de l'État où le document doit être adressé, soit en langue française, soit en langue anglaise.

## SUMMARY OF THE DOCUMENT TO BE SERVED
### ÉLÉMENTS ESSENTIELS DE L'ACTE

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965 (Article 5, fourth paragraph).**
Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965 (article 5, alinéa 4).

| | |
|---|---|
| **Name and address of the requesting authority:** Nom et adresse de l'autorité requérante : | Mark B. Busby, Court Official US District Court for the Northern District of California 450 Golden Gate Avenue San Francisco, California 94102, USA E: media@cand.uscourts.gov Tel.: +1.415-522-2000 |
| **Particulars of the parties\*:** Identité des parties\* : | Plaintiff: ALLAN MILLER Defendants: HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC., KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company, SRIDHAR SANTHANAM, KUMAR SHIRALAGI, PAVAN VAISH, VANI KOLA |

\* If appropnate, identity and address of the person interested in the transmission of the document
S'il y a lieu, identité et adresse de la personne intéressée dans la transmission de l'acte

☒ **JUDICIAL DOCUMENT\*\***
ACTE JUDICIAIRE\*\*

| | |
|---|---|
| **Nature and purpose of the document:** Nature et objet de l'acte : | To inform the defendant of a claim against him and to demand his appearance at court. |
| **Nature and purpose of the proceedings and, when appropriate, the amount in dispute:** Nature et objet de l'instance, le cas échéant, le montant du litige : | The plaintiff accuses the defendant of Fraudulent share transactions and Breach of fiduciary duty, and demands a jury trial seeking damages. |
| **Date and Place for entering appearance\*\*:** Date et lieu de la comparution\*\* : | Within 21 days after service, the addressee must appear and file an answer in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102. |
| **Court which has given judgment\*\*:** Juridiction qui a rendu la décision\*\* : | No court has issued a judgment. |
| **Date of judgment\*\*:** Date de la décision\*\* : | No court has issued a judgment. |
| **Time limits stated in the document\*\*:** Indication des délais figurant dans l'acte\*\* : | 21 days |

\*\* if appropriate / s'il y a lieu

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| ALLAN MILLER <br><br> _Plaintiff(s)_ <br> v. <br><br> HFN, INC. d/b/a NANOHEAL BY HFN, KALAARI CAPITAL ADVISORS PRIVATE LIMITED, SRIDHAR SANTHANAM, KUMAR SHIRALAGI, PAVAN VAISH, and VANI KOLA <br> _Defendant(s)_ | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No.  4:23-cv-00533-KAW |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Pavan Vaish
M-1617B, The Magnolias
DLF Golf Links, DLF Phase 5
Gurgaon, Haryana  122002
India

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Allan Miller
3385 Claudia Dr
Concord, CA  94519

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_   MARK B. BUSBY

Date: __02/13/2023__                                    _Signature of Clerk or Deputy Clerk_

1   Allan Miller

2   3385 Claudia Drive

3   Concord, CA  94519

4   650-468-7387

5   (no fax number)

6   allan.miller@alumni.stanford.edu

7   Pro Se Plaintiff

**ORIGINAL FILED**

FEB ⹀6 2023

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

8   **UNITED STATES DISTRICT COURT**

9   **NORTHERN DISTRICT OF CALIFORNIA**

10   **SAN FRANCISCO DIVISION**

**CV 23 - 0533 KAW**

| | |
|---|---|
| ALLAN MILLER | Case Number: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| HFN, INC., a Delaware Corporation, d/b/a as | **DEMAND FOR JURY TRIAL** |
| NANOHEAL BY HFN INC., | |
| KALAARI CAPITAL ADVISORS | |
| PRIVATE LIMITED, an Indian Company, | |
| SRIDHAR SANTHANAM, | |
| KUMAR SHIRALAGI, PAVAN VAISH, | |
| and VANI KOLA | |
| Defendants. | |

"Plus ça change, plus c'est la même chose." *Jean-Baptiste Alphonse Karr, 1849.*

"We live and do not learn – or so the cynics say." *Beryl Markham, 1938.*

"Oops! … I did it again." *Britney Spears, 2000.*

Complaint                       Case No.

Page No. 1  of 30

1.      This is an action brought pro se by Plaintiff Allan Miller, who is a minority shareholder of HFN, Inc. ("HFN"), against Defendants who have intentionally forsaken their fiduciary duty to him and the other minority shareholders of HFN. The Defendants, having already been forced to settle a fraud action brought by minority shareholders nine years ago, felt that they were now above the law and proceeded to use HFN resources for their own personal benefit. Coming out of the COVID era, the Plaintiff had not heard from HFN since the lawsuit, and simply requested a shareholder meeting and some updated information about the company. Instead, the Defendants, sensing that the party of unaccountability might be over, simply stonewalled and hoped that Miller would just go away. However, since the Plaintiff Miller is one of the original founders of the company, multiple anonymous informants within the company, who were all worried about what was going on, contacted Miller, and in a situation eerily similar to the 2014 litigation, provided the basis for this Complaint.

2.      This is not a derivative suit. Plaintiff Miller is not seeking to recover on behalf of the corporation for injury done to the corporation by Defendants. Instead, the injury applies directly to the Plaintiff through his unlawful loss of access, value, and appreciation of HFN's resources, benefit that was unlawfully enjoyed by the Defendants. "A stockholder's derivative suit is brought to enforce a cause of action which the corporation itself possesses against some third party, a suit to recompense the corporation for injuries which it has suffered as a result of the acts of third parties . . . [t]he stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual." (Fed. R. Civ. Proc., Advisory Committee Notes (1966) H.R. Doc. No. 391, 89th Cong., 2d Sess. 40.) The filing of this action does not preclude a future derivative action.

## PARTIES

3.      Plaintiff, Allan Miller ("Miller"), is a US citizen and individual residing in Concord, California. At all relevant times, Miller was a minority shareholder of Defendant HFN, Inc. and a founder of HandsFree Networks, the predecessor of HFN, Inc.

4.      Defendant, HFN, Inc. ("HFN"), is a Delaware corporation with a principal place of business located in Orem, Utah.

Complaint                                                    Case No.

1    5.    Defendant, Kalaari Capital Advisors Private Limited ("Kalaari"), is an Indian

2 Company with a principal place of business located in Bengaluru, Karnataka. At all relevant

3 times, Kalaari held a Board seat at HFN and owed a fiduciary duty to Plaintiff Miller.

4    6.    Defendant, Sridhar Santhanam ("Santhanam"), is an Indian citizen and individual.

5 At all relevant times, Santhanam was the CEO and Chairman of the Board of HFN and owed a

6 fiduciary duty to Plaintiff Miller.

7    7.    Defendant, Kumar Shiralagi ("Shiralagi"), is an Indian citizen and individual. At

8 all relevant times, Shiralagi was on the Board of Directors of HFN, as well as a Venture Partner

9 at Kalaari, and owed a fiduciary duty to Plaintiff Miller.

10    8.    Defendant, Pavan Vaish ("Vaish"), is an Indian citizen and individual. At all

11 relevant times, Vaish was on the Board of Directors of HFN and owed a fiduciary duty to

12 Plaintiff Miller.

13    9.    Defendant, Vani Kola ("Kola") is an Indian citizen and individual. At all relevant

14 times, Kola was the lead Managing Director at Kalaari, and owed a fiduciary duty to Plaintiff

15 Miller.

16                           **JURISDICTION AND VENUE**

17    10.    Jurisdiction in this Action arises under 28 U.S.C. § 1331, in that it alleges claims

18 under Sections 10(b) and 20(a) of the Exchange Act of 1933, 15 U.S.C. § 78(j)(b) and 15 U.S.C.

19 § 78(t)(a). Jurisdiction also arises under 28 U.S.C. § 1331 because Plaintiff Miller is a resident of

20 California while the Defendants all reside outside the District.

21    11.    Venue is appropriate in this District because the Defendants' actions caused harm

22 to the Plaintiff within the District.

23    12.    HFN is incorporated in the State of Delaware with branches in at least the State of

24 Connecticut and the State of Utah. See Exhibit 1.

25    13.    The Defendants have exchanged shares of HFN without reasonable compensation

26 in a course of conduct which operated as a fraud and deceit upon the Plaintiff who owned HFN

27 stock, in violation of 15 U.S.C. § 78(j)(b).

28

Complaint                                    Case No.

Page No. 3  of  30

1    14.    The Defendants have used their operational management and control of HFN to

2  influence and control the exchange of shares of HFN without reasonable compensation in a

3  course of conduct which operated as a fraud and deceit upon the Plaintiff who owned HFN stock,

4  in violation of 15 U.S.C. § 78(t)(a).

5    15.    The Defendants have breached their fiduciary duty to Plaintiff Miller by denying

6  him the value and appreciation of the resources of HFN while instead using these resources for

7  their own personal gain, in violation of Cal. Corp. Code § 309.

8    16.    The Defendants have aided and abetted the breach of fiduciary duty to Plaintiff

9  Miller by condoning and assisting in conduct that denied him the value and appreciation of the

10  resources of HFN while instead using these resources for the personal gain of one or more

11  Defendants, in violation of Cal. Corp. Code § 309.

12    17.    In connection with the acts, transactions, and conduct alleged in this Complaint,

13  the Defendants used the means and instrumentalities of interstate commerce, including United

14  States mail, interstate telephone communications, internet communications, and federal roads.

15    18.    The unlawful use of HFN travel funds described in paragraph 60 included travel

16  at San Francisco International Airport in an unincorporated area of San Mateo County,

17  California, where the Defendants utilized services and products and this Court has personal

18  jurisdiction.

19    19.    As late as May 2021, HFN owned a branch incorporated in San Jose, where this

20  Court has personal jurisdiction, and was making filings relevant to that branch. See Exhibit 2.

21  During relevant times, at least one of the Defendants visited the San Jose branch of HFN

22  regularly and participated materially in the causes of action in this Complaint.

23    20.    The HFN web site indicates that in December 2018, Bask, a division of the

24  Defendant HFN Inc., announced a partnership with Malwarebytes in San Mateo, where this

25  Court has personal jurisdiction. See Exhibit 3. The partnership between the Defendant and

26  Malwarebytes was active during relevant times and contributed materially to the causes of action

27  in this complaint. As late as 2020, Malwarebytes and HFN provided services to the San

28  Francisco Symphony in San Francisco, where this Court has personal jurisdiction. See Exhibit 4.

Complaint                                          Case No.

Page No. 4  of  30

21.   As late as October 2020, HFN and Bask were providing software and services to GoDaddy, which has an office in Santa Clara where this Court has personal jurisdiction. See Exhibit 5. As described in paragraph 78, the partnership between HFN and GoDaddy was active during relevant times and contributed materially to the causes of action in this complaint. GoDaddy and HFN provided and continue to provide services to the Plaintiff in Concord, where this Court has personal jurisdiction. See Exhibit 6.

22.   As late as February 2019, HFN announced a partnership with TCS, which has an office in Santa Clara where this Court has personal jurisdiction. See Exhibit 7. The partnership between HFN and TCS was active during relevant times and contributed materially to the causes of action in this complaint. TCS and HFN provided services using the HFN software in San Francisco, where this Court has personal jurisdiction.

23.   The sole Plaintiff Miller is a resident of Concord where this Court has personal jurisdiction, and the injury to Miller described in this complaint took place while he was residing in Concord.

24.   The amount in controversy exceeds $75,000 exclusive of interest and costs, providing diversity jurisdiction to this Court under 28 U.S.C. § 1332(a).

### DIVISIONAL ASSIGNMENT

25.   The causes of action of this Complaint relate to Plaintiff Miller's ownership of HFN, which resides with him in Concord. As described in paragraph 20, Defendant HFN's partnership with Malwarebytes in San Mateo contributed materially to these causes of action. As described in paragraph 78, Defendant HFN contributed materially to these causes of action by providing services to Plaintiff Miller in Concord through its partnership with GoDaddy. As described in paragraph 60, Defendant Santhanam contributed materially to these causes of action by using travel services at San Francisco International Airport in an unincorporated area of San Mateo County. Assignment to the San Francisco Division of this Court is appropriate under Civil L. R. 3-2(d).

### FACTUAL ALLEGATIONS

Complaint                                            Case No.

Page No. 5 of 30

26.     Ten years ago, on January 12, 2012, the HFN management concocted a scheme to defraud its shareholders and investors by selectively withholding information to reduce the apparent value of the company in a transaction primarily designed to transfer an outsized share of ownership to the management and a new investor, NEA-IUVP. *Miller et al. v. Donnini et al., D Mass 1:14-cv-12337-NMG dkt. 1.* Thanks to the efforts of an anonymous informant, Miller became aware of a trail of documentation on the scheme and filed suit along with 11 other minority shareholders two years later, on June 2, 2014, against Santhanam and HFN, among others. Following the response and reply to the complaint by both sides, the Court sustained multiple counts against the defendants, including violations of § 10(b) and § 20(a) of the Exchange Act, Rule 10b-5 of the SEC, breach of fiduciary duty, and fraud. The case was poised for discovery, but once the depth and nature of the evidence of the plaintiffs was exposed, the defendants rapidly progressed toward a settlement, and dismissal with prejudice, between the minority shareholders and HFN.

27.     Defendants Kola and Shiralagi knowingly invested in this fraudulent scheme ten years ago as NEA-IUVP, which has now changed its name to Kalaari. Santhanam, Kola, and Shiralagi should have learned their lesson and run HFN in a manner designed to benefit the company and its shareholders. But the storybooks teach us that a zebra cannot change its stripes, and this lesson seems to apply to the Defendants.

28.     In early 2022, Miller was approached by several anonymous informants independently, each concerned in different ways about the manner in which HFN was being run and the negative consequences that might result. The greatest concern was that key resources were not being utilized to advance the interests of HFN but were instead being channeled to activities that benefited only the Defendants, to the detriment of all others. Sensing something amiss, on July 6, 2022, Miller asked for a shareholder meeting of HFN. See Exhibits 8 and 9. HFN was long overdue for a shareholder meeting since its bylaws require one every year, but there had not been a single shareholder meeting since 2012. See Exhibit 10, § 2.2 and 2.3. The HFN Board and investors should have been particularly sensitive to shareholder communication and follow the bylaws to the letter, especially since the last shareholder meeting was the one that

Complaint                                                             Case No.

1  triggered the 2014 litigation. But this complaint will make clear that concerns about the company

2  are low in priority for the Board and are subjugated by attention to actions that benefit the

3  Defendants directly. The Defendants derive no particular benefit from shareholder meetings, so

4  holding a shareholder meeting has no importance to them.

5      29.    Santhanam responded the same day and promised a meeting. However, the

6  meeting was not scheduled, so Miller repeated the request on July 11, 2022. On July 13,

7  Santhanam scheduled a shareholder meeting for July 21, which did not meet the 10-business-day

8  notice period required in the bylaws (see Exhibit 10, § 2.4).

9      30.    After communicating with another minority shareholder, Miller responded with a

10  request to make the meeting date comply with the bylaws and included a list of requested

11  information for the shareholders to review to streamline the meeting. See Exhibit 11.

12      31.    The response was quick and surprising. Santhanam asked Miller for a formal

13  request to examine HFN records with the execution of a confidentiality agreement. Santhanam

14  attached a confidentiality agreement that was inappropriate for the disclosure of corporate

15  records to a shareholder with several unreasonable requirements.

16      32.    Miller responded to Santhanam with a formal request for documentation and a

17  shareholder meeting, accompanied by a confidentiality agreement that was more appropriate and

18  reasonable. Arjun Sharma ("Sharma"), an attorney from Kalaari (the original investor described

19  in the 2014 litigation), also responded to Miller indicating that Kumar Shiralagi ("Shiralagi") of

20  Kalaari was no longer on the Board of Directors of HFN, and that Miller should stop including

21  Kalaari on further communication about HFN.

22      33.    Miller responded politely to Sharma with a request for additional information

23  about Shiralagi's tenure, but never received a response. See Exhibit 12 for a record of the email

24  communication and Exhibit 13 for the reasonable confidentiality agreement executed by Miller.

25      34.    As late as July 9, 2022, the HFN web site showed Shiralagi and Santhanam on the

26  Board of Directors, along with Shirish Nimgaonkar ("Nimgaonkar") as President and CSO (see

27  Exhibit 14). However, by July 30, shortly after Miller's request, the HFN web site went offline

28  (see Exhibit 15), and then reappeared by August 12 with the "About Us" page completely

Complaint                                                Case No.

Page No. 7  of  30

removed, and no information about the Board (see Exhibit 16). As late as August 8, 2022, the Kalaari web site showed Shiralagi as a Venture Partner at Kalaari (see Exhibit 17). In a similar fashion to the HFN web site, shortly after Miller's request for information, the Kalaari web site was altered to remove Shiralagi from the "Team" page. Exhibit 18 shows the state of the "Team" page as of January 29, 2023.

35.     Now Miller was growing increasingly concerned with the situation. Not long after Sharma had contacted Miller with the incorrect information about Shiralagi and the composition of HFN's Board, both HFN and Kalaari hastily and suspiciously altered their web sites to remove all references to Shiralagi. HFN was in such a hurry that the entire page describing the company was removed. This action is in contradiction with Kalaari's stated policy of maintaining Board seats with their portfolio companies (see Exhibit 22).

36.     Santhanam's confidentiality agreement had been drafted using Westlaw's Practical Law template "Confidentiality Agreement for Cross-Border Commercial Transactions," which was inappropriate since this was neither a cross-border nor a commercial transaction.[1] But Santhanam was intransigent and replied on August 20 that he was unwilling to use Miller's more reasonable confidentiality agreement. To move things along, Miller responded on August 30, 2022 with a marked-up copy outlining the most objectionable parts of Santhanam's agreement with suggestions for corrections. See Exhibit 19.

37.     That was the last communication Miller had with HFN, over five months ago. Forsaking their fiduciary duty to disclose, the Defendants are uninterested in communicating with the minority shareholders.

38.     But even though Miller has received no further information from HFN, he has continued to receive information from the several anonymous informants, and this action is the result.

### HFN'S LAX CORPORATE GOVERNANCE

---

[1] Interestingly, Sharma's CV on the Kalaari website indicates that "… in his previous roles, he routinely advised institutional investors, start-ups, and growth-stage companies on domestic and cross-border investments, …"

Complaint                                                                    Case No.

39.     The corporate governance of HFN is in a state of disarray. In November 2016, shortly after the settlement of the 2014 litigation, Sridhar Santhanam was CEO and Chairman of the Board, serving along with two outside Board members, Kumar Shiralagi and Pavan Vaish ("Vaish"), and one major outside investor, Kalaari Capital ("Kalaari"). See Exhibit 20. Vaish has remained active with the company, and as late as November 2022, visited the company to "brainstorm, ideate, and storyboard" with company employees as a Board member. See Exhibit 21. During the same time frame, Shiralagi, a Managing Director of the investor Kalaari, was active and communicated frequently with Santhanam, serving as a liaison between HFN and Kalaari. No minutes were ever kept for these Board meetings. This is consistent with Kalaari's policy to "take board seats and play an active role in the development" of their portfolio companies, as stated on their web site. See Exhibit 22, noting that "HandsFree Networks Inc." became HFN after Kalaari's investment as NEA-IUVP. *Miller et al. v. Donnini et al., D Mass 1:14-cv-12337-NMG dkt. 1.*

40.     As late as July 9, 2022, the HFN web site showed Shiralagi as a member of the Board of Directors but not Vaish, and no longer showed Kalaari as an investor. See Exhibit 14. Shiralagi continued as an active Board member well into 2022 and continued to meet regularly with Santhanam. No minutes were kept for these Board meetings. In a strange series of events, as described in paragraphs 32-35, once Miller asked for some documentation from HFN, Sharma, an attorney at Kalaari, notified Miller on July 19, 2022 that "neither Kalaari nor any individual representing Kalaari is involved with the operations and management of the Company" and declined to provide any further information about Shiralagi's departure or the current composition of the Board. See Exhibit 12. At about the same time, HFN hurriedly and surreptitiously scrubbed the web site of any information about the composition of its Board of Directors and its investors, and Kalaari hurriedly scrubbed Shiralagi from its web site. Kalaari felt a sudden and urgent need to distance themselves from the activities of HFN once Miller asked for some specific information about those activities.

41.     Both Sharma's representation of Kalaari and the flurry of activity updating web sites put Kalaari in an awkward position. Kalaari owes a fiduciary duty to the minority

Complaint                                                    Case No.

Page No. 9  of  30

shareholders. If Kalaari has abandoned its Board seat, it would leave the control of the Board to a single person and would therefore have difficulty serving its fiduciary duty of care to Miller. On the other hand, if Kalaari has maintained its Board seat, then by indicating the opposite to Miller, it has failed in its duty to disclose to Miller.

42.     Sharma's communication with Miller indicates that Kalaari is still an investor in HFN. Exhibit 21 shows that at least as late as November 2022, Pavan Vaish was still actively involved with HFN and was on the HFN Board of Directors.

43.     The Defendants have been aware, or should have been aware, of the precarious situation of the Board of Directors, but rather than correcting it for the benefit of HFN, they have let it progress to the current state. In doing so, they have pursued their own interests to the detriment of the Plaintiff and abandoned their fiduciary duty of care to the Plaintiff. Then, by obscuring, concealing, and falsifying information about the composition of the Board of Directors, at least some of the Defendants have abandoned their fiduciary duty to disclose to the Plaintiff. This failure occurred in a communication to Miller at his residence in Concord, within the personal jurisdiction of this Court. The repeated pattern of concealing and obscuring information, along with the negligent lack of oversight, has directly contributed to all the other financial harm to Miller described in this Complaint.

### HFN'S LACK OF HUMAN RESOURCE MANAGEMENT

44.     HFN lacks basic corporate oversight and controls. The company has no effective human resource ("HR") management, with only a single part-time HR manager and no company HR Manual or Employee Handbook.

45.     In the #metoo era, the failure of a company to provide these basic tools is irresponsible and exposes the company to the possibility of significant litigation costs and damages. The wage loss component alone (before punitive damages) can amount to over $1 million, with an average around $500,000. See Exhibit 23. For HFN, this exposure is significant.

1  At least one Defendant has had, and continues to have, inappropriate relationships with at least

2  one HFN employee.[2]

3      46.    The Defendants are aware, or should be aware, of the failure to provide sufficient

4  HR tools and the financial repercussions, but have chosen not to dedicate resources toward

5  investigating allegations that have surfaced and addressing them. In fact, the Defendants are

6  taking advantage of the lack of sufficient HR oversight to maintain their status quo at HFN to the

7  detriment of Plaintiff Miller, and have abandoned their fiduciary duty of care to the Plaintiff.

8      47.    Plaintiff Miller's direct financial loss during the relevant times due to the

9  Defendants' lack of HR oversight is at least $14,153.10.

10                    **HFN'S FINANCIAL MISMANAGEMENT**

11     48.    HFN lacks basic accounting and reporting tools. This is consistent with the

12 financial reports provided by the company during the 2012 shareholder meeting that led to the

13 2014 litigation, since those reports were incomplete, misleading, and audited incorrectly if at all.

14     49.    In fact, no financial reports have been provided to any minority shareholder since

15 2012, over ten years ago. This deficiency continues today, and the Defendants are aware of it. By

16 continuing this practice, the Defendants are derelict in their fiduciary duty to disclose.

17     50.    Due to the disarray of the corporate governance described above, important

18 financial and investment decisions are happening with little or no oversight at the Board level.

19 The HFN web site describes a 2021 strategic partnership between HFN and the Seed Group, a

20 Dubai-based conglomerate providing marketing and channel services for startup companies

21 (from the Seed Group web site). See Exhibit 24. The HFN web site reports that this is intended to

22 expand its footprint in the Middle East.

23     51.    The Seed Group provides a list of its partners on its web site. Exhibit 25 shows a

24 summary of these partners, their product, and their market sector, along with a count of the

25 market sectors. The Seed Group's forte appears to be concentrated in industrial and financial

---

[2] Given the public nature of this Complaint, the high risk of retaliation against the victims involved, and the irrelevance of the details to the causes of action, the Plaintiff is opting not to disclose any further information about the nature of these relationships.

1   businesses, and HFN (listed as Nanoheal) is the only partner in networking and endpoint

2   management. This is a significant mismatch, and clearly the Seed Group is an inappropriate

3   channel provider for HFN. Exhibit 26 shows the market share by geography for HFN, taken from

4   the Markets and Markets "Unified Endpoint Management Market" report. The market addressed

5   by the Seed Group is represented by the yellow bar in the graph (MEA is Middle East and

6   Africa), which is an insignificant part compared to the North American, European, and Asia-

7   Pacific (APAC) regions. Even if it did a perfect job, which is unlikely given its inexperience in

8   the sector, the Seed Group could add almost no value to HFN's activities relative to the rest of

9   the world.

10        52.     The transaction with the Seed Group involved no revenue commitment or

11  compensation by the Seed Group, but involved both a multi-year financial commitment by HFN

12  and an obligation by the Seed Group to transfer its majority interest to an unnamed party

13  nominated by HFN, in a future transaction, for no compensation. HFN has paid, and continues to

14  pay, a significant amount of money to the Seed Group with no return in the form of sales or

15  support. The effect of this agreement is to transfer assets of HFN into a separate entity where

16  they can be controlled in a future transaction by the Board outside the reach of Plaintiff Miller,

17  with no notification or reporting of the transaction to Plaintiff Miller.

18        53.     The Defendants are aware, or should be aware, of this relationship and its expense

19  with no return. This is still another example where the Defendants are utilizing HFN resources

20  for their own personal reasons, with little to no motivation for the benefit of HFN itself, with a

21  dereliction of their fiduciary duty of care to the Plaintiff.

22        54.     Plaintiff Miller's direct financial loss during the relevant times due to the

23  Defendants' financial mismanagement is at least $35,001.42.

24  **SANTHANAM'S LACK OF COMMITMENT TO HFN AND INAPPROPRIATE USE OF**

25  **HFN EMPLOYEES**

26        55.     Running a startup is hard work. It requires long hours and a large commitment to

27  the company. This typically precludes operational involvement in other companies. However,

28  Santhanam appears to have active operational involvement in numerous other companies.

Complaint                                          Case No.

1    56.    Santhanam is the CEO and Managing Director at Aavaasa Builders, an Indian

2    construction firm with at least four current projects building and marketing residential

3    complexes. See Exhibit 27. Construction projects are notorious for having numerous problems

4    that require constant attention. Since Aavaasa is not in any business related to HFN, no synergies

5    exist between Aavaasa and HFN.

6    57.    Santhanam is the CEO at Velo Digital, a Burbank, California corporation. See

7    Exhibit 28. Since Velo Digital is a digital marketing firm representing film personalities and

8    managing concert logistics, no synergies exist between Velo Digital and HFN. Importantly,

9    Ruby Jha ("Jha"), an employee of HFN, is also an officer of Velo Digital. Jha's work for Velo

10   Digital is paid for by HFN.

11   58.    Santhanam is the CEO at Iris Animation, an Indian film and video animation

12   company that is currently active with ongoing projects. See Exhibit 29. Significantly, Jha is also

13   an officer at Iris Animation. Animation projects are well known as having tight timelines,

14   complex project management, and significant competition. Since Iris Animation is not in any

15   business related to HFN, no synergies exist between the Iris Animation and HFN. Jha's work for

16   Iris Animation is paid for by HFN.

17   59.    Santhanam is the CEO at Blue Sphere Ventures, an Indian investment firm that is

18   currently active. See Exhibit 30. Investment firms require consistent attention in order to find

19   investors and opportunities, and to stay on top of developments in the portfolio companies. Since

20   Blue Sphere Ventures is not in any business related to HFN, no synergies exist between the Blue

21   Sphere Ventures and HFN.

22   60.    These outside commitments take a significant amount of time and energy by both

23   Santhanam and Jha. Santhanam and Jha are only able to spend a small percentage of their time

24   working at HFN, but are both paid a full time salary by HFN and use the HFN travel budget to

25   finance travel for the benefit of these other companies. This includes travel and the use of

26   services at San Francisco International Airport in an unincorporated area of San Mateo County,

27   California, where this Court has personal jurisdiction.

28

61.    The Defendants know, or should know, about the extent and nature of these commitments and expenses. This is still another compelling example of the Defendants using HFN resources for their own personal gain at the expense of HFN. The Defendants are not fulfilling their fiduciary duty of loyalty to the Plaintiff.

62.    Plaintiff Miller's direct financial loss during the relevant times due to Santhanam's outside commitments is at least $765,247.54.

## PATENTS

63.    The architecture and operation of the HFN software is novel. On May 10, 1999, Miller authored a provisional patent application on behalf of the company describing this novel operation. On May 10, 2000, the Plaintiff authored a patent application with short claims that issued as US Patent No. 6,742,141 on May 24, 2004 after a light prosecution with only one non-final rejection. On May 21, 2004, the Plaintiff authored a continuation with short claims that issued on August 29, 2006 as US Patent No. 7,100,085 after two minor corrections requested by the Examiner.

64.    The light prosecution for both patents is atypical of software patents and indicates the novelty of the inventions. (HFN filed a PCT application and a national stage application in Australia but abandoned both in favor of concentrating on the US market.) The HFN patents have been cited 247 times by patent applications owned by Google, Amazon, AT&T, Cisco, Citrix, Dell, Fujitsu, HCL, HP, Hitachi, Infosys, Intel, IBM, Kyndryl, Facebook (Meta), Microsoft, NetApp, Nokia, Oracle, ServiceNow, and Xerox, among others, further demonstrating their fundamental nature and inventive value.

65.    These patents could have significant value. In *Columbia University v. NortonLifeLock*, on May 22, 2022, a jury found NortonLifeLock guilty of willful infringement of 4 claims of 2 patents in the same technology area as the HFN patents, using a similar technique, and *with a later priority date*. The jury awarded the plaintiff in that case US $185 million. *ED Virginia 3:13-cv-00808-MHL dkt. 1206*. Notably, in the course of the litigation, NortonLifeLock filed 7 challenges against 104 claims in 6 patents at the Patent Trial and Appeal Board (PTAB);

Complaint                                                    Case No.

Page No. 14  of  30

1  the PTAB denied the challenge against 8 claims and found 24 of the claims patentable, further

2  demonstrating the novelty of these techniques even with the later priority date.

3        66.     Santhanam was aware of the value of the HFN patents. On December 18, 2015,

4  Santhanam had a discussion with Miller in which he indicated that he had talked with a patent

5  broker in India who had estimated the value of the patents at US $1 million. Santhanam has

6  taken no action to monetize the patents, and in the meantime, they both expired on May 10,

7  2020. Both patents have method claims, potentially extending their value at least marginally into

8  2026, but under Santhanam's stewardship, no action has been taken toward monetization.

9        67.     The assignment history of the patents at the US Patent and Trademark Office

10 (USPTO) reveals the motivation for this inaction. See Exhibit 31. On September 30, 2019, HFN

11 used both US patents 6,742,141 and 7,100,085 as a security interest (collateral) for a transaction

12 involving Zelis Payments and Red-Card Payment Systems. Zelis and Red-Card are financial

13 management system providers for healthcare providers that merged in 2019. See Exhibit 32.

14 Since HFN is not involved in either financial management or healthcare, this transaction is

15 related to yet another side venture of the Defendants and was made for the sole benefit of the

16 Defendants. The Defendants are using company resources on transactions outside the main

17 business of HFN and encumbering the primary technology of the company solely for their own

18 benefit. The Defendants are failing to fulfill their fiduciary duty of loyalty to the Plaintiff.

19       68.     Under the Defendants' leadership of HFN, no additional patent applications have

20 been filed since the 2006 continuation filing. Either no significant advancements have been made

21 in the product technology, or the intellectual property of the company has been neglected. In

22 either case, the Board has been diverting HFN resources to their own ends rather than

23 maintaining and protecting the innovation that is one of the key assets in a software technology

24 company.

25       69.     This failure to protect HFN intellectual property has also put the company into a

26 precarious position. With no patent protection at all, a competitor could easily assert patents

27 against HFN for patent infringement and HFN would have nothing with which to counter-assert

28

1   and move toward a settlement. The result would be to tie HFN up in costly litigation and

2   potentially even an injunction against continuing to do business.

3         70.     Once again, the Board has failed to use company resources correctly, opting

4   instead to keep them for short-term personal gain. The Defendants are abandoning their fiduciary

5   duty of care to the Plaintiff.

6         71.     Plaintiff Miller's direct financial loss during the relevant times due to the

7   Defendants' failure to monetize intellectual property is at least $13,800.00.

8   **SOFTWARE**

9         72.     The HFN software is organized somewhat like an app store such as the Apple

10   iTunes Store or the Google Play Store. The software has three main components. The "core"

11   software provides a set of basic operations to monitor and act on systems under management,

12   analogous to the iOS or Android operating system Application Programming Interfaces (APIs)

13   used to monitor and act on end user devices. The "application" level uses the core software

14   operations to implement detection and solution for specific problems, analogous to the apps that

15   are sold on app stores to provide specific functionality using the operating system APIs. The

16   "management" level provides a user interface for controlling and reporting on the activities of

17   the application level, analogous to the app store interface that allows end users and device

18   managers to control and report on app usage on devices.

19   **Core Software**

20         73.     The core software requires updating and maintenance on a regular basis. In

21   addition to extensions to provide management of new versions of operating systems and new

22   platforms, the core software is intimately tied to the underlying operation of the computer

23   network. Network protocols and standards are updated frequently and require corresponding

24   updates to the core software.

25

26

27

28

1  74. The only major update to the core software under the current engineering

2  management (over ten years) has been some extensions to support mobile devices.[3] More

3  importantly, the computer security environment has changed significantly in the past ten years.

4  For example, ransomware is prevalent, advanced persistent threats (APTs) now target companies

5  and infrastructure using sophisticated phishing and zero-day vulnerability attacks, and two-factor

6  authentication is the norm, among many other changes. The core software continues to use the

7  mid-2000s security model that was appropriate for its time but is dangerously insecure in today's

8  world. These security concerns are not merely hypothetical.

9  75. A key HFN customer suffered a security breach at an end user. Upon

10  investigation, the HFN customer discovered that the cause was a well-known vulnerability in the

11  aging HFN security model that could be exploited by simply monitoring open network traffic.

12  The customer demonstrated this vulnerability to HFN. The response by the Defendants was to

13  only patch the HFN software to address the specifics of that one vulnerability, rather than heed

14  the warning and invest in an improved security model for the product. Multiple other customers,

15  prospects, and partners have also raised concerns about the security features of the product.

16  76. This failure by the Defendants to properly address the security of the HFN

17  products has put the company, its customers, and its customers' end users at considerable risk.

18  On July 2, 2021, Kaseya, a company with a very similar product and business model to HFN,

19  was compromised in a ransomware attack that caused widespread downtime for over 1,000

20  companies. See Exhibit 33. The attackers reported that one million end user systems were

21  affected and demanded a ransom of $45,000 per system, also offering a "bulk discount" to

22  Kaseya of $70 million to unlock all systems with a single payment. See Exhibit 34.

23  77. The HFN web site indicates that the company has the product installed on 4

24  million end user systems (see Exhibit 35), so in a similar compromise, one could expect the

25  demand by the attacker to be up to $180 billion for per-system remediation, or up to $280 million

26

27

28  [3] By way of comparison, Miller led a small engineering team at a different company to bring a similar mobile device management extension from concept to deployment in under one year.

Complaint                                                    Case No.

Page No. 17 of 30

1    for a one-time unlock. Legal analysts commenting on the Kaseya compromise (see Exhibit 36)

2    have indicated that some of the liability could be shifted onto HFNs customers (the service

3    providers), so the impact would also tarnish the reputation of HFN and damage its customer

4    relationships.

5    78.    The Defendants knew, or should have known, the gravity of the Kaseya

6    compromise. Besides being in the main business of HFN, Kaseya had considerable coverage in

7    mainstream media. See Exhibit 37. Multiple customers have raised concerns about the security

8    aspects of the HFN product. Despite this, the Defendants chose yet again to continue to use

9    company resources for their own benefit rather than invest those resources into critical

10   development to protect the company, its customers, and its end users. The Defendants failed in

11   their fiduciary duty of care to the Plaintiff. This Court has personal jurisdiction over many of the

12   end users where the Defendants failed in their duty. For example, GoDaddy provided services to

13   Plaintiff Miller at his residence at all relevant times. See Exhibit 6.

14                                   **Application Software**

15   79.    The application software is a collection of script-like code where each script uses

16   the core operations to provide focused detection and solution of a single issue. As any computer

17   user knows, the nature and specifics of issues can change rapidly, but can also persist over long

18   periods. For example, one HFN script predating the current management fixed a problem that

19   Windows had in updating the time zone after the rules changed in the US. This script was very

20   useful but had a limited life until Microsoft fixed the problem a few months later. Another script

21   handled the situation where a router with fixed IP addresses that were known to every machine

22   but could not be discovered by a newly installed machine. This script would still be useful in

23   today's networked environments. The application software therefore needs to have constant

24   attention and testing to keep up with the ever-changing landscape of computer issues, and to

25   make sure that they are resolved correctly. This automation of detecting and resolving issues is a

26   key value add and differentiator for the product.

27   80.    The application software has had little, if any, additions and development under

28   the current engineering management. Instead, the Defendants believe that the *customers* should

Complaint                                              Case No.

provide the specification and implementation of the scripts to do problem resolution. The CEO and product management teams consistently fail to visit key customers to understand their issues, or even respond to their inquiries. Not surprisingly, the HFN web site has no customer testimonials at all, because not a single customer has reported value added by the product, and as a result, customer turnover is high, with the company having lost more than half of its customers in the last few years.

81.     The Defendants are aware of the issues with the application software. Multiple customers have repeatedly emphasized their expectation that HFN should properly specify and implement the application software. This makes sense since it is a part of the HFN product and represents a key component of its value. The HFN travel budget remains large, but not for visits to customers and end users to understand the needs for the applications software. Instead, as described in paragraph 60, the travel is oriented around the Defendants' other investments of HFN resources in ventures that are not in HFN's line of business and do not benefit the company. The Defendants are consistent in their choice of investing HFN resources for personal benefit rather than the benefit of HFN, failing in their obligation to their fiduciary duty of care to the Plaintiff.

**Management Software**

82.     The management software is implemented as a web site that is available to HFN's customers but typically not the end users with managed devices. This interface is intended to provide visibility to the customer about what is going on at end user devices, what kind of issues are being encountered and resolved, and what kinds of new trends are surfacing. Enterprise customers want an interface that can provide real-time information on large numbers of devices as well as generating summary reports for executive review.

83.     The management software has only been updated with cosmetic changes for over ten years. The underlying database is still the same relational database, and no effort has been made to utilize modern big data tools or real-time analytics. As Exhibit 38 shows, even the showcase example on the HFN web site only contains general usage information by end user devices, highlighting the product as a device monitoring tool rather than an issue detection and

Complaint                                                                    Case No.

1   resolution platform.[4] This is consistent with the lack of development in the application software

2   and the customer lack of perceived added value.

3          84.     The Defendants are aware of the shortcomings of the management software.

4   Multiple major customers have indicated that the reporting capabilities of HFN are insufficient

5   and do not meet end user requirements. As described previously, rather than visit the customers

6   and end users to understand and implement the required functionality, the Defendants' travel

7   activities are focused on those providing them personal benefit, as described in paragraph 60.

8   They dependably use HFN resources for their own gain at the expense of HFN. The Defendants

9   have not fulfilled their fiduciary duty of care to the Plaintiff.

10          85.     Plaintiff Miller's direct financial loss during the relevant times due to the

11   Defendants' failure to maintain and update the core product is at least $142,140.00.

12   **WEB SITE**

13          86.     Any company doing business online, especially a company involved in

14   networking or user service, needs to have a well-managed online presence in its web site. The

15   HFN web site falls very short of this goal. The site completely lacks an "About Us" section,

16   giving the viewer the impression that there is no real presence or history of the company. That

17   impression is further reinforced in that the address of HFN in the "Contact Us" section (see

18   Exhibit 39) is listed as 514 East Timpanogos Circle, Building G, Suite 2100, Orem, Utah 84097,

19   which the Plaintiff Miller confirmed cannot accept deliveries. See Exhibit 40. Plaintiff Miller has

20   verified that calling the contact phone number inspires even less confidence: the call is answered

21   by a synthesized voice that mispronounces the name of the company and asks you to leave a

22   message. The Google Maps information on Nanoheal at the Utah address indicates that the

23   company is "Permanently Closed." See Exhibit 41.

24          87.     Turning to the "Newsroom" section of the site (see Exhibit 42), one finds the

25   featured article to be "5 Ways CBD Can Improve Your Daily Life." This article extols the many

---

[4] The image shows application usage, printer usage, network usage, device type, CPU usage, uptime, boot time, and notification frequency; these are all measured parameters as opposed to diagnosing actual problems with indications of some kind of action taken at the device.

Complaint                          Case No.

virtues of using CBD oil, made from the active component in marijuana. The article is apparently not on the web site by mistake, since it is dated after some of the other articles. One can only assume that a potential customer reading this might not be too excited by the prospect of having their critical IT infrastructure managed by a team that was enthusiastically using CBD-based products at the same time.

88.     The Defendants are aware of the problems with the web site. For example, they modified the site around the middle of July, 2022 to remove the "About Us" section as described in paragraph 34. Rather than use company resources to keep the web site accurate and timely, to encourage confidence by potential customers, they instead predictably divert those resources to activities promoting their own gain at the expense of the company. Once again, the Defendants have failed in their fiduciary duty of care to the Plaintiff.

89.     Plaintiff Miller's direct financial loss during the relevant times due to the Defendants' failure to maintain and update the online marketing channel is at least $24,950.40.

### EQUITY IRREGULARITIES AND SELF-DEALING

90.     HFN has an unallocated equity pool that was set aside to allow incentives for addition of key management and corporate-level employees. Santhanam has been awarding himself and Vaish significant shares from this pool. Since there is no oversight from a single-member Board of Directors (if that is indeed the state of the Board as has been represented to the Plaintiff), this is a simple task on Santhanam's part. Given the dismal picture of engineering and product management outlined by the previous sections, there is certainly no justification for any sort of equity award like this for Santhanam.

91.     The Defendants know, or should know, about this program of equity transfer and the damaging effect it has on the possibility of hiring good future talent. This is perhaps one of the clearest examples of the Defendants acting in their own best interests to the detriment of HFN and demonstrates a failure of the Defendants to exercise their fiduciary duty of loyalty to the Plaintiff.

92.     Plaintiff Miller's direct financial loss during the relevant times due to the Defendants' self-allocation using shares from the incentive option pool is at least $42,507.11.

Complaint                                                    Case No.

1

## BUSINESS JUDGMENT RULE

2   93.   The business judgment rule insulates corporate directors and officers from

3   liability if they acted in good faith in a manner believed to be in the best interests of the

4   corporation and exercised the care of an ordinarily prudent person under similar circumstances,

5   including reasonable inquiry (Cal. Corp. Code § 309; *Berg & Berg Enters., LLC v. Boyle*, 178

6   Cal. App. 4th 1020, 1044-45 (2009)).

7   94.   In each of the facts described previously, there is no interpretation where HFN

8   directors and officers could have acted in good faith in a manner that any prudent person would

9   believe to be in the best interests of HFN.

10   95.   In paragraph 43, no prudent person would leave a single HFN Board member with

11   no oversight, especially one who had previously demonstrated a penchant for fraud against

12   shareholders.

13   96.   In paragraph 46, no prudent person would leave HFN without an HR Manual or

14   Employee Handbook, especially in the new litigious #metoo era, and especially given the history

15   of indiscretion at HFN.

16   97.   In paragraph 49, no prudent person would sanction the practice of not reporting

17   audited HFN financials to shareholders, especially for a company like HFN where the minority

18   shareholders had previously sued the company based on fraudulent financials.

19   98.   In paragraph 53, no prudent person would advise the significant expense of a

20   channel partner like Seed Group in a relatively unimportant market without first addressing the

21   important markets, especially when the channel partner has little or no experience or other

22   partners in the area.

23   99.   In paragraph 61, no prudent person would take on the management of numerous

24   time-consuming outside companies while managing a startup, especially a startup like HFN in a

25   complex high technology area.

26   100.   In paragraph 67, no prudent person would fail to monetize patents owned by HFN

27   simply to use those patents as collateral for a loan for an outside unrelated company, especially

28   when the patents have potentially high value.

101.   In paragraph 69, no prudent person would fail to develop and patent the intellectual property of HFN, leaving the company open to an injunction by a competitor with no defense, especially when the company is a startup like HFN in a high technology area.

102.   In paragraph 78, no prudent person would fail to keep the security of the HFN product up to date, especially when doing so exposes customers and end users of the product to considerable financial and reputational risk.

103.   In paragraph 81, no prudent person would leave it up to customers to specify and implement a key differentiator of the HFN product, especially without even visiting and understanding the needs of those customers.

104.   In paragraph 84, no prudent person would focus development on the user interface of the HFN product without also developing the underlying functionality, especially without visiting and understanding the customer needs for the user interface itself.

105.   In paragraph 88, no prudent person would fail to keep the web site of an online company like HFN accurate and timely, especially when that web site is one of the first things a potential customer will look at.

106.   In paragraph 91, no prudent person would allocate shares to themselves without any oversight by a Board of Directors, especially when those shares were not intended for current company employees.

### COUNT I

**Violation of Section 10(b) of the Exchange Act in the Seed Group transaction**

107.   Plaintiff Miller incorporates by reference each and all of the allegations contained in Paragraphs 1 through 106, as if fully set forth herein.

108.   The Defendants, including at least Santhanam, entered into an agreement with the Seed Group obligating the Seed Group to a future transaction of shares in a third company for no compensation, using undisclosed manipulative tactics to wrongfully decrease the value of Plaintiff's interest in the shares in the third company.

109.   This commitment is in violation of Section 10(b) of the Exchange Act and Rule 10b-5, and in engaging in this unlawful scheme, the Defendants, including at least Santhanam,

Complaint                                             Case No.

used means and instrumentalities of interstate commerce, including United States mail, interstate telephone communications, internet communications, and federal roads.

110.    As a direct and proximate result of the scheme by Defendants, including at least Santhanam, to defraud Plaintiff Miller, Plaintiff Miller has suffered damages by being denied the value and appreciation of the resources of HFN that were enjoyed and continue to be enjoyed by the Defendants.

111.    Additionally, Plaintiff Miller is entitled to punitive damages as a result of the conduct by Defendants, including at least Santhanam. Specifically, Defendants have consistently acted with impunity and lack of regard to interests of Miller despite either participating in or being aware of previous litigation where HFN was forced to settle for similar disregard resulting in fraudulent behavior.

## COUNT II

### Violation of Section 10(b) of the Exchange Act in HFN incentive stock allocation

112.    Plaintiff Miller incorporates by reference each and all of the allegations contained in Paragraphs 1 through 111, as if fully set forth herein.

113.    The Defendants, including at least Santhanam and Vaish, directly transferred HFN shares to themselves which had been allocated for an incentive stock option pool to attract high quality employees, and had been described as such to the Plaintiff. This transfer was done in an undisclosed transaction that wrongfully decreased the value of the Plaintiff's ownership of the shares. Rule 10b-5 under § 10(b) prohibits nondisclosure and misrepresentation, both of which are operative in this context.

114.    As a direct and proximate result of the scheme by Defendants, including at least Santhanam and Vaish, to defraud Plaintiff Miller, Plaintiff Miller has suffered damages by being denied the value and appreciation of the resources of HFN that were enjoyed and continue to be enjoyed by the Defendants.

115.    Additionally, Plaintiff Miller is entitled to punitive damages as a result of the conduct by Defendants, including at least Santhanam and Vaish. Specifically, Defendants have consistently acted with impunity and lack of regard to interests of Miller despite either

1  participating in or being aware of previous litigation where HFN was forced to settle for similar

2  disregard resulting in fraudulent behavior.

3                                  **COUNT III**

4        **Violation of Section 20(a) of the Exchange Act in the Seed Group transaction**

5        116.    Plaintiff Miller incorporates by reference each and all of the allegations contained

6  in Paragraphs 1 through 115, as if fully set forth herein.

7        117.    The Defendants, including at least Kola, Shiralagi, and Vaish, by virtue of their

8  operational and management control in HFN, condoned and assisted with HFN's entering into an

9  agreement with the Seed Group committing to significant payments by HFN and a future

10 transaction of shares in a third company for no compensation, using undisclosed manipulative

11 tactics to wrongfully decrease the value of Plaintiff's interest in the shares in the third company.

12       118.    As a direct and proximate result of the scheme by Defendants, including at least

13 Kola, Shiralagi, and Vaish, to defraud Plaintiff Miller, Plaintiff Miller has suffered damages by

14 being denied the value and appreciation of the resources of HFN that were enjoyed and continue

15 to be enjoyed by the Defendants.

16       119.    Additionally, Plaintiff Miller is entitled to punitive damages as a result of the

17 conduct by Defendants, including at least Kola, Shiralagi, and Vaish. Specifically, Defendants

18 have consistently acted with impunity and lack of regard to interests of Miller despite either

19 participating in or being aware of previous litigation where HFN was forced to settle for similar

20 disregard resulting in fraudulent behavior.

21                                 **COUNT IV**

22      **Violation of Section 20(a) of the Exchange Act in HFN incentive stock allocation**

23      120.    Plaintiff Miller incorporates by reference each and all of the allegations contained

24 in Paragraphs 1 through 119, as if fully set forth herein.

25      121.    The Defendants, including at least Kola and Shiralagi, by virtue of their

26 operational and management control in HFN, condoned and assisted with the direct transfer of

27 HFN shares to Santhanam and Vaish which had been allocated for an incentive stock option pool

28 to attract high quality employees, and had been described as such to the Plaintiff. This transfer

Complaint                                                    Case No.

Page No. 25  of  30

1    was done in an undisclosed transaction that wrongfully decreased the value of the Plaintiff's

2    ownership of the shares.

3        122.    As a direct and proximate result of the scheme by Defendants, including at least

4    Kola and Shiralagi, to defraud Plaintiff Miller, Plaintiff Miller has suffered damages by being

5    denied the value and appreciation of the resources of HFN that were enjoyed and continue to be

6    enjoyed by the Defendants.

7        123.    Additionally, Plaintiff Miller is entitled to punitive damages as a result of the

8    conduct by Defendants, including at least Kola and Shiralagi. Specifically, Defendants have

9    consistently acted with impunity and lack of regard to interests of Miller despite either

10   participating in or being aware of previous litigation where HFN was forced to settle for similar

11   disregard resulting in fraudulent behavior.

**COUNT V**

**Breach of Fiduciary Duty**

14       124.    Plaintiff Miller incorporates by reference each and all of the allegations contained

15   in Paragraphs 1 through 123, as if fully set forth herein.

16       125.    At all relevant times, Defendants HFN, Kalaari, Santhanam, Shiralagi, Vaish, and

17   Kola had a fiduciary relationship with Plaintiff Miller. Miller was a minority shareholder of

18   HFN, Inc.

19       126.    Defendants HFN, Kalaari, Santhanam, Shiralagi, Vaish, and Kola owed Plaintiff

20   the fiduciary duty of care, duty of loyalty, duty of good faith, duty of prudence, and duty to

21   disclose, as a matter of law. The Defendants Kalaari and Santhanam together own a majority of

22   the shares of HFN and are acting in concert as described in paragraphs 1 through 106. "The

23   Courts of Appeal have often recognized that majority shareholders, **either singly or acting in**

24   **concert to accomplish a joint purpose**, have a fiduciary responsibility to the minority and to the

25   corporation to use their ability to control the corporation in a fair, just, and equitable manner.

26   Majority shareholders may not use their power to control corporate activities to benefit

27   themselves alone or in a manner detrimental to the minority." (*Jones v. HF Ahmanson & Co.*,

28   460 P. 2d 464 - Cal: Supreme Court 1969) (emphasis added)

127.   Defendants HFN, Kalaari, Santhanam, Shiralagi, Vaish, and Kola breached these duties to Plaintiff Miller by the numerous instances of mismanagement and self-dealing outlined in paragraphs 1 through 106.

128.   As a direct and proximate result of Defendants' breach of these duties owed to Plaintiff Miller, Plaintiff Miller has suffered damages by being denied the value and appreciation of the resources of HFN that were enjoyed and continue to be enjoyed by the Defendants.

129.   Additionally, Plaintiff Miller is entitled to punitive damages as a result of Defendants' conduct. Specifically, Defendants have consistently acted with impunity and lack of regard to interests of Miller despite either participating in or being aware of previous litigation where HFN was forced to settle for similar disregard resulting in fraudulent behavior.

## COUNT VI

### Aiding and Abetting Breach of Fiduciary Duty

130.   Plaintiff Miller incorporates by reference each and all of the allegations contained in Paragraphs 1 through 129, as if fully set forth herein.

131.   At all relevant times, Defendants HFN, Kalaari, Santhanam, Shiralagi, Vaish, and Kola had a fiduciary relationship with Plaintiff Miller, as either Board Members, investors, and/or majority shareholders of HFN. Miller was a minority shareholder of HFN, Inc.

132.   At all relevant times, Defendants HFN, Kalaari, Santhanam, Shiralagi, Vaish, and Kola were aware of, or should have been aware of, the activities of the Board of Directors and CEO of HFN.

133.   The HFN Board of Directors and CEO owed Plaintiff the fiduciary duty of care, duty of loyalty, duty of good faith, duty of prudence, and duty to disclose, as a matter of law. Kalaari as a Board member and Santhanam as CEO together own a majority of shares of HFN and are acting in concert as described in paragraphs 1 through 106. "The Courts of Appeal have often recognized that majority shareholders, **either singly or acting in concert to accomplish a joint purpose**, have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner. Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner

1   detrimental to the minority." (*Jones v. HF Ahmanson & Co.*, 460 P. 2d 464 - Cal: Supreme Court

2   1969) (emphasis added)

3       134.    The HFN Board of Directors and CEO breached these duties to Plaintiff Miller by

4   the numerous instances of mismanagement and self-dealing outlined in paragraphs 1 through

5   106. Defendants HFN, Kalaari, Santhanam, Shiralagi, Vaish, and Kola aided and abetted this

6   breach by substantially assisting and encouraging the HFN Board and CEO. This conduct by the

7   Defendants was a substantial factor in causing harm, by enabling the ongoing activities of the

8   HFN Board of Directors and CEO.

9       135.    As a direct and proximate result of Defendants' aiding and abetting the breach of

10   these duties owed to Plaintiff Miller, Plaintiff Miller has suffered damages by being denied the

11   value and appreciation of the resources of HFN that were enjoyed and continue to be enjoyed by

12   the Defendants.

13       136.    Additionally, Plaintiff Miller is entitled to punitive damages as a result of

14   Defendants' conduct. Specifically, Defendants have consistently acted with impunity and lack of

15   regard to Miller's interests despite either participating in or being aware of previous litigation

16   where HFN was forced to settle for similar disregard resulting in fraudulent behavior.

17   **COUNT VII**

18   **Injunctive Relief for Books and Records**

19       137.    Plaintiff Miller incorporates by reference each and all of the allegations contained

20   in Paragraphs 1 through 136, as if fully set forth herein.

21       138.    Plaintiff Miller has repeatedly requested that HFN make available its corporate

22   books and records.

23       139.    Plaintiff Miller has made these requests for the legitimate purpose of ensuring that

24   the corporate monies are properly spent, where, as shown above, he has ample reason to believe

25   otherwise.

26       140.    Section 220 of the Delaware General Corporate Law gives Plaintiff Miller the

27   right to inspect corporate books and records if he has stated a "proper purpose" "sufficiently

28   tailored" to identify the books and records relevant to the demand.

141.   HFN has refused to comply with Plaintiff Miller's request.

142.   In the absence of HFN's failure to comply with its duty, Plaintiff Miller requests that the Court injoin HFN to make these books and records available.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Miller respectfully requests that this Court enter judgment in his favor and grant the following relief:

1. Compensatory damages in an amount and manner to be determined according to proof at trial;

2. Statutory damages;

3. Punitive damages in an amount to be determined by the Court according to proof;

4. An award of post-judgment interest for the maximum amount allowed by law;

5. A judgment that Defendants' lack of compliance with the Company's governing corporate documents and applicable corporate law has caused irreparable harm to the Plaintiff;

6. A judgment that Kumar Shiralagi was on the Board of Directors of HFN, Inc. at all relevant times;

7. A judgment that Pavan Vaish was on the Board of Directors of HFN, Inc. at all relevant times;

8. A judgment that Kumar Shiralagi had and continues to have a fiduciary duty to the Plaintiff at all relevant times;

9. A judgment that Pavan Vaish had and continues to have a fiduciary duty to the Plaintiff at all relevant times;

10. A judgment that Kalaari Capital had and continues to have a fiduciary duty to the Plaintiff at all relevant times;

11. A judgment that Vani Kola had and continues to have a fiduciary duty to the Plaintiff at all relevant times;

12. Injunctive relief in the form of an order for HFN, Inc. to provide requested documents and evidence without limitation to the Plaintiff to identify all Defendants and the scope of the damages;

13. Temporary injunctive relief in the form of an order to prevent further investment activity or non-operational disbursement of funds by HFN, Inc. until the relief for this action is complete;

14. An award of costs;

15. An award of attorneys fees' to the extent allowed by law; and

16. Any and all other relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

The Plaintiff hereby demands a trial by jury.


Date: _____    Sign Name: _____

Print Name: _____

Complaint                                    Case No.

Page No. 30  of  30

ORIGINAL FILED

FEB -6 2023

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALLAN MILLER,

               Plaintiff,

    v.

HFN INC,

               Defendant.

Case No. 23-cv-00533-KAW

**ORDER SETTING INITIAL CASE
MANAGEMENT CONFERENCE
AND ADR DEADLINES**

IT IS HEREBY ORDERED that this action is assigned to the Honorable Kandis A.

Westmore . When serving the complaint or notice of removal, the plaintiff or removing defendant

must serve on all other parties a copy of this order, the Notice of Assignment of Case to a United

States Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2.

Plaintiffs or removing parties must file a consent or declination to proceed before a magistrate

judge within 14 days of the filing of the complaint or the removal.  All other parties must file a

consent or declination within 14 days of appearing in the case.  All parties who have made an

appearance must file a consent or declination within 7 days of the filing of a dispositive motion or

the case will be reassigned to a district court judge.  Counsel must comply with the case schedule

listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute

Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3.  Counsel and clients

shall familiarize themselves with that rule and with the material entitled "Dispute Resolution

Procedures in the Northern District of California" on the Court ADR Internet site at

http://www.cand.uscourts.gov/adr.  A limited number of printed copies are available from the

Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

IT IS FURTHER ORDERED that plaintiff or removing defendant serve upon all parties

the brochure entitled "Consenting To A Magistrate Judge's Jurisdiction In The Northern District Of California", additional copies of which can be downloaded from the court's Internet website: http://www.cand.uscourts.gov.

| CASE SCHEDULE – ADR MULTI-OPTION PROGRAM | | |
|---|---|---|
| **Date** | **Event** | **Governing Rule** |
| 2/6/2023 | Complaint Filed | |
| 4/18/2023 | *Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file ADR Certification signed by Parties and Counsel (form available at http://www.cand.uscourts.gov) | Civil L.R . 16-8(b) & ADR L.R. 3-5(b) |
| 5/2/2023 | **Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per Standing Order re Contents of Joint Case Management Statement<br>(also available at http://www.cand.uscourts.gov) | FRCivP 26(a) (1) Civil L.R . 16-9 |
| 5/9/2023 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) at 1:30 PM in:<br>Courtroom TBD<br>Ronald Dellums Federal Building<br>1301 Clay Street<br>Oakland, CA 94612 | Civil L.R . 16-10 |

\* If the Initial Case Management Conference is continued, unless otherwise ordered this deadline is continued to 21 days in advance of the Initial Case Management Conference.

\*\* If the Initial Case Management Conference is continued, unless otherwise ordered this deadline is continued to 7 days in advance of the Initial Case Management Conference.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

### STANDING ORDER FOR
### MAGISTRATE JUDGE KANDIS A. WESTMORE
*(Revised November 8, 2021)*

Parties shall comply with the procedures in the Federal Rules of Civil or Criminal Procedure, the Northern District of California's Local Rules and General Orders, and this standing order, all of which are available at *http://www.cand.uscourts.gov*. The parties' failure to comply with any of the rules or orders may be grounds for monetary sanctions, dismissal, entry of judgment, or other appropriate sanctions.

### CALENDAR DATES AND SCHEDULING

1.      Criminal motions are heard on the first and third Thursdays of the month at 1:30 p.m., or during the regular criminal calendar when Judge Westmore is on criminal duty. Civil motions are also heard on the first and third Thursdays of the month at 1:30 p.m. Civil case management and status conferences are heard on Tuesdays at 1:30 p.m. Civil pretrial conferences are heard on Wednesdays at 2:00 p.m.

2.      Parties should notice motions (other than discovery motions) pursuant to Civil Local Rule 7-2. Parties need not reserve a hearing date, but should confirm the Court's availability at *http://www.cand.uscourts.gov/kaw* by consulting Judge Westmore's scheduling notes. The Court may reset hearing dates as the Court's calendar requires. For scheduling questions, please contact Judge Westmore's courtroom deputy at (510) 637-3525 or via email at *kawcrd@cand.uscourts.gov*.

### ALL REQUESTS MUST BE IN WRITING

3.      The Court does not grant relief over the telephone or via email. All requests for relief must be filed in accordance with the local rules. Do not contact the courtroom deputy or chambers to seek relief or legal advice, including information pertaining to the local rules.

### CONSENT CASES

4.      In civil cases randomly assigned to Judge Westmore for all purposes, the parties should file their written consent to the assignment of a United States Magistrate Judge for all purposes or their written declination of consent *as soon as possible*, and in no event later than the deadlines specified in Civil L.R. 73-1(a).

## CHAMBERS COPIES AND PROPOSED ORDERS

5.      Chambers copies are required for all formal motions, joint discovery letters, and motions to seal.  The Court may request chambers copies of other filings as needed.

      (a) Chambers copies must be received within 3 days of filing or the Court's request.

      (b) All chambers copies of e-filed documents must include the running header created by the ECF System on each page, and be marked "Chambers Copy" and submitted to the Oakland Clerk's Office in an envelope clearly marked "Magistrate Judge Kandis Westmore" with the case number on the envelope.

      (c) All exhibits must be clearly marked and tabbed.

      (d) E-filed documents must be cited in all other documents as follows: Dkt. No.__ at ___.

      (e) For motions to seal, the parties need only provide a courtesy copy of the **unredacted version** of the document sought to be filed under seal.  The unredacted version must indicate, by highlighting or other clear method, the portions of the document that have been omitted from the redacted version, and prominently display the notation "UNREDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED." The unredacted copy must be presented in the same form as if no sealing order was being sought. In other words, if a party is seeking to file under seal one or more exhibits to a declaration, or portions thereof, the chambers copy should include the declaration with both exhibits that require no redaction and the exhibits that require redaction.

6.      Any party filing a dispositive motion shall email a copy of the motion in Word format (.doc or .docx) to *kawpo@cand.uscourts.gov*.  This is in addition to the lodged, chambers copy.

7.      Proposed orders filed by an e-filing party shall be submitted in Word format (.doc or .docx) via email to *kawpo@cand.uscourts.gov* on the same day the document is e-filed. This requirement also applies to stipulations that require court approval, which must include a proposed order on the face of the stipulation. This email address should only be used for this stated purpose unless otherwise directed by the Court.

## CIVIL CASE MANAGEMENT

8.      No later than seven (7) days prior to the any scheduled case management or status conference, the parties shall file a Joint Case Management Statement in full compliance

with the Northern District of California's General Standing Order for civil cases entitled "Contents of Joint Case Management Statement." The parties shall appropriately caption their filing to read: "Initial Joint Case Management Statement" or "Further Joint Case Management Statement" as appropriate. The parties are required to file a complete case management statement for every case management conference, and they are not permitted to file abbreviated statements.

9.     Parties may not stipulate to continue a case management, status, or pretrial conference without Court approval.   Each party shall be represented **in person** at the Case Management Conference by lead trial counsel (or a party if *pro se*), who shall be (1) prepared to address all of the matters referred to in the Northern District of California's General Standing Order on Joint Case Management Statements; and (2) have full authority to enter stipulations and make admissions pursuant to that order.

        (a)  <u>Telephonic Appearances require court approval.</u> Permission for a party to attend by telephone may be granted, in the Court's discretion, upon written request made at least two (2) weeks in advance of the hearing if the Court determines that good cause exists to excuse personal attendance, and that personal attendance is not needed in order to have an effective conference. (*See* Judge Westmore's Procedures for Telephonic Appearances.) The facts establishing good cause must be set forth in the request.  Parties requesting permission to attend by telephone should consult the Court's Procedures for Telephonic Appearances, available at *http://cand.uscourts.gov/kaworders*, including filing a proposed order that comports with the attached example.

10.     All motion hearings, case management, status and pretrial conferences are recorded.  They are not reported by a court reporter unless counsel requests a court reporter in advance.

## CIVIL DISCOVERY

11.     Parties shall propound disclosures and discovery in accordance with Federal Rules of Civil Procedure 26 through 37 and the corresponding Civil Local Rules for the Northern District of California.  A copy of the Local Rules is available at the Clerk's Office and at the Court's website *(http://www.cand.uscourts.gov)*.  No exceptions to the limitations established in the Federal and Local Rules shall be permitted except pursuant to stipulation of the parties or order of the Court.

12.     <u>Protective Orders:</u> If parties believe a protective order is necessary, they shall, where practicable, use one of the model stipulated protective orders (available at

*https://cand.uscourts.gov/forms/model-protective-orders/*).  Parties shall file one of the following with their proposed protective order: (a) a declaration stating that the proposed order is identical to one of the model orders except for the addition of case-identifying information or the elimination of language denoted as optional; (b) a declaration explaining each modification to the model order, along with a redline version comparing the proposed protective order with the model order; or (c) a declaration explaining why use of one of the model orders is not practicable.

      13.    <u>Meet and confer requirement for discovery disputes.</u>  As an initial matter, the parties must comply with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery (available at *https://cand.uscourts.gov/forms/guidelines-for-professional-conduct/*).

      (a) Prior to filing any discovery-related motion, lead trial counsel for all parties shall meet and confer **in person or by video conference**, if an in-person conference is not feasible, regarding the discovery dispute(s) in an effort to resolve these matter(s).  (Meet and confers may only occur by telephone if it is impossible to meet in person or by video.)  After attempting other means to confer on the issue(s) (i.e. letter, phone call, email), any party may demand such a meeting on ten (10) business days' notice.  The location of the meeting will alternate with the first location selected by counsel for Plaintiff, the second by counsel for Defendant, etc.

      (b) If unable to resolve all disputes through this procedure, the party seeking Court intervention may file an appropriate motion or joint letter (*see* ¶ 14 below).

      14.    <u>Discovery disputes between the parties must be addressed in a joint letter.</u>

      (a) After meeting and conferring as set forth in ¶ 13 above, the parties shall draft and file a jointly signed letter within five (5) business days of the lead trial counsels' meet and confer session that contains the following:

        i. A cover page with the case caption and an attestation that the parties met and <u>conferred in person or by video conference</u> (or, if telephonically, with an additional explanation for why it was not feasible to meet in person or by video) prior to filing the letter, have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing the joint letter, as well as the signature of both parties or counsel;

4

    ii.   A section which sets forth the unresolved dispute and any pertinent factual background; and

    iii.  With respect to each issue relating to the unresolved dispute, a detailed summary of each party's final substantive position and their final proposed compromise on each issue, including relevant legal authority.

(b) <u>Separate Letters.</u> The parties shall file a separate joint letter for each discovery dispute (i.e. if the parties have disputes regarding specific interrogatories and requests for production, they must file two letters).

    i.   The joint letter shall not exceed five (5) pages, excluding the cover page, without leave of Court, and may not be accompanied by exhibits or affidavits other than exact copies of interrogatories, requests for production of documents and/or responses, privilege logs, and relevant deposition testimony.

    ii.  The parties may only attach 12 pages of exhibit(s), which must be clearly marked and tabbed.

(c) <u>Filing.</u> The joint letter must be e-filed under the Civil Events category of "Motions and Related Filings>Motions--General>Discovery Letter Brief." Do not file under the "Letter" event, because the filing will not be designated as an open motion that requires court resolution. If the joint letter is incorrectly filed, the parties risk the dispute going unresolved.

(d) <u>Format.</u> In order to ensure that the parties are addressing the same dispute, and are doing so in a manner that facilitates the Court's resolution, each disputed discovery request or issue must be presented in the following format:

**A.    Request for Production No. 7**

    [Summarize the issue and reproduce the request.]

<u>Defendant's Position</u>

    [Defendant's position outlining why Plaintiff's response is deficient and the relief requested.]

<u>Plaintiff's Position</u>

    [Plaintiff's rationale as to why he fully responded to the request, etc.]

**B.    Request for Production No. 12**

    [Summarize the issue and reproduce the request.]

Defendant's Position

> [Defendant's position outlining why Plaintiff's response is deficient and the relief requested.]

Plaintiff's Position

> [Plaintiff's rationale as to why he fully responded to the request, etc.]

> (e) Upon receipt of the joint letter, the Court will determine what future proceedings, if any, are necessary. Alternatively, the Court may order the parties to further meet and confer if the nature of the dispute is such that it should be resolved without court intervention.

15.     In responding to requests for documents and materials under Fed. R. Civ. P. 34, all parties shall affirmatively state, in a written response served on all other parties, the full extent to which they will produce materials and shall, promptly after the production, confirm in writing that they have produced *all* such materials so described that are locatable after a diligent search of *all* locations at which such materials might plausibly exist.  It shall not be sufficient to object and/or to state that "responsive" materials will be or have been produced.

16.     To the maximum extent feasible, all party files and records should be retained and produced in their original form and sequence, including file folders, and the originals should remain available for inspection by any counsel on reasonable notice.

17.     In the rare event that the parties are unable to meet and confer as directed above, or a moving party is unable to obtain the opposing party's portion of a joint letter after the meet and confer session, the moving party shall file a written request for a telephonic conference on the docket for the purpose of enforcing the Court's meet and confer requirement, or for the Court to fashion an alternative procedure.  The written request shall include a declaration which states any attempt to meet and confer and/or obtain the joint letter, the reasons for the inability to comply with the standing order, and (if possible) three dates and times at which all parties are available for a telephonic conference.  The moving party may attach exhibits to the declaration, but the declaration and exhibits combined may not exceed seven pages.  The Court will not excuse a party from the requisite in-person or videoconference meeting unless good cause is shown.

18.     In emergencies during discovery events (such as depositions), any party may, after exhausting good faith attempts to resolve disputed issues, seek judicial intervention pursuant to Civil L.R. 37-1(b) by contacting the Court through the courtroom deputy.  If the Court is unavailable, the discovery event shall proceed with objections noted for the record.

19.     No motion for sanctions may be filed until after the moving party has complied with the requirements of paragraphs 13-17 above.  Motions for sanctions shall be filed separately, pursuant to Federal Rule 37 and Civil Local Rules 7 and 37-3.

20.     In the event that a discovery hearing is ordered, the Court has found that it is most efficient and beneficial for counsel to appear *in person*.  This provides the opportunity, where appropriate, to engage counsel in resolving aspects of the discovery dispute while remaining available to rule on any disputes that counsel are not able to resolve.  For this reason, the Court expects counsel to appear in person.

      (a) <u>Telephonic Appearances require court approval.</u> Permission for a party to attend by telephone may be granted, in the Court's discretion, upon written request made at least two (2) weeks in advance of the hearing should the Court determine that good cause exists to excuse personal attendance and that personal attendance is not needed in order to have an effective discovery hearing.  The facts establishing good cause must be set forth in the request.  Parties requesting permission to attend by telephone should consult the Court's Procedures for Telephonic Appearances, available at *http://cand.uscourts.gov/kaworders.*

## Privilege Logs

21.     If a party withholds information that is responsive to a discovery request by claiming that it is privileged or otherwise protected from discovery, that party shall ***promptly*** prepare and provide a privilege log that is sufficiently detailed and informative for the opposing party to assess whether a document's designation as privileged is justified.  *See* Fed.R.Civ.P. 26(b)(5).  The privilege log shall set forth the privilege relied upon and specify separately for each document or for each category of similarly situated documents:

      (a) The title and description of the document, including number of pages or Bates-number range;

      (b) The subject matter addressed in the document;

      (c) The identity and position of its author(s);

      (d) The identity and position of all addressees and recipients;

      (e) The date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than its author(s);

      (f) The steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication; and

(g) The specific basis for the claim that the document is privileged or protected. Failure to furnish this information promptly may be deemed a waiver of the privilege or protection.

## COMMUNICATIONS WITH THE COURT

22.     Pursuant to Civil Local Rule 11-4(c), with the exception of communication with the courtroom deputy regarding scheduling, no party may contact the Court *ex parte* without prior notice to the opposing party.  All communications or questions to the Court shall be presented in writing, properly filed, and include a certification that all parties were served a copy of the written communication. Under no circumstances shall the parties contact chambers or the courtroom deputy to inquire about the status of when an order will be issued.

## MOTION PRACTICE

23.     The failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion.

24.     The Court sometimes rules on the papers, issuing a written order and vacating the hearing.  If a written request for oral argument is filed before a ruling, stating that a lawyer of four or fewer years out of law school will conduct the oral argument (or at least the lion's share), then the Court will hear oral argument, believing that young lawyers need more opportunities for appearances than they usually receive.

## OTHER MATTERS

25.     Pronouns. Parties and attorneys may advise the Court of their pronouns by filing a letter or by adding their pronouns in the name block on the first page of the pleadings.

IT IS SO ORDERED.

Dated:  November 8, 2021

_Kandis Westmore_____
KANDIS A. WESTMORE
United States Magistrate Judge

8

## STANDING ORDER FOR ALL JUDGES
## OF THE NORTHERN DISTRICT OF CALIFORNIA
### CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

All judges of the Northern District of California require identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.  Jurisdiction and Service: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.  Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.  Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.  Motions: All prior and pending motions, their current status, and any anticipated motions.

5.  Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.  Evidence Preservation: A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. *See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

7.  Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.

8.  Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.

9.  Class Actions: If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.

10. Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11. Relief: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12. <u>Settlement and ADR:</u> Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13. <u>Consent to Magistrate Judge For All Purposes:</u> Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. ___ Yes ___ No

14. <u>Other References:</u> Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues:</u> Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16. <u>Expedited Trial Procedure:</u> Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64 Attachments B and D.

17. <u>Scheduling:</u> Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18. <u>Trial:</u> Whether the case will be tried to a jury or to the court and the expected length of the trial.

19. <u>Disclosure of Non-party Interested Entities or Persons:</u> Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.

20. <u>Professional Conduct:</u> Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT OF CASE
## TO A UNITED STATES MAGISTRATE JUDGE FOR TRIAL

Pursuant to General Order 44, the Assignment Plan of the United States District Court for the Northern District of California, this case has been randomly assigned to a Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), with written consent of all parties, a magistrate judge may conduct all proceedings in a case, including all pretrial and trial proceedings, entry of judgment and post-trial motions. Appeal will be directly to the United States Court of Appeals for the Ninth Circuit.

Attached is a form to complete to indicate whether you consent to proceed before the assigned magistrate judge or decline to proceed before the assigned magistrate judge. This form is also available from the Court's website: cand.uscourts.gov/civilforms. You are free to withhold consent without adverse consequences. If you decline, the case will be reassigned to a district judge.

If you are the plaintiff or removing party in this case, you must file your consent/declination form within 14 days of receipt of this notice. Each other party must file its consent/declination form within 14 days of appearing in the case.

The plaintiff or removing party must serve a copy of this notice upon all other parties to this action.

1

2                    UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4

5   ALLAN MILLER,                         Case No.  23-cv-00533-KAW
                    Plaintiff,
6
                                          **CONSENT OR DECLINATION TO**
7          v.                             **MAGISTRATE JUDGE JURISDICTION**

8   HFN INC,
                    Defendant.
9

10         INSTRUCTIONS: Please indicate below by checking one of the two boxes whether you (if

11   you are the party) or the party you represent (if you are an attorney in the case) choose(s) to

12   consent or decline magistrate judge jurisdiction in this matter. Sign this form below your selection.

13         **( )  Consent** to Magistrate Judge Jurisdiction

14         In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily **consent** to have a

15   United States magistrate judge conduct all further proceedings in this case, including trial and

16   entry of final judgment. I understand that appeal from the judgment shall be taken directly to the

17   United States Court of Appeals for the Ninth Circuit.

18                    OR

19         **( )  Decline** Magistrate Judge Jurisdiction

20         In accordance with the provisions of 28 U.S.C. § 636(c), I **decline** to have a United States

21   magistrate judge conduct all further proceedings in this case and I hereby request that this case be

22   reassigned to a United States district judge.

23

24   DATE:                                NAME:
                                          COUNSEL FOR:
25                                        (OR "PRO SE:)

26                                        _____
27                                        Signature

28

                                     2

# United States District Court
# Northern District of California

## ECF Registration Information Handout

Electronic Case Filing (ECF or "e-filing") is mandatory for all civil cases in this court. Please refer to Civil Local Rule 5-1 for the Court's rules pertaining to electronic filing. Special procedures apply to initiating documents (complaints; notices of removal); after that, attorneys must e-file in this case.

Parties who are representing themselves pro se (without attorney representation) are not required to e-file and, in fact, may e-file only with the permission of the assigned judge.

Please review and attend to the following important notes and tasks:

- Serve this ECF Registration Information Handout on all parties in the case along with the complaint or removal notice and the other documents generated by the court upon filing.

- Email (DO NOT E-FILE) the complaint or removal notice and all attachments, in PDF format, within ten (10) business days, to the assigned judge's PDF email address. Find the judge's email address at cand.uscourts.gov/judges; find more information on this step at **http://cand.uscourts.gov/ECF**. Include in the subject line of the email:

  - Case number
  - Judge's initials
  - Type of document(s) you are sending (e.g, "Complaint & TRO")

  Do not separately e-file these documents; court staff will perform this task. All other documents from this point forward in the case must be e-filed, including the returned summons.

- If not already registered, each attorney in the case must register to become an e-filer at cand.uscourts.gov/ECF. Your ECF registration is valid for life in this district; please do not register more than once.

IMPORTANT NOTICE: By signing and submitting to the court a request for an ECF user id and password, you consent to entry of your email address into the court's electronic service registry for electronic service on you of all e-filed papers, pursuant to rules 77 and 5(b)(2)(d) of the Federal Rules of Civil Procedure.

- If you are a party and do not have an attorney and would like to e-file in the case, please visit cand.uscourts.gov/ECF/proseregistration for instructions and information. Unless and until the assigned judge has given you permission to e-file, you are required to file and serve papers in hard copy (paper) form.

- Access dockets and documents using your PACER (Public Access to Court Electronic Records) account. If your firm already has a PACER account, please use that account. It is not necessary to have individual PACER accounts for each user in your office. To set up an account, visit: **www.pacer.gov** or call **(800) 676-6856**.

ECF interactive tutorials, instructions for e-filing and other information are available at: http://cand.uscourts.gov/ECF

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

### Office hours: 9:00 A.M. TO 4:00 P.M.
### 510.637.3530 | cand.uscourts.gov

The instructions and information on this handout apply to cases and filings that are not included in the Northern District's electronic filing program. For information about e-filing, visit cand.uscourts.gov/cm-ecf.

In addition to the local rules, these instructions are designed to ensure that the filing process is accomplished with ease and accuracy. For additional information or assistance, please call the above number during office hours.

## FILING INFORMATION

1. The Oakland Division only accepts filings for cases assigned to Oakland judges. We do not accept filings for cases assigned to district judges or magistrate judges in the San Francisco or San Jose Divisions, per Civil L.R. 3-2(b).

2. This office will retain the original plus one copy of most documents submitted. We will file-stamp as many copies as you bring for your use. Related cases require an extra copy for **each** related action. We will deliver the copy to the assigned Judge. This serves as the "courtesy copy" or "chambers copy."

3. In order to facilitate the file stamping process, each original document should be submitted on top of its copies. In other words, group like documents together (as opposed to a set of originals and separate sets of copies).

4. The case number must indicate whether it is a civil or criminal matter by the inclusion of **C** or **CR** in the number and must include the initials of the district judge or magistrate judge after the case numbers. Miscellaneous and foreign judgment matters should be denoted with the initials **MISC** at the end of the case number.

5. The document caption should include the assigned district judge or magistrate judge in the matter or before whom an appearance is being made. This is especially important when submitting Settlement Conference Statements.

6. A proof of service should be attached to the back of each document. If submitted separately, attach a pleading page to the front of the document showing case number and case caption.

7. Documents are to be stapled or Acco-fastened at the top and appropriate sized, stamped, self-addresses return envelopes are to be included when filing documents by mail.

8. A Drop Box for filing when the Clerk's Office is closed is available. Please visit

our website for further details: cand.uscourts.gov/dropbox.

9. After payment of the initial filing fee (or submission of an in forma pauperis request), there are no further fees to be paid in connection with filing additional documents in a case, except for the filing of a Notice of Appeal.

## ADDITIONAL INFORMATION

10. Forms and local rules may be downloaded from the court's website: cand.uscourts.gov. They may also be requested in person from the Clerk's Office.

11. Two computer terminals which allow public access to case dockets are located in the reception area of the Clerk's Office. File viewing tables are located in the reception area. File viewing hours are 9:00 a.m. to 3:30 p.m. Electronic access to dockets and court filings are available through PACER. To obtain information or to register visit pacer.gov or call 1-800-676-6851.

12. A pay copy machine is located in the reception area for public use, at twenty-five cents ($0.25) per page. The Clerk's Office can only accept payment by exact change, check made payable to Clerk, U.S. District Court, or credit card if paying in person.